UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | | |
|---|---|---|
| **CAMPAIGN FOR SOUTHERN EQUALITY; FAMILY EQUALITY COUNCIL; DONNA PHILLIPS; JANET SMITH; KATHRYN GARNER; SUSAN HROSTOWSKI; JESSICA HARBUCK; BRITTANY ROWELL; TINORA SWEETEN-LUNSFORD; and KARI LUNSFORD,** | § § § § § § § § § | **CIVIL ACTION NO. 3:15-cv-00578-DPJ-FKB** |
| Plaintiffs, | § § | |
| vs. | § § | |
| **The MISSISSIPPI DEPARTMENT OF HUMAN SERVICES and RICHARD BERRY, in his official capacity as its Executive Director; PHIL BRYANT, in his official capacity as Governor of the State of Mississippi; JIM HOOD, in his official capacity as Mississippi Attorney General,** | § § § § § § § § § | |
| Defendants. | § | |

**DECLARATION OF SUSAN HROSTOWSKI IN SUPPORT OF
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

SUSAN HROSTOWSKI, declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1. I have personal knowledge of the facts stated herein. I am submitting this declaration in support of Plaintiffs' Motion for Preliminary Injunction.

**Background**

2. I grew up in Gulfport, Mississippi and am currently a resident of Forrest County, Mississippi. I now live with my wife, Kathryn Garner, and our son, H.M.G.

3. I hold a Bachelor's Degree in Psychology from the University of Southern Mississippi, a Master of Divinity from Virginia Theological Seminary, a Master's Degree in Social Work from the University of Southern Mississippi, and a Ph.D in Social Work from Tulane University.

4. I was ordained as an Episcopal priest in 1988.  Currently, I am the vicar of St. Elizabeth's Episcopal Church in Collins, Mississippi.  I am also an Associate Professor in the School of Social Work at the University of Southern Mississippi.

## Our Family and Our Life in Mississippi

5. Kathryn Garner and I have been together as a couple for nearly 26 years.

6. We had a religious ceremony 22 years ago, and were legally married on June 17, 2014 in an Episcopal wedding held at Washington National Cathedral in Washington, D.C.

7. Like many other couples, Kathy and I decided to have a child.  Together, we decided that Kathy would carry our child and our son, H.M.G., was born 15 years ago.  Becoming a parent was one of the most joyous and fulfilling accomplishments of my life.  Last summer, he stood by our side and was the best man at our wedding.

8. H.M.G. is an incredibly bright, driven, and accomplished young man.  He is thriving by any measure:  personal, academic, and otherwise.  H.M.G. earned straight As in his freshman year of high school and is the starting quarterback for the school's football team.  He is also devoted to giving back to the community.  We are particularly proud that he chose to spend part of this past summer as a counselor at a camp for children with intellectual disabilities.

9. Since the day he was born, H.M.G. has been my son in every sense of the word, except in the eyes of the law.  I have helped him with his homework, volunteered as a class mother in his elementary school, attended his sports games, and been there for him whenever he

needed me. Although both Kathy and I have together parented H.M.G. since birth, Kathy is the only legal parent on his birth certificate because of the Mississippi Adoption Ban.

10. I want to adopt H.M.G. and he wishes to be adopted by me.

## My Attempts to Adopt H.M.G.

11. Although the day H.M.G. was born was one of the happiest days of my life, it was also tinged with sadness. The Mississippi Adoption Ban had already been signed into law and was set to go into effect in just six weeks.

12. Despite the Ban, I have still attempted to adopt H.M.G. Specifically, Kathy and I consulted with a lawyer shortly after H.M.G.'s birth but we were advised that, because of the Ban, it would be impossible for me to adopt H.M.G. under Mississippi law.[1]

## H.M.G. and I are Harmed Because I Am Not Able to Adopt Him

13. Our family has been harmed in significant ways by the fact that I have not been able to adopt H.M.G. because of the Mississippi Adoption Ban.

14. Since becoming parents 15 years ago, Kathy and I have experienced many fears and concerns—common to all parents—regarding our son's health and wellbeing. One concern we share is that if there is ever an emergency that requires a legal parent to make a decision on H.M.G.'s behalf and Kathy is away, I may not be empowered to act swiftly to help him.

15. In smaller ways, too, we have been burdened by the fact that I am not H.M.G.'s legal mother when he is receiving medical care. Because he is so active in sports, H.M.G. is at the doctor or sports medicine clinic quite often, and there have been times when I have had to

---

[1] The advice given to Kathy and me regarding the effect of the Mississippi Adoption Ban is made without the intent to, and does not, waive attorney-client privilege or any other applicable privilege.

call Kathy and have her speak with the treating physician to give consent for a routine procedure because I am "not his parent."

16. Of course, Kathy and I are also deeply concerned that I may lose custody of H.M.G. if something were to happen to Kathy. I would not have this fear if I were able to adopt the son I have raised since birth.

17. If I were to die before H.M.G. reaches his majority, he would not receive my Social Security benefits to which he would otherwise be eligible, which would put him at a financial disadvantage.

18. Under the Mississippi Adoption Ban, Kathy and I have to work harder to raise our bright and well-adjusted son. The Mississippi Adoption Ban has sent the message to H.M.G. that his family does not deserve to be treated like other families with opposite-sex parents and we have had to make sure H.M.G. understood that that is wrong. It is hard to teach a child to value his family and himself when he lives in a state where there are laws that denigrate his family.

19. H.M.G. does not know where he wants to go to college yet, although he is starting to explore his options. If, however, he chooses to go to the University of Southern Mississippi, where I teach, he may not be eligible for the 50% tuition assistance that children of employees are entitled to because I am not allowed to adopt him. *See* The University of Southern Mississippi, Fringe Benefits Summary, http://www.usm.edu/sites/default/files/groups/employment-hr/pdf/benefit_sum_revised_06_2015.pdf (last visited Aug. 24, 2015). If tuition does not go up between now and when H.M.G. graduates college, Kathy and I would have to pay at least $28,000 more for H.M.G.'s college education than my straight co-workers.

Executed on August 27 2015.

*Susan Hrostowski*
Susan Hrostowski