# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### NORTHERN DIVISION

**CAMPAIGN FOR SOUTHERN EQUALITY, ET AL.**                 **PLAINTIFFS**

**VS.**                                **CIVIL ACTION NO. 3:15cv578-DPJ-FKB**

**The MISSISSIPPI DEPARTMENT OF HUMAN
SERVICES, ET AL.**                                         **DEFENDANTS**

_____

## MEMORANDUM OF AUTHORITIES SUPPORTING MOTION
## TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION
_____

Contrary to the plaintiffs' mistaken belief, they do not have an unencumbered right to sue any state officials in federal court over any and every state law they think is unconstitutional. This case presents one instance where, for at least two reasons, the Constitution prohibits these plaintiffs from attacking Mississippi Code Section 93-17-3(5) by suing these defendants in this Court.

First, the plaintiffs lack standing to sue the named defendants for prospective relief declaring Section 93-17-3(5) invalid or enjoining the defendants from enforcing it. None of the plaintiffs claims they have filed an adoption petition in any state court. None of the plaintiffs has demonstrated they will be subjected to any real and threatened future injury on account of the defendants.

Even assuming plaintiffs' claimed injury could satisfy the test for Article III standing, their injury is not fairly traceable to the defendants' conduct. The defendants cannot grant adoption petitions. They do not enforce Section 93-17-3(5) in adoption proceedings. Moreover, declaring that defendants cannot enforce Section 93-17-3(5), or enjoining them from doing so, will not redress plaintiffs' claimed injury. The plaintiffs lack Article III standing.

Second, even if plaintiffs satisfy the Article III standing test, the defendants'

Eleventh Amendment immunity bars this suit. The narrow exception to Eleventh

Amendment immunity under ***Ex Parte Young***, 209 U.S. 123 (1908) does not apply.

***Ex Parte Young*** requires a connection between an allegedly unconstitutional state law

and the defendants' authority to enforce it. That connection is lacking here. The

defendants cannot grant adoptions, and they cannot order the state's judiciary to grant

adoptions.

For at least these two reasons, this Court lacks subject matter jurisdiction over

this lawsuit. It should accordingly be dismissed.

## FACTS

***Background.*** An individual can only be adopted in Mississippi through a civil

action filed in the appropriate state court. Only state courts have the authority to grant

adoptions, and Title 93, Chapter 17 of the Mississippi Code specifies the procedures

applicable to those proceedings. [*See* Miss. Code Ann. § 93-17-1 *et seq.*; *see also* Miss.

Const., art. 1, §§ 1 & 2, & art. 6, § 159]. Chapter 17 applies to all adoption proceedings,

whether commenced as a civil action in which a prospective adopting party or parties

seek to adopt a non-foster care participant, or as a civil action in which a prospective

adopting party or parties seek to adopt an individual currently in the foster care

program.

Code Section 93-17-3 defines who may adopt an individual. It provides that "any

person may be adopted in accordance with the provisions of this chapter in termtime or

in vacation by an unmarried adult or by a married person whose spouse joins in the

petition." [Miss. Code Ann. § 93-17-3(4)]. A separate statutory provision, originally

enacted by the Legislature in 2000, states "[a]doption by couples of the same gender is prohibited." [Miss. Code Ann. § 93-17-3(5).][1]

   ***The Plaintiffs' Lawsuit.***  On August 12, 2015, two plaintiff advocacy groups and eight individual plaintiffs filed this lawsuit against the defendants Mississippi Department of Human Services (DHS), and Richard Berry, Executive Director of DHS, Governor Phil Bryant, and Attorney General Jim Hood, in their official capacities, challenging Section 93-17-3(5).  [Complaint, Docket No. 1].  Plaintiffs allege Section 93-17-3(5) violates the Equal Protection and Due Process Clauses of the United States Constitution and seek only equitable relief against the defendants declaring Section 93-17-3(5) unconstitutional, and enjoining the defendants from enforcing it.  [*Id.*, at pp. 30-37].

   The organization plaintiffs, Campaign for Southern Equality and Family Equality Council, are advocacy groups that conduct legal clinics, provide resources and support, engage in litigation, and publicly advocate LGBT/LGBTQ rights in Mississippi and elsewhere.  [*Id.*, at ¶¶ 7-9].  The individual plaintiffs include married and unmarried women alleging they want to pursue an adoption action.  None of the plaintiffs specifically claims to have ever filed any adoption proceeding in any state court.

---

[1] Prior to late June/early July, 2015, the Mississippi Constitution and a state statute prohibited all state officials from licensing or recognizing a marriage between two persons of the same sex.  Effectively, until those laws changed, Section 93-17-3(4) precluded two same sex individuals from adopting a child since they could not be recognized as married, and thus could not join an adoption petition together.  In ***Obergefell v. Hodges***, 576 U.S. --- (June 26, 2015), the United States Supreme Court held a fundamental right to marriage renders state laws prohibiting same sex marriage invalid.  The Court's decision, and other federal litigation directly involving Mississippi's marriage laws, essentially eliminated Section 93-17-3(4)'s independent impact on adoption proceedings.  As of this writing, no Mississippi appellate court has interpreted or applied the State's adoption laws at issue in a reported decision in light of ***Obergefell***.

Individual plaintiffs Phillips and Smith allege they are married, and Phillips is the biological mother of an eight year old daughter. [*Id.*, at ¶¶ 10, 13]. They want Smith to adopt Phillips' eight year old daughter, and the daughter wants to be adopted by Smith. [*Id.*, at ¶ 17]. Phillips and Smith do not contend they have filed an adoption petition in any court. Rather, they complain to have been unable to secure a home study to facilitate the adoption. [*Id.*, at ¶ 18].

Similarly, plaintiffs Garner and Hrostowski assert they are married, and Garner is the biological mother of a fifteen year old son. [*Id.*, at ¶ 19]. They want Hrostowski to adopt Garner's fifteen year old son, and the son wants to be adopted by Hrostowski. [*Id.*, at ¶ 25]. They further claim that they consulted an attorney about an adoption approximately fifteen years ago – around the time of Garner's son's birth, before the original version of Section 93-17-3(5) went into effect in 2000, and when essentially no state in the country legally recognized same sex marriages – and were told adoption was not possible under Mississippi law. [*Id.*, at ¶ 22]. The complaint is silent as to any other steps Garner and/or Hrostowski have ever taken to pursue an adoption.

Plaintiffs Harbuck and Rowell assert they are not married, but are engaged to be married and plan to wed in January 2016. [*Id.*, at ¶ 26]. Once married, they hope to jointly adopt children through Mississippi's foster care system. [*Id.*, at ¶ 27]. The complaint does not allege whether Harbuck or Rowell have taken any affirmative steps to become a foster care resource parent or initiated any adoption proceedings, or specify any particular time in the future they might attempt to do so.

Plaintiffs Sweeten-Lunsford and Lunsford allege they are married, and want to adopt children through foster care. [*Id.*, at ¶ 31]. They further allege both spoke with

unidentified social workers and attended a DHS training session for potential foster parents. [*Id.*, at ¶ 32]. But, their allegations do not identify when any such conversation or training session took place. Further, they do not allege they have taken any efforts to participate in the foster care program, or initiate any adoption proceedings, since the *Obergefell* decision and other court proceedings in late June/early July 2015, when their out-of-state marriage was first legally recognized under Mississippi law.

  ***The Named Defendants.*** Defendant DHS is a state executive agency established by the Mississippi Legislature and authorized by statute to provide programs and services in various areas related to public welfare, including aging and adult services, community services, early childhood care and development, family and children's services, family foundation and support, field operations and youth services. [*See* Miss. Code Ann. § 43-1-1 *et seq.*; Declaration of Mark Smith at ¶ 3, Ex. "A" to Motion]. Defendant Richard Berry is DHS's Executive Director and sued solely in his official capacity. [Complaint at ¶ 35, Docket No. 1]. Executive Director Berry is the chief executive of the agency, which includes various departments and divisions, including DHS's Division of Family and Children's Services (DFCS). DFCS is the organizational unit which provides programs and services relating to adoption and foster care, principally through its Adoption Unit. [*See* Miss. Code Ann. § 43-1-2; Declaration of Mark Smith at ¶ 4, Ex. "A" to Motion]. DFCS is authorized to establish DHS policies relating to adoption and foster care programs. Its current polices are published in DFCS's Policy Manual and a matter of public record.[2]

---

  [2] DFCS's Policy Manual is available on-line at: <http://www.mdhs.state.ms.us/family-childrens-services/dfcs-policy> (last accessed September 2, 2015).

DHS (as well as the other defendants here) cannot grant or deny adoption petitions filed in Mississippi courts. The agency's involvement, if any, in an adoption proceeding depends upon the status of the individual to be adopted.

In non-foster care adoption actions, DHS might be involved in the proceeding if ordered by the court to perform an adoption home study. A completed home study – an investigation and report utilized by the court in determining whether a proposed adoption is in the best interests of the individual to be adopted – is statutorily required before any Mississippi court awards an adoption. [*See* Miss. Code Ann. § 93-17-3(6)]. An adopting party or parties may obtain a home study from a licensed social worker approved by the court in which an adoption petition is filed, or a court-ordered home study from a DHS social worker after filing the adoption petition. [*Id.*; *see also* Miss. Code Ann. § 93-17-11 (DHS may be ordered by the court to provide a home study *after* the petition is filed); Declaration of Mark Smith at ¶ 7, Ex. "A" to Motion].

None of the plaintiffs allege they have ever filed any non-foster care adoption action, or that DHS has ever been ordered by any Mississippi state court to provide a home study, or failed to provide a home study, in any adoption action. If a state court orders DHS to provide a home study in an action involving the plaintiffs, or any other prospective adopting parties of the same gender, DHS would not disregard the court's order or refuse to conduct and provide the home study, or any other investigation and report. [Declaration of Mark Smith at ¶ 8, Ex. "A" to Motion].

Like non-foster care adoption actions, foster care adoption actions also involve court proceedings. DHS has an established process by which persons apply, submit to various investigations, and train to participate in the foster care program, and then may

eventually file an action to adopt a foster care child.  The process follows DFCS's comprehensive policies and procedures pertaining to foster care, foster care resource parent licensing, and foster care resource parent adoptions.  [*See* DFCS Policy Manual, Sections D (Foster Care), F (Licensure) & G (Adoption)].  Prospective resource parents must first apply to participate in the program.  [Declaration of Mark Smith at ¶ 11, Ex. "A" to Motion].  The applicants must meet certain criteria, including that they are 21 years old, and are legally single and not cohabitating with an unrelated person or are legally married spouses.  [*Id.*, at ¶ 11; DFCS Policy Manual, Section F (Licensure) at Appendix A].  If the initial requirements are met, several other steps must be taken.  For instance, the applicants must submit to various background checks, participate in training, and a home study and other interviews are conducted.  [Declaration of Mark Smith at ¶ 12, Ex. "A" to Motion; DFCS Policy Manual, Section F (Licensure) at Appendix C-F, H, & Section G (Adoption)].  If those steps are satisfied, visits take place between the prospective adopting parties and the prospective foster care child to be adopted.  [Declaration of Mark Smith at ¶ 12, Ex. "A" to Motion].

After visitation sessions, the prospective adopting parties may initiate court proceedings for a court-ordered placement of the foster care child in the home.  [*Id.*] DHS continues to monitor the placement, ordinarily for at least six months.  [*Id.*]  If those steps are satisfied, the prospective adopting parties may seek a final adoption decree from the court.  [*Id.*]  During the process, the court in which the proceeding is filed makes the determinations regarding a foster care child's placement in the resource home, and is the sole arbiter of whether to grant or deny the proposed adoption.  [*Id.*, at ¶ 13].  Meanwhile, DHS's policies and procedures do not preclude legally married

spouses – whether of the same gender or not – from applying to participate in the foster care program as resource parents or seeking an adoptive placement from a court. [*See* DFCS's Policy Manual, Sections D (Foster Care), F (Licensure) & G (Adoption)]. And, consistent with those policies and procedures, DHS has not refused to initiate the foster care adoption process for anyone satisfying the initial requirements to participate, such as the requirement that the prospective adopting party or parties must be legally single and not cohabitating with an unrelated person, or legally married spouses. [Mark Smith Declaration at ¶ 14, Ex. "A" to Motion].

Defendant Phil Bryant is the Governor of the State of Mississippi and sued in his official capacity. [Complaint at ¶ 36, Docket No. 1]. Pursuant to the Mississippi Constitution, and by statute, Governor Bryant has general authority as the state's "supreme executive officer of the state," a duty to "see that the laws are faithfully executed," and various other general duties prescribed by law. [*See* Miss. Const. art. 5, § 123; Miss. Code Ann. § 7-1-5]. Governor Bryant has specific authority to appoint DHS's Executive Director and has policy direction authority with respect to the agency. [*See* Miss. Code Ann. § 43-1-2]. However, similar to the DHS and its Executive Director, Governor Bryant lacks any specific authority to grant or deny adoptions.

Defendant Jim Hood is the Attorney General of the State of Mississippi and sued in his official capacity. [Complaint at ¶ 37, Docket No. 1]. The Attorney General is the state's chief legal officer, authorized to prosecute and defend lawsuits on behalf of the state, its agencies, and officers sued in their official capacities, and is charged with the duty to intervene in lawsuits and defend the constitutionality of the state's laws. [*See* Miss. Code Ann. §§ 7-5-1, 7-5-39]. Like the other defendants, Attorney General Hood

has no authority to grant or deny adoptions.

## ARGUMENT

**I.      No Article III case or controversy exists.**

Federal courts' power under Article III of the Constitution "is not an unconditioned authority to determine the constitutionality of legislative or executive acts." ***Valley Forge Christian College v. Americans United for Separation of Church and State***, 454 U.S. 464, 471 (1982).  Rather, Article III authorizes subject matter jurisdiction over a lawsuit challenging a state statute only if it presents an actual constitutional "case or controversy."

To make out the required case or controversy, federal plaintiffs' claims must meet each of three separate elements for standing:

> (1) the plaintiff[s] must have suffered an "injury in fact"-an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical;

> (2) there is a causal connection between the injury and the conduct complained of-the injury has to be fairly traceable to the challenged action of the defendant[s], and not the result of the independent action of some third party not before the court; and

> (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

***Lujan v. Defenders of Wildlife***, 504 U.S. 555, 560-61 (1991) (internal citations and quotations omitted).[3]  The plaintiffs, as the parties seeking to invoke the Court's

---

[3]  These three required elements for Article III standing apply to individual and organizational plaintiffs alike.  *See* ***N.A.A.C.P. v. City of Kyle, Tex.***, 626 F.3d 233, 237 (5th Cir. 2010) ("To have standing, an association or organization must satisfy the well-known requirements of ***Lujan***[.]"); ***Association of Community Organizations for Reform v. Fowler***, 178 F.3d 350, 356 (5th Cir. 1999) ("An organization has standing to sue on its own behalf if it meets the same standing test that applies to individuals.") (citing ***Havens Realty Corp. v. Coleman***, 455 U.S. 363, 378-79 (1982)).

jurisdiction, have the burden of proof. **_Id._**, at 561. The failure to establish any one of the elements deprives the Court of jurisdiction to hear the lawsuit. **_Rivera v. Wyeth-Ayerst Labs._**, 283 F.3d 315, 319 (5th Cir. 2002). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is the power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." **_Steel Co. v. Citizens for Better Environment_**, 523 U.S. 83, 94 (1998) (internal quotations omitted).

      **A.    Plaintiffs lack a real and threatened injury-in-fact**.

      The plaintiffs must delineate, and ultimately establish, an injury-in-fact that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." **_Lujan_**, 504 U.S. at 560. They cannot simply rely on allegations that some injury will occur at some indefinite point in time. Instead, and particularly given that plaintiffs seek injunctive or declaratory relief here, they must prove not only an injury, but also "a real and immediate threat of future injury in order to satisfy the 'injury in fact' requirement." **_City of Los Angeles v. Lyons_**, 461 U.S. 95, 102-05 (1983) (holding that because injunctions regulate future conduct, a party has standing to seek injunctive relief only if he alleges a real and immediate – as opposed to a merely conjectural or hypothetical – threat of future injury).[4]

_____

    [4] The issue of standing "bears close affinity to questions of ripeness–whether the harm asserted has matured sufficiently to warrant judicial intervention." **_Warth v. Sedlin_**, 422 U.S. 490, 499 n. 10 (1975). "Ripeness often overlaps with standing, 'most notably in the shared requirement that the injury be imminent rather than conjectural or hypothetical.'" **_Mississippi State Democratic Party v. Barbour_**, 529 F.3d 538, 545 (5th Cir. 2008) (quoting **_Brooklyn Legal Servs. Corp. v. Legal Servs. Corp._**, 462 F.3d 219, 225 (2nd Cir. 2006)). Since plaintiffs lack a real and immediate threat of injury here, in turn, a lack of ripeness is another reason their case does not present an Article III case or controversy.

Based upon their own allegations, the plaintiffs have not sufficiently demonstrated a real and immediate threat of future injury-in-fact to sustain their standing. None of the plaintiffs alleges they have actually filed an adoption proceeding in any Mississippi court at any time. Each of the plaintiffs' allegations merely describes their alleged injury as a generalized intent to some day seek an adoption decree and a belief their effort will be unsuccessful. That does not constitute a threat of future injury-in-fact supporting standing. *See **Lofton v. Butterworth***, 93 F.Supp.2d 1343, 1347 (S.D. Fla. 2000) (holding plaintiffs who had not initiated adoption proceedings lacked standing to challenge Florida's adoption prohibition). Given their lack of a real and immediate threat of injury at the hands of the defendants, plaintiffs' claims should be dismissed.

### B. No causal connection between plaintiffs' claimed injury and the defendants' conduct exists.

Even assuming that plaintiffs have sufficiently demonstrated an injury-in-fact, a required "causal connection" to any of the defendants' conduct is still missing. Plaintiffs' asserted injury, *i.e.*, that Section 93-71-3(5) prohibits them from obtaining an adoption decree from a Mississippi court, is not "fairly traceable" to any alleged acts of the defendants. ***Lujan***, 504 U.S. at 560.

The plaintiffs' causation problems begin with the "long-standing rule that a plaintiff may not sue a state official who is without any power to enforce the complained-of statute." ***Okpalobi v. Foster***, 244 F.3d 405, 426 (5th Cir. 2001). Their generalized claim that "each of the Defendants is charged with enforcing the laws of the State of Mississippi related to adoptions," [Complaint at ¶ 38, Docket No. 1], is simply

inaccurate, as a matter of law.

The Attorney General cannot grant or deny a petition for any Mississippi adoption.  It is true that the Attorney General is the "chief legal officer and advisor for the state, both civil and criminal, and is charged with managing all litigation on behalf of the state, except as otherwise provided by law."  Miss. Code Ann. § 7-5-1.  He is authorized to bring or defend lawsuits on behalf of the state and its agencies, and has a duty to "intervene and argue the constitutionality of any statute when notified of a challenge thereto, pursuant to the Mississippi Rules of Civil Procedure."  *Id*.  The Attorney General also defends lawsuits filed against the state or state officers in their official capacities.  Miss. Code Ann. § 7-5-39.

The Attorney General's general duties and authority to bring or defend lawsuits by or against the state, its agencies, and officers, and argue the constitutionality of any laws, in no sense include "enforcing" or "insuring compliance" with Section 93-17-3(5), which is, and can only be, interpreted and applied by a judge in an adoption proceeding. He does not and cannot dictate what a chancellor, or any other member of the Mississippi judiciary, can and cannot do in any case, much less an adoption case. Moreover, even if he had any authority to dictate what any chancellor or judicial officer does in any given adoption case, he has not threatened to use any such alleged authority against plaintiffs or anyone else.  There is simply no "causal connection" between the Attorney General's conduct, or even threatened future conduct, and any injury-in-fact claimed by plaintiffs here.  ***Okpalobi***, 244 F.3d at 426.

Similar to the Attorney General, the Governor cannot grant or deny a petition for a Mississippi adoption.  The Governor has general authority as the state's "supreme

executive officer of the state" and a duty to "see that the laws are faithfully executed." Miss. Code Ann. § 7-1-5(a), (c); *see also* Miss. Const. art. 5, § 123. He supervises "the official conduct of all executive and ministerial officers" and "may bring any proper suit affecting the general public interests, in his own name for the State of Mississippi, if after first requesting the proper officer so to do, the officer refuses or neglects to do the same." Miss. Code Ann. § 7-1-5(d), (n). But those general duties and authority do not include dictating how a chancellor decides an adoption petition, or interprets and applies any law. Like the Attorney General, the Governor lacks the power to mandate that any Mississippi judicial officer decide any case in any particular manner. Furthermore, even if he did have the authority to mandate what a state court judge does, the Governor has not attempted to assert any such supposed authority against the plaintiffs or anyone else. There is no "causal connection" between the Governor's conduct and any claimed injury-in-fact at issue here. ***Okpalobi***, 244 F.3d at 426.

DHS and Executive Director Berry also lack the authority to grant or deny any petition for adoption or dictate what any state court judge may or may not do. DHS does have the ability and authority to conduct home studies. A home study performed by a social worker is a requisite for an adoption, Miss. Code Ann. § 93-17-3(6), and a court may order DHS to provide a home study in an adoption proceeding, Miss. Code Ann. § 93-17-11. But no court has ever ordered DHS to provide a home study to any of the plaintiffs. No court has ever ordered DHS to provide a home study to any prospective adopting parties of the same gender in any adoption proceeding. [Mark Smith Declaration at ¶ 8, Ex. "A" to Motion]. If a court ordered DHS to do so in any such proceeding, it would not refuse to comply with the court's order. [*Id.*].

It is also true that DHS administers the state's foster care program and provides adoption-related services in connection with its program. DHS screens applicants seeking to participate in the program as resource parents, and facilitates the process by which prospective resource parents obtain foster care placements, and if desired, eventually may initiate adoption proceedings involving foster care children. [*Id.*, at ¶¶ 11-12]. DHS policy requires that applicants be either legally single and not cohabitating with an unrelated adult, or legally married, to qualify as a resource parent. [*Id.*, at ¶ 11]. After the law changed in late June/early July 2015 and required all states, including Mississippi, to license and recognize marriages between persons of the same gender, the policy obviously no longer precludes married persons of the same gender from becoming foster care resource parents, and DHS does not apply its policies to preclude married persons, of any gender, from seeking to become foster parents. [*Id.*, at ¶¶ 16-17].

Awarding an adoption is entirely up to the court in which the adoption petition is filed. DHS does not have the authority to grant or deny an adoption. Even though a court may order DHS to conduct home studies, and DHS has established policies regarding qualifications for foster care resource parents, post-***Obergefell***, DHS has not exercised those adoption-related duties in a manner inhibiting legally married spouses from seeking an adoption from a Mississippi court, and has no intention to do so. There is no connection, much less any "causal connection," between DHS or Executive Director Berry and the plaintiffs' claimed injury. ***Okpalobi***, 244 F.3d at 426.

In sum, none of the defendants can dictate whether or how Section 93-17-3(5) is enforced in any adoption proceeding. None of the defendants has the authority to apply Section 93-17-3(5) to preclude any adoption. None of the defendants has threatened to

apply it to the plaintiffs, or anyone else.  No "causal connection" between plaintiffs' alleged injury-in-fact and any of the defendants' alleged conduct exists to support Article III standing.

**C.      Plaintiffs' claims also fail the redressability element required to prove standing.**

As for the third standing element, even if the first two requisites are somehow met here, a favorable decision for plaintiffs would not redress their claimed threatened future injuries.  None of the State defendants has the authority to order what cases the Mississippi judiciary may hear or not hear.  None of the State defendants can grant or deny a Mississippi adoption petition.

Of course, federal courts have the power, in an appropriate case, to issue a declaratory judgment or an injunction.  *See* 28 U.S.C. §§ 2201, 2202; Fed. R. Civ. P. 57, 65.  But the Court cannot use those tools to bind non-parties to any particular course of conduct.  A declaratory judgment is not binding on a non-party.  ***DeLaughter v. Borden Co.***, 431 F.2d 1354, 1358 (5th Cir. 1970).  An injunction can only bind the "parties," "the parties' officers, agents, servants, employees, and attorneys," and "other persons who are in active concert or participation" with them.  Fed. R. Civ. P. 65(d)(2).[5] For those reasons, an order from this Court against these defendants, declaring that "Miss. Code Ann. § 93-17-3(5), as applied to Plaintiffs and on its face, violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution" and "[p]reliminarily and permanently enjoining the enforcement

---

[5]  Indeed, "[a]n injunction enjoins a defendant, not a statute," ***Okpalobi***, 244 F.3d at 426 n. 34, and federal courts cannot, consistent with the Eleventh Amendment, enter a judgment against a state officer which purports to bind a State as an entity, ***Sherman v. Community Consolidated Sch. Dist. 21***, 980 F.2d 437, 441 (7th Cir. 1992).

and application of Miss. Code Ann. § 93-17-3(5)," [Complaint at p. 37, Docket No. 1], would not redress the plaintiffs' claimed threatened future injuries. "For all practical purposes," ordering any relief against the State defendants would be "utterly meaningless." *Okpalobi*, 244 F.3d at 426. The relief sought would not operate against the state judiciary – the only state officials with authority to decide whether or not to award anyone an adoption.

Plaintiffs have not satisfied, and cannot satisfy, the necessary elements for Article III standing. This case accordingly should be dismissed.

## II.     Eleventh Amendment immunity alternatively bars this lawsuit.

### A.     The Eleventh Amendment applies to plaintiffs' claims.

Even if the Court finds the plaintiffs have the requisite standing to sue the defendants, their claims are still otherwise due for dismissal pursuant to the Eleventh Amendment. Immunity from suit in federal court under the Eleventh Amendment applies to claims against the State, agencies considered an "arm of the state," and state officials sued in their official capacities. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984).

The named defendant "Mississippi Department of Human Services" is an "arm of the state" and entitled to Eleventh Amendment immunity against the plaintiffs' claims. *See Blount v. Mississippi Dept. of Human Services*, 2015 WL 59091, at *1 (S.D. Miss. Jan. 5, 2015) (collecting authorities and holding "MDHS is an arm of the State of Mississippi" entitled to Eleventh Amendment immunity). DHS is entitled to dismissal under the Eleventh Amendment no matter what theory of liability plaintiffs assert

against it, and no matter what relief plaintiffs seek. *Pennhurst*, 465 U.S. at 100.[6]

The other named defendants – the Governor, Attorney General, and DHS Executive Director – are each state officials, sued in their official capacities, and entitled to Eleventh Amendment immunity. They possess immunity because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will*, 491 U.S. at 71 (internal citation omitted). Their immunity accordingly bars plaintiffs' claims. *Pennhurst*, 465 U.S. at 100.

**B.    The *Ex Parte Young* doctrine does not exempt plaintiffs' claims from the Eleventh Amendment.**

To avoid the Eleventh Amendment's bar, plaintiffs may contend their claims fit within the narrow exception to the State defendants' immunity established in *Ex Parte Young*. The *Ex Parte Young* doctrine applies only when plaintiffs sue the appropriate state officials, in their official capacities, for allegedly committing an ongoing violation of federal law, and plaintiffs seek prospective equitable relief against them. *Aguilar v. Texas Dept. of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998); *Sims v. Barbour*, 2010 WL 5184845, at *2 (S.D. Miss. Dec. 15, 2010). The doctrine does not save plaintiffs' claims.

**1.    No connection with enforcement of Section 93-17-3(5).**

Importantly, the *Ex Parte Young* doctrine only applies in a suit challenging a

_____

[6] Additionally, even if the Eleventh Amendment did not bar plaintiffs' Section 1983 claims against it, the agency would still be entitled to dismissal. DHS is not a "person" for purposes of Section 1983 and cannot be sued thereunder, as plaintiffs attempt here. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Williams v. Berry*, 977 F.Supp.2d 621, 628 (S.D. Miss. 2013).

legislative enactment if the state officers sued "have 'some connection' with the enforcement of the act' in question or [are] 'specifically charged with the duty to enforce the statute' and [are] threatening to exercise that duty." ***Morris v. Livingston***, 739 F.3d 740, 746 (5th Cir. 2014) (quoting ***Okpalobi***, 244 F.3d at 414-15) (alterations in original).  More specifically, "[t]he required 'connection' is not 'merely the general duty to see that the laws of the state are implemented,' but 'the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty.'" ***Id.*** (quoting ***Okpalobi***, 244 F.3d at 416).

Plaintiffs cannot satisfy the "connection" prong of the ***Okpalobi*** test.  Neither the Attorney General nor the Governor has any authority under Mississippi Code Section 93-17-3(5).  They cannot dictate whether or how any judicial officers apply it, or not, in any given adoption proceeding.  Their Eleventh Amendment immunity against plaintiffs' claims is not subject to the narrow ***Ex Parte Young*** exception.

Plaintiffs have not identified, and they cannot identify, any specific authority the Attorney General possesses to enforce Section 93-17-3(5) against anyone.  His general duty, as plaintiffs allege, in "enforcing" or "insuring compliance with state law," [Complaint at ¶¶ 37-38, Docket No. 1], does not supply the required connection. ***Okpalobi***, 244 F.3d at 416.  Without any more specific charge to enforce Section 93-17-3(5) under Mississippi law, ***Ex Parte Young*** does not operate against the Attorney General's immunity in this case. ***Children's Healthcare is a Legal Duty, Inc. v. Deters***, 92 F.3d 1412, 1416-17 (6th Cir. 1996) (***Ex Parte Young*** inapplicable to claim where state attorney general was not charged with enforcing challenged state laws).

It is not enough to overcome the Eleventh Amendment – as plaintiffs apparently

but mistakenly believe – that the Attorney General is charged with defending the state's laws against constitutional attacks. ***Mendez v. Heller***, 530 F.2d 457, 460 (2nd Cir. 1976) (state attorney general's duty to support the constitutionality of challenged state statutes, and his duty to defend actions in which the state is interested, insufficient to invoke ***Ex Parte Young*** in challenge to a state domestic relations law). There is no connection between the Attorney General and Section 93-17-3(5) which strips him of Eleventh Amendment immunity here. He cannot order or otherwise force a state court judge to apply, disregard, or overrule the statute. ***Smith v. Beebe***, 123 Fed. Appx. 261, 261-62 (8th Cir. 2005) (***Ex Parte Young*** failed to authorize claim against state attorney general challenging constitutionality of statute applied by state court judge in separate action). Since that required connection is lacking, the Eleventh Amendment bars the plaintiffs' claims against him.

Plaintiffs' reliance on the Governor's general authority to manufacture a connection between him and the challenged state law, [Complaint at ¶¶ 36, 38, Docket No. 1], like their argument as to the Attorney General, lacks merit. Neither Section 93-17-3(5), nor any other specific provisions of the Code, specifically authorize the Governor to enforce the statute. ***Morris***, 739 F.3d at 746 (***Ex Parte Young*** inapplicable to claim against governor where challenged law did not specifically task governor "with its enforcement, or suggest he will play any role at all in its enforcement."). It is well-established that the Governor's general duties as the head of the Executive Branch do not divest him of Eleventh Amendment immunity against a constitutional challenge to a state statute. ***Okpalobi***, 244 F.3d at 416, 423-24; *see also* ***1st Westco Corp. v. School Dist. of Philadelphia***, 6 F.3d 108, 113 (3rd Cir. 1993)

("General authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law."); ***Shell Oil Co. v. Noel***, 608 F.2d 208, 211 (1ˢᵗ Cir. 1979) ("The mere fact that a governor is under a general duty to enforce state laws does not make him a proper defendant in every action attacking the constitutionality of a state statute."); ***Harmony Center, LLC v. Jindal***, 2010 WL 4955167, at *4 (M.D. La. Nov. 30, 2010) (state governor's general duty to enforce all laws of the state and United States failed to qualify as enforcement connection with challenged law). There is no connection between the Governor's executive enforcement authority and Section 93-17-3(5). Accordingly, ***Ex Parte Young*** does not authorize plaintiffs' claims against him.

Executive Director Berry, like the other defendants, cannot dictate whether a Mississippi judge awards an adoption or not. He cannot enforce Section 93-17-3(5) and does not enforce Section 93-17-3(5). Plaintiffs cannot point to anything in the statute, any other provision of the Code, or any DHS policy authorizing the Executive Director to grant or deny adoptions. Therefore, it would be entirely inappropriate to rely on ***Ex Parte Young*** to avoid Executive Director Berry's Eleventh Amendment immunity. *See* ***Okpalobi***, 244 F.3d at 414-17.

>    **2.    No threatened enforcement of Section 93-17-3(5), even imagining any defendants have the authority to do so.**

Finally, to defeat the Eleventh Amendment with ***Ex Parte Young***, it is not enough to simply show a defendant has some authority to enforce a challenged law. There also must be some credible threat the defendants will attempt to enforce the statute at issue for a plaintiff to take advantage of ***Ex Parte Young***. *See* ***Okpalobi***,

244 F.3d at 417 (***Ex Parte Young*** requires an ability to enforce a statute and demonstrated willingness to enforce it); ***Long v. Van de Kamp***, 961 F.2d 151, 152 (9th Cir. 1992) (Eleventh Amendment barred suit, and not case or controversy existed where there was no threat that Attorney General would pursue or encourage other officials to purse violations of California vehicle code challenged by plaintiff); ***Kelley v. Metropolitan County Bd. of Education***, 836 F.2d 986, 990-91 (6th Cir. 1987) (***Ex Parte Young*** inapplicable to defendants not threatening to enforce challenged law), *cert. denied*, 487 U.S. 1206 (1988).

Plaintiffs have not identified and cannot point to any action or inaction of the Attorney General, Governor, or Executive Director Berry demonstrating they have attempted to enforce, or will attempt to enforce, Section 93-17-3(5) against any of them if the defendants somehow have authority to do so. There is nothing the defendants have done, or threatened to do, which precludes plaintiffs from filing an adoption petition in a Mississippi state court, or otherwise seeking to obtain an adoption. At a very minimum, assuming plaintiffs somehow have standing, and could ever prove any of the defendants have the judicial authority to apply Section 93-17-3(5) or reject any petition for adoption, the fact that none of the defendants have ever threatened to prevent plaintiffs from seeking an adoption decree precludes their reliance on ***Ex Parte Young***.[7]

---

[7] In addition to the connection requirement for applying ***Ex Parte Young***, the doctrine may only be invoked if the defendants are committing an ongoing violation of federal law. *See* ***Green v. Mansour***, 474 U.S. 64, 68 (1985); ***Pennhurst***, 465 U.S. at 106, 121. Although plaintiffs claim that Section 93-17-3(5) is the source of their claimed injuries, they fail to identify any ongoing violation of federal law committed by any of the defendants. For that additional reason, it would be inappropriate to adjudicate plaintiffs' claims against the defendants here under ***Ex Parte Young***.

The Eleventh Amendment bars plaintiffs claims against defendants and no exception applies.  If plaintiffs' claims are not dismissed for lack of Article III standing, then at the least, dismissal on account of Eleventh Amendment immunity is warranted.

<h2 style="text-align:center">CONCLUSION</h2>

For the reasons set forth above, the defendants respectfully request that the Court enter an order dismissing plaintiffs' claims against them, and dismissing this lawsuit at plaintiffs' sole cost.

THIS the 2nd day of September, 2015.

Respectfully submitted,

JIM HOOD, in his official capacity
as Mississippi Attorney General

By:    S/Justin L. Matheny
       Justin L. Matheny (Bar No. 100754)
       Office of the Attorney General
       P.O. Box 220
       Jackson, MS 39205
       Telephone: (601) 359-3680
       Facsimile: (601) 359-2003
       jmath@ago.state.ms.us

       *Counsel for Attorney General Jim Hood*

       AND

       MISSISSIPPI DEPARTMENT OF HUMAN
       SERVICES, RICHARD BERRY, in his official
       capacity as Executive Director of the
       Mississippi Department of Human Services,
       and PHIL BRYANT, in his official capacity as
       Governor of the State of Mississippi

By:    S/Tommy Goodwin
       Tommy Goodwin (Bar No. 100791)
       Office of the Attorney General
       P.O. Box 220

Jackson, MS 39205
Telephone: (601) 359-3680
Facsimile: (601) 359-2003
*tgood@ago.state.ms.us*

*Counsel for MDHS, Executive Director*
*Richard Berry, and Governor Phil Bryant*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document has been filed with the Clerk of Court using the Court's ECF system and thereby served on all counsel of record who have entered their appearance in this action to date.

THIS the 2nd day of September, 2015.

<u>S/Justin L. Matheny</u>
Justin L. Matheny