**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**CAMPAIGN FOR SOUTHERN EQUALITY, ET AL.**            **PLAINTIFFS**

**VS.**                         **CIVIL ACTION NO. 3:15cv578-DPJ-FKB**

**The MISSISSIPPI DEPARTMENT OF HUMAN
SERVICES, ET AL.**                                      **DEFENDANTS**

---

**MEMORANDUM OF AUTHORITIES SUPPORTING DEFENDANTS'
RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION**

---

Federal courts, like their state counterparts, have a duty and authority to interpret and apply the law. They are also empowered to enjoin parties' potential future conduct deemed contrary to federal law. But that authority has important limits established by laws, court rules, and the Constitution itself. Preliminarily exercising the Court's injunctive power is reserved for only the most extreme circumstances, and demands that the requesting parties meet a stringent burden of proof.

Four of the plaintiffs in this case believe that Mississippi Code Section 93-17-3(5) prohibits them from obtaining a state court adoption decree and want a preliminary injunction prohibiting the four defendants from "enforcing" the statute in their future adoption proceedings. They have not proven the necessary four elements for awarding that requested relief.

The movants are not likely to succeed on the merits of their claims against the defendants. A lack of Article III standing, and the defendants' Eleventh Amendment immunity, require denying their motion and dismissing their claims. Further, even if their claims against the defendants properly belong in federal court, the movants are not likely to succeed on their Fourteenth Amendment challenge to Section 93-17-3(5).

The movants' burden of proving the remaining equitable factors justify preliminary injunctive relief against the defendants has also not been satisfied. Enjoining the defendants would not alleviate the movants' alleged irreparable harms, and would not prevent any irreparable harms they propose may happen in the future. The balance of harms and the public interest weigh against preliminarily enjoining the defendants from enforcing a statute they do not and cannot enforce.

For all these reasons, and those previously asserted for dismissal, the Court should deny the movants' request for preliminary injunctive relief.

## FACTS

County chancery courts possess exclusive jurisdiction to adjudicate Mississippi adoption actions. [*See* Miss. Const., art. 6, § 159; Miss. Code Ann. § 93-17-3(4)]. Title 93, Chapter 17 of the Mississippi Code specifies the procedures applicable to adoption proceedings. [*See* Miss. Code Ann. § 93-17-1 *et seq*.]. Code Section 93-17-3 requires that all adoption actions be commenced by filing a sworn petition in the appropriate chancery court. [Miss. Code Ann. § 93-17-3(4)]. The Code Section also defines who may adopt an individual as "any person may be adopted in accordance with the provisions of this chapter in termtime or in vacation by an unmarried adult or by a married person whose spouse joins in the petition." [*Id*.]. A separate statutory provision, originally enacted by the Legislature in 2000, states "[a]doption by couples of the same gender is prohibited." [Miss. Code Ann. § 93-17-3(5)].

The Mississippi Department of Human Services (DHS) is a state executive agency authorized by statute to provide programs and services related to public welfare, including aging and adult services, community services, early childhood care and

development, family and children's services, family foundation and support, field operations and youth services. [*See* Miss. Code Ann. § 43-1-1 *et seq.*; Declaration of Mark Smith at ¶ 3, Docket No. 15-1]. DHS's Executive Director, Richard Berry, is the agency's chief executive. DHS various departments and divisions, including its Division of Family and Children's Services (DFCS). DFCS is the organizational unit which provides programs and services relating to adoption and foster care, principally through its Adoption Unit. [*See* Miss. Code Ann. § 43-1-2; Declaration of Mark Smith at ¶ 4, Docket No. 15-1]. DFCS is authorized to establish DHS policies relating to adoption and foster care programs. Its current policies are published in DFCS's Policy Manual and a matter of public record.[1]

DHS cannot grant or deny adoption petitions filed in Mississippi chancery courts. In non-foster care adoption actions, DHS's limited involvement, if any, would be dictated by the court where the adoption action is filed. A completed home study – an investigation and report utilized by the court in adjudicating whether a proposed adoption is in the best interests of the prospective adoptee – is statutorily required before a court awards and adoption. [*See* Miss. Code Ann. 93-17-3(6)]. An adopting party or parties may obtain a home study from a licensed social worker approved by the court where the adoption petition is filed, or through a court-ordered home study by a DHS social worker *after* filing the adoption petition. [*Id.*; *see also* Miss. Code Ann. § 93-17-11 (DHS may be ordered by the court to provide a home study after the petition is

---

[1] DFCS's Policy Manual is available on-line at: <http://www.mdhs.state.ms.us/family-childrens-services/dfcs-policy> (last accessed September 11, 2015).

filed); Declaration of Mark Smith at ¶ 7, Docket No. 15-1].[2]

Phil Bryant is the Governor of the State of Mississippi. Pursuant to the Mississippi Constitution, and by statute, Governor Bryant has general authority as the state's "supreme executive officer of the state," a duty to "see that the laws are faithfully executed," and various other general duties prescribed by law. [*See* Miss. Const., art. 5, § 123; Miss. Code Ann. § 7-1-5]. Governor Bryant has specific authority to appoint DHS's Executive Director and has policy direction authority with respect to the agency. [*See* Miss. Code Ann. § 43-1-2]. However, like DHS and its Executive Director, Governor Bryant lacks any specific authority to grant or deny adoptions.

Jim Hood is the Attorney General of the State of Mississippi. The Attorney General is the state's chief legal officer, authorized to prosecute and defend lawsuits on behalf of the state, its agencies, and officers sued in their official capacities, and charged with the duty to intervene in lawsuits and defend the constitutionality of the state's laws. [*See* Miss. Code Ann. §§ 7-5-1, 7-5-39]. The Attorney General has no authority to grant or deny adoptions.

On August 12, 2015, two plaintiff advocacy groups, the Campaign for Southern Equality and Family Equality Council, and eight individual plaintiffs, Donna Phillips, Janet Smith, Kathryn Garner, Susan Hrostowski, Jessica Harbuck, Brittany Rowell, Tinora Sweeten-Lunsford and Kari Lunsford, filed this lawsuit against the defendants

---

[2] As of this writing, no state court has ordered DHS to conduct a home study for any of the plaintiffs in this case. The current Director of DFCS has testified that if a state court orders DHS to provide a home study in an adoption proceeding involving the plaintiffs, or any other prospective adopting parties of the same gender, DHS would not disregard the court's order or refuse to conduct and provide the home study, or any other investigation and report. [Declaration of Mark Smith at ¶ 8, Docket No. 15-1].

DHS, and DHS Executive Director Berry, Governor Bryant, and Attorney General Hood, in their official capacities, challenging Section 93-17-3(5). [Complaint, Docket No. 1]. The plaintiffs allege Section 93-17-3(5) violates the Fourteenth Amendment's Equal Protection and Due Process Clauses and seek equitable relief against the defendants declaring Section 93-17-3(5) unconstitutional, and enjoining the defendants from enforcing it. [*Id.*, at pp. 30-37]. On September 2, the defendants moved to dismiss the complaint for lack of a requisite "case or controversy" under Article III and as barred by the Eleventh Amendment. [Motion to Dismiss, Docket No. 15; Defendants' Mem. Supporting Motion to Dismiss, Docket No. 16; Joinder in Motion to Dismiss, Docket No. 19]. The defendants also separately answered the complaint. [Attorney General Answer and Defenses, Docket No. 17; DHS, DHS Executive Director, and Governor Answer and Defenses, Docket No. 18].

In the meantime, on August 28, four individual plaintiffs – Phillips, Smith, Garner and Hrostowski (the "movants") – moved for preliminary injunctive relief contending Section 93-17-3(5) must be interpreted as unconstitutional "as applied" to them in potential future adoption suits in Mississippi chancery courts, and seeking a preliminary injunction prohibiting the four defendants from "enforcing" Section 93-17-3(5) in those potential future adoption proceedings. [Motion for Preliminary Injunction, Docket No. 13; Movants' Mem. Supporting Motion for Preliminary Injunction, Docket No. 14]. With their motion, movants Smith and Hrostowski submitted sworn declarations reiterating and verifying their complaint allegations. [Smith Declaration, Docket No. 13-1; Hrostowski Declaration, Docket No. 13-2].

Movants Smith and Hrostowski each assert a desire to adopt their spouses'

biological child through a future "stepparent adoption" proceeding.[3]  Smith is a lifelong

Mississippian and, on August 1, 2013, she and Phillips married in Maryland.  [Smith

Declaration at ¶¶ 2 & 5, Docket No. 13-1].  In 2007, Phillips gave birth to HMSP, now

eight years old, whom Smith wants to adopt.  [*Id.*, at ¶¶ 6 & 12].  Smith does not allege

she has ever filed an adoption petition regarding HMSP in any Mississippi chancery

court at any time.  However, she believes that obtaining a home study is the first step

towards adopting HMSP.  [*Id.*, at ¶ 13].  Without providing details, Smith contends that

she and Phillips contacted social work agencies, and two private licensed clinical social

workers, on unidentified past dates.  [*Id.*].  According to her declaration, those

unidentified persons told her and Phillips a home study would be "'useless' because of"

Section 93-17-3(5) and "several social workers told us that they would not even consider

performing a home study for us because they feared it would endanger the

organizations' standing with the State of Mississippi."  [*Id.*].

Hrostowski is a Mississippi resident and, on June 17, 2014, she and Garner

married in Washington, D.C.  [Hrostowski Declaration at ¶ 6, Docket No. 13-2].  Fifteen

years ago, Garner gave birth to HMG, whom Hrostowski wants to adopt.  [*Id.*, at ¶¶ 7 &

10].  Hrostowski does not claim she has ever filed an adoption petition regarding HMG

in any Mississippi chancery court at any time.  Instead, Hrostowski asserts she and

Garner consulted an attorney approximately fifteen years ago and "were advised that,

because of [Section 93-17-3(5)], it would be impossible for me to adopt HMG under

---

[3]  "Stepparent adoption" is a common term for an adoption proceeding whereby married persons seek to adopt their spouse's child. *See* 2 C.J.S. Adoption of Persons § 15 (2015) ("A stepparent adoption is the adoption of a minor child by the spouse of a parent with the consent of that parent.").

Mississippi law." [*Id.*, at ¶ 12].

## ARGUMENT

Preliminary injunctive relief is extraordinary, and must be supported by a clear entitlement to the relief sought when it would alter the status quo. ***Exhibitors Poster Exch. Inc. v. National Screen Serv. Corp.***, 441 F.2d 560, 561-62 (5th Cir. 1971). The movants have the burden to prove each of the following elements:

> (1) a substantial likelihood they will prevail on the merits; (2) a substantial threat that they will suffer irreparable injury if the injunction is not granted; (3) their substantial injury outweighs the threatened harm to the party to be enjoined; and (4) granting the preliminary injunction will not disserve the public interest.

***Texas Med. Providers Performing Abortion Servs. v. Lakey***, 667 F.3d 570, 574 (5th Cir. 2012) (internal citation omitted).

## I. No substantial likelihood of prevailing on the merits.

### A. Movants lack Article III standing to obtain a preliminary injunction against the defendants.

A preliminary injunction is never appropriate when the moving parties lack Article III standing. *See*, *e.g.*, ***Prestage Farms, Inc. v. Board of Sup'rs of Noxubee County, Miss.***, 205 F.3d 265, 267-68 (5th Cir. 2000), *reh'g en banc denied*, 216 F.3d 1081 (vacating preliminary injunction for lack of standing and remanding for dismissal). The defendants have already moved to dismiss the complaint since none of the plaintiffs has standing to sue them.[4] The movants' particular alleged circumstances

---

[4] The defendants incorporate their previously filed motion to dismiss and arguments proving plaintiffs', and these movants', lack of standing, herein by reference. [Motion to Dismiss, Docket No. 15; Defendants' Mem. Supporting Motion to Dismiss, Docket No. 16; Joinder in Motion to Dismiss, Docket No. 19].

further highlight their lack of standing.

All three required Article III standing elements must be met before the Court even considers awarding any injunctive relief against the defendants. ***Lujan v. Defenders of Wildlife***, 504 U.S. 555, 560-61 (1992) (citations omitted); *see also **Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.***, 528 U.S. 167, 185 (2000) (recognizing plaintiffs must independently establish standing for each remedy sought). As to the first element, federal courts may only adjudicate claims based on "concrete" injuries that are "actual" or "imminent," not merely "conjectural" or "hypothetical." ***Lujan***, at 560 (citations omitted). Further, when an injunction is sought against future conduct that has not yet occurred, there must be proof that the defendants' allegedly unlawful conduct is sufficiently likely to occur. ***City of Los Angeles v. Lyons***, 461 U.S. 95, 111 (1983).

The movants allege that Section 93-17-3(5) will prohibit them, as persons married to spouses of the same gender, from adopting their spouses' children in a future Mississippi adoption proceeding. Their allegations do not establish a threatened future injury proving they possess Article III standing. *See **Lofton v. Butterworth***, 93 F.Supp.2d 1343, 1347 (S.D. Fla. 2000).

Indisputably, none of the movants alleges she has ever filed (or tried to file) an adoption petition in any Mississippi chancery court. Their alleged "attempts" to pursue adoptions underscore the speculative nature of their claimed injury. Movant Hrostowski asserts an attorney told her fifteen years ago (when no United States jurisdiction authorized same sex marriage) she could not adopt HMG in Mississippi. [Hrostowski Declaration at ¶ 12, Docket No. 13-2]. A private attorney's fifteen year old

-8-

opinion fails to prove how a chancery court would decide Hrostowski's present day or future adoption action. Hrostowski's alleged reliance on that outdated opinion, coupled with a failure to actually attempt to pursue an adoption, does not establish the movants' requisite likelihood of future injury necessary for Article III standing.

Movant Smith claims, without providing any details, that she and Phillips have attempted to take the "first step" toward an adoption by obtaining a home study. [Smith Declaration at ¶ 13, Docket No. 13-1]. Smith's asserted inability to obtain a home study at non-specific times in the past does not sufficiently demonstrate a likelihood of future injury. When, and if, Smith actually files an adoption proceeding, the chancery court can then order a home study. *See* Miss. Code Ann. § 93-17-11 (chancery court may order a home study or other investigations and reports any time *after* an adoption petition is filed). None of the movants has established the likelihood of threatened future injury at the hands of the defendants, as required for Article III standing, and mandatory for a preliminary injunction against them.

As to the second standing element, even assuming the movants' burden of proving a likely future injury has been met, there is no causal connection between the movants' asserted injury and any of the defendants' alleged conduct. ***Lujan***, 504 U.S. at 560. None of the defendants can grant or deny the movants' prospective adoptions. None of the defendants has the authority to apply Section 93-17-3(5) in any adoption proceeding the movants might file in the future. No causal connection exists between the movants' claimed future injury and anything the movants could credibly claim defendants will do in the future. ***Okpalobi v. Foster***, 244 F.3d 405, 426 (5th Cir. 2001). The movants' putative future injury is simply not "'fairly . . . trace[able] to the

challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court,'" ***Lujan***, 504 U.S. at 560 (quoting ***Simon v. Eastern Ky. Welfare Rights Organization***, 426 U.S. 26, 41-42 (1976)) (alterations in original), and, therefore, fails the causation prong required for Article III standing.

As for the third and final standing element, awarding the movants' requested preliminary relief against the defendants would not redress their claimed future injury. ***Lujan***, 504 U.S. at 561 ("[I]t must be 'likely,' as opposed to merely 'speculative,' that the injury will be redressed by a favorable decision.") (quoting ***Simon***, 426 U.S. at 38, 43); ***Okpalobi***, 244 F.3d at 426 (no redressability where defendants had no authority to order what cases the state judiciary "may hear or not hear"). The defendants cannot mandate that a Mississippi court grant or deny any adoption. A preliminary injunction prohibiting the defendants from applying Section 93-17-3(5) in a future Mississippi adoption proceeding would not redress their claimed injury. The movants would still be facing their same alleged injury tomorrow if the Court preliminarily enjoins the defendants today. Accordingly, at a minimum for a lack of redressability, the movants' requested preliminary injunction against the defendants should be denied.

**B.     The Eleventh Amendment bars preliminary injunctive relief against the defendants.**

A preliminary injunction against the defendants is also wholly inappropriate due to their Eleventh Amendment immunity. *See*, *e.g.*, ***Moore v. Louisiana Bd. of Elementary and Secondary Educ.***, 743 F.3d 959, 962-64 (5th Cir. 2014) (abuse of discretion to preliminary enjoin defendants entitled to Eleventh Amendment

immunity).  The Eleventh Amendment bars all the plaintiffs' claims for the reasons the

defendants initially moved to dismiss their complaint.[5]  It likewise bars the movants'

requested preliminarily injunctive relief against the defendants.

Each of the defendants is entitled to Eleventh Amendment immunity prohibiting

the movants' requested preliminary injunctive relief.  ***Pennhurst State Sch. & Hosp.***

***v. Halderman***, 465 U.S. 89, 100, 121 (1984).  DHS is a state agency considered an

"arm of the state," and the Eleventh Amendment absolutely bars the movants' claims

against it.  ***Blount v. Mississippi Dept. of Human Services***, 2015 WL 59091, at *2

(S.D. Miss. Jan. 5, 2015); ***Williams v. Berry***, 977 F.Supp.2d 621, 628 (S.D. Miss.

2013).  The movants' particular claims against DHS also fail to even state a claim since

the DHS is not a "person" for purposes of Section 1983.  ***Will v. Michigan State***

***Dept. of Police***, 491 U.S. 58, 71 (1989).

The Eleventh Amendment likewise precludes the movants' preliminary injunctive

relief against the official capacity defendants: the Attorney General, the DHS Executive

Director, and the Governor.  ***Pennhurst***, 465 U.S. at 121.  ***Ex Parte Young*** does not

strip these state officials of their immunity.  That narrow exception to Eleventh

Amendment immunity applies only when plaintiffs sue the appropriate state officials, in

their official capacities, for allegedly committing an ongoing violation of federal law, and

seek prospective equitable relief against them.  ***Aguilar v. Texas Dept. of Criminal***

***Justice***, 160 F.3d 1052, 1054 (5th Cir. 1998).

---

[5]  The defendants incorporate their previously filed motion to dismiss and
demonstration that the Eleventh Amendment bars the plaintiffs' and movants' claims, herein by
reference.  [Motion to Dismiss, Docket No. 15; Defendants' Mem. Supporting Motion to
Dismiss, Docket No. 16; Joinder in Motion to Dismiss, Docket No. 19].

However, ***Ex Parte Young*** only applies in a challenge to a legislative enactment if the state officers sued "have 'some connection' with the enforcement of the act' in question or [are] 'specifically charged with the duty to enforce the statute' and [are] threatening to exercise that duty." ***Morris v. Livingston***, 739 F.3d 740, 746 (5th Cir. 2014) (quoting ***Okpalobi***, 244 F.3d at 414-15) (alterations in original). "The required 'connection' is not 'merely the general duty to see that the laws of the state are implemented,' but 'the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty.'" ***Id.*** (quoting ***Okpalobi***, 244 F.3d at 416).

The required "connection" between the defendants and Section 93-17-3(5) does not exist. The defendants are not charged with enforcing the statute. They cannot dictate whether or how any judicial officers would adjudicate the movants' putative future adoption suits by interpreting and applying the statute, or not, in the proceedings. Those simple facts rule out the narrow ***Ex Parte Young*** exception's potential application to the defendants in this case.

The movants have not identified, and they cannot identify, any specific authority the Attorney General possesses to enforce Section 93-17-3(5) against anyone. His general duties to enforce state law, argue the constitutionality of state laws in court, and defend state officers, do not supply the required connection. ***Okpalobi***, 244 F.3d at 416. Without any specific charge to enforce Section 93-17-3(5) under Mississippi law, and given he cannot force a state court judge to apply, interpret, or overrule it, ***Ex Parte Young*** does not operate against the Attorney General's immunity in this case. *See* ***McBurney v. Cuccinelli***, 616 F.3d 393, 400-02 (4th Cir. 2010) (***Ex Parte Young***

inapplicable to claims against state attorney general based on duty to provide advisory opinions to state officials); ***Smith v. Beebe***, 123 Fed. Appx. 261, 261-62 (8th Cir. 2005) (***Ex Parte Young*** did not authorize claim against state attorney general challenging constitutionality of statute applied by state court judge in separate action); ***Children's Healthcare is a Legal Duty, Inc. v. Deters***, 92 F.3d 1412, 1416-17 (6th Cir. 1996) (***Ex Parte Young*** inapplicable to claim where state attorney general was not charged with enforcing challenged state laws); ***Mendez v. Heller***, 530 F.2d 457, 460 (2nd Cir. 1976) (state attorney general's duty to support the constitutionality of challenged state statutes, and his duty to defend actions in which the state is interested, insufficient to invoke ***Ex Parte Young*** in challenge to a state domestic relations law).

The Governor's general authority as the state's chief executive likewise fails to prove the requisite connection between him and Section 93-17-3(5) for ***Ex Parte Young*** purposes. Neither Section 93-17-3(5), nor any other specific provisions of the Code, specifically authorize the Governor to enforce the statute. ***Morris***, 739 F.3d at 746 (***Ex Parte Young*** inapplicable to claim against governor where challenged law did not specifically task governor "with its enforcement, or suggest he will play any role at all in its enforcement."). There is no connection between the Governor's executive enforcement authority and Section 93-17-3(5). ***Ex Parte Young*** does not authorize plaintiffs' claims against him. ***Okpalobi***, 244 F.3d at 416, 423-24; *see also **1st Westco Corp. v. School Dist. of Philadelphia***, 6 F.3d 108, 113 (3rd Cir. 1993) ("General authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law."); ***Shell Oil Co. v. Noel***, 608 F.2d 208, 211 (1st Cir. 1979) ("The mere fact that a governor is under a general duty to enforce

state laws does not make him a proper defendant in every action attacking the constitutionality of a state statute."); ***American Tradition Institute v. Colorado***, 876 F.Supp.2d 1222, 1239 (D. Colo. 2012) (allegations that governor "publicly supported" a challenged state law failed to justify apply *Ex Parte Young* against him).

Executive Director Berry, like the other defendants targeted for preliminary injunctive relief, cannot dictate how a Mississippi judge adjudicates the movants' potential future adoption suits, or whether the judge awards an adoption or not. He cannot enforce Section 93-17-3(5) and does not enforce Section 93-17-3(5). The movants cannot point to anything in the statute, any other provision of the Code, or any DHS policy authorizing the Executive Director to grant or deny adoptions. ***Ex Parte Young*** does not justify disregarding Executive Director Berry's Eleventh Amendment immunity. *See **Okpalobi***, 244 F.3d at 414-17.

Additionally, to defeat the Eleventh Amendment with ***Ex Parte Young***, it is not enough to simply show a defendant has some authority to enforce a challenged law. There also must be some credible threat the defendants will attempt to enforce the statute at issue for a plaintiff to take advantage of ***Ex Parte Young***. *See **Okpalobi***, 244 F.3d at 417 (***Ex Parte Young*** requires an ability to enforce a statute and demonstrated willingness to enforce it); ***Long v. Van de Kamp***, 961 F.2d 151, 152 (9th Cir. 1992) (Eleventh Amendment barred suit, and no case or controversy existed where there was no threat that Attorney General would pursue or encourage other officials to purse violations of California vehicle code challenged by plaintiff); ***Kelley v. Metropolitan County Bd. of Education***, 836 F.2d 986, 990-91 (6th Cir. 1987), *cert. denied*, 487 U.S. 1206 (1988) (***Ex Parte Young*** inapplicable to defendants not

threatening to enforce challenged law).

The movants have not identified and cannot point to any action or inaction of the Attorney General, Governor, or Executive Director Berry demonstrating they have attempted to enforce, or will attempt to enforce, Section 93-17-3(5) against them in their putative future adoption proceedings, even wrongfully assuming the defendants somehow have authority to do so. There is nothing the defendants have done, or threatened to do, which precludes the movants from filing their adoption petitions in a Mississippi state court, or otherwise seeking to obtain an adoption. Assuming the movants could ever prove any of the defendants have the authority to apply Section 93-17-3(5) or reject any petition for adoption, the fact that none of the defendants have ever threatened to prevent the movants from seeking an adoption decree precludes their reliance on ***Ex Parte Young***.[6]

### C.    Movants' constitutional claims lack merit.

Even if Article III and/or the Eleventh Amendment do not prohibit the movants' "as applied" challenge to Section 93-17-3(5) altogether, they still lack a substantial likelihood of success on the merits. While the Supreme Court's decisions in ***Obergefell v. Hodges***, 576 U.S. --- (June 26, 2015) and ***United States v. Windsor***, 133 S.Ct. 2675 (2013) recently established that the federal and state governments must recognize valid same sex marriages, and states must license them, over-extending those decisions

---

[6] In addition to the connection requirement for applying ***Ex Parte Young***, the doctrine may only be invoked if the defendants are committing an ongoing violation of federal law. *See* ***Green v. Mansour***, 474 U.S. 64, 68 (1985); ***Pennhurst***, 465 U.S. at 106, 121. Although plaintiffs claim that Section 93-17-3(5) is the source of their claimed injuries, they fail to identify any ongoing violation of federal law committed by any of the defendants. For that additional reason, it would be inappropriate to adjudicate plaintiffs' claims against the defendants here under ***Ex Parte Young***.

to purportedly invalidate Section 93-17-3(5) through a preliminary injunction would be entirely inappropriate.

Rational basis review applies to the movants' Fourteenth Amendment claims. Any other "heightened" standard of review is only appropriate where a law burdens a fundamental right or targets a suspect class. *E.C. ex rel. Chatman v. Mississippi High Sch. Athletics Ass'n*, 868 F.Supp.2d 563, 568 (S.D. Miss. 2012).

In contrast to the fundamental right to marriage at issue in *Obergefell*, it is well-settled that Mississippi's adoption laws confer a statutory privilege, not a fundamental constitutional right to adopt protected by the Due Process or Equal Protection Clauses. *Martin v. Putnam*, 427 So. 2d 1373, 1377 (Miss. 1983); *see also Lofton v. Sec'y of Dept. of Children & Family Servs.*, 358 F.3d 804, 811 (11th Cir. 2004), *cert. denied*, 543 U.S. 1081 (2005) ("Because there is no fundamental right to adopt or be adopted, it follows that there can be no fundamental right to apply for adoption.");[7] *Lindley v. Sullivan*, 889 F.2d 124, 131 (7th Cir. 1989) ("Because the adoption process is entirely conditioned upon the combination of so many variables, we are constrained to conclude that there is no fundamental right to adopt."). Section 93-17-3(5) likewise does not implicate any fundamental due process right to "family integrity." *Lofton*, 358 F.3d at 812-15. Furthermore, Section 93-17-3(5) does not target

---

[7] As the movants' complaint points out, six years after the Eleventh Circuit's decision in *Lofton*, a Florida appellate court held the adoption law at issue there violated the Florida Constitution in *Florida Dept. of Children & Families v. Adoption of XXG*, 45 So. 3d 79, 81 (Fla. Dist. Ct. App. 2010). However, the Florida judiciary's broad construction of its state constitution does not diminish *Lofton*'s rationale or its application to the movants' federal constitutional claims raised here. *See, e.g., Traylor v. State*, 596 So. 2d 957, 961-63 (Fla. 1992) (recognizing Florida state courts' authority to interpret Florida Constitution more broadly than its federal counterpart).

a suspect class as a classification based on sexual orientation. *Lofton*, 358 F.3d at 818; *Johnson v. Johnson*, 385 F.3d 503, 532 (5ᵗʰ Cir. 2004).

In *Lofton*, the Eleventh Circuit illustrated the appropriate deferential review and respect for legislative judgment applicable in this challenge when it affirmed the constitutionality of Florida's prohibition against homosexual adoption in 2004. *See Lofton*, 358 F.3d at 818. "Rational-basis review, 'a paradigm of judicial restraint,' does not provide 'a license for courts to judge the wisdom, fairness, or logic of legislative choices.' . . . The question is simply whether the challenged legislation is rationally related to a legitimate state interest." *Id.* (quoting *F.C.C. v. Beach Communications, Inc.*, 508 U.S. 307, 313-14 (1993) and citing *Heller v. Doe*, 509 U.S. 312, 320 (1993)). The "legislative classification 'is accorded a strong presumption of validity,'" and "'must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Id.* (quoting *Heller*, 509 U.S. at 319, 320). This holds true "'even if the law seems unwise or works to the disadvantage of a particular group, or if the rationale for it seems tenuous.'" *Id.* (quoting *Romer v. Evans*, 517 U.S. 620, 632 (1996)).

In affirming Florida's prohibition on adoption by homosexuals, the Eleventh Circuit concluded that the statute

> emphasizes a vital role that dual-gender parenting plays in shaping sexual and gender identity and in providing heterosexual role modeling. Florida argues that disallowing adoption into homosexual households, which are necessarily motherless or fatherless and lack the stability that comes with marriage, is a rational means of furthering Florida's interest in promoting adoption by marital families

*Lofton*, 358 F.3d at 818-19.

Here, the Mississippi Legislature has concluded that dual-gender parenting is preferable and should be encouraged where possible by prohibiting adoption by same-gender couples. The movants will likely contend that this rationale is undermined by the State's allowance of unmarried adults, including unmarried homosexual persons, to adopt. The Eleventh Circuit rejected the same type of critiques of the adoption prohibition likely to be offered by these movants when concluding that the "Supreme Court repeatedly has instructed that neither the fact that a classification may be overinclusive or underinclusive nor the fact that a generalization underlying a classification is subject to exceptions renders the classification irrational." *Id.*, at 822-823. While "that the classification may be imperfect, that imperfection does not rise to the level of a constitutional infraction." *See id.*, at 823. For the same reasons *Lofton* rejected the plaintiffs' Fourteenth Amendment challenges to Florida's statute, the movants lack a substantial likelihood of success on the merits here.

## II.   No equitable factors justify the movants' requested preliminary injunctive relief.

### A.   No threat of irreparable injury in the absence of preliminary injunctive relief against the defendants.

Assuming the movants could prove a substantial likelihood of success on the merits, they still must independently demonstrate they will be irreparably harmed if the Court does not enter a preliminary injunction against the defendants. The movants misleadingly suggest that the denial of a constitutional right always constitutes "*per se*" irreparable harm justifying a preliminary injunction. [Movants' Mem. at pp. 5-6, Docket

No. 14].[8]  On a preliminary injunction inquiry, "[t]he 'decision regarding irreparable injury to the plaintiff must not be based on the ultimate issue of the constitutionality of the statute.'" ***Jackson Women's Health Organization v. Currier***, 878 F.Supp.2d 714, 716 (S.D. Miss. 2012) (quoting ***Manning v. Hunt***, 119 F.3d 254, 264 (4th Cir. 1997)).  The relative likelihood of the movants' chances of success on the merits, or lack thereof, does not affect their independent burden on a preliminary injunction inquiry to "demonstrate that irreparable injury is *likely* in the absence of an injunction." ***Winter v. Natural Resources Defense Council, Inc.***, 555 U.S. 7, 22 (2008) (emphasis in original) (collecting authorities).

A preliminary injunction against the defendants would not remedy the movants' claimed injury, or prevent any of their claimed immediate and irreparable harms.  Only a final adoption decree entered by a Mississippi chancery court would provide the movants with the "scores of concrete and important benefits and rights," [Movants' Mem. at p. 3, Docket No. 14], to which they claim entitlement.  None of the defendants can award the movants an adoption decree, or prevent them from obtaining an adoption decree.  None of the defendants has ever threatened to prevent them from obtaining an adoption decree.  "It would make little sense for a court to conclude that a plaintiff has shown irreparable harm when the relief sought would not actually remedy that harm.  A

_____

[8]  The movants cite cases such as ***Elrod v. Burns***, 427 U.S. 347, 373 (1976) for their mistaken proposition.  In ***Burns***, the Court stated "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." ***Burns***, 427 U.S. at 373 (citing ***New York Times Co. v. United States***, 403 U.S. 713 (1971)).  This is not a First Amendment case to which the movants' proposed "*per se*" rule might apply. *See*, *e.g.*, ***Siegel v. LePore***, 234 F.3d 1163, 1177-78 (11th Cir. 2000) (collecting authorities and rejecting the contention that a putative "violation of constitutional rights always constitutes irreparable harm").

plaintiff may be harmed by all sorts of things, but the irreparable harm considered by the court must be caused by the conduct in dispute and remedied by the relief sought." *Sierra Club v. United States Dept. of Energy*, 825 F.Supp.2d 142, 153 (D. D.C. 2011).

This is not a case where the movants' claimed harms can be alleviated by preliminarily enjoining a defendant Circuit Clerk to perform ministerial duties such as processing and issuing a marriage license application. Neither is it a case where preliminarily enjoining a defendant state regulator or district attorney from commencing an enforcement action will preserve the status quo by preventing a medical clinic from closing. Enjoining the defendants to do anything, or not to do anything, will not relieve movants of their alleged immediate irreparable injuries. For that most basic reason, the movants have failed to carry their burden of proving irreparable harm in the absence of their requested preliminary injunction against the defendants.

**B. The balance of harms weighs against awarding movants' requested preliminary injunctive relief targeting the defendants.**

While preliminarily enjoining the defendants from "enforcing" Section 93-17-3(5) would not cure the movants' claimed immediate and irreparable harms, their requested injunctive relief will potentially harm the defendants. The movants ambiguously seek "an immediate order preliminarily enjoining the relevant government officials from enforcing the Mississippi Adoption Ban as it applies to them." [Movants' Mem. at p. 2, Docket No. 14]. Preliminary injunctions, and any injunctions for that matter, must state their "terms specifically" and "describe in reasonable detail . . . the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1). Furthermore, injunctions only operate against

"parties," their "officers, agents, servants, employees, and attorneys," and "persons who are in active concert or participation" with them.  Fed. R. Civ. P. 65(d)(2); *see also Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1304 (Fed. Cir. 2012) ("It is well-recognized that courts may not enter injunctions against persons or entities that were not party to the litigation before them."); *Leu v. Int'l Boundary Comm'n*, 605 F.3d 693, 695 (9th Cir. 2010) (It is a "'basic principle of law that a person who is not a party to an action is not bound by the judgment in that action.'" (quoting Restatement (Second) of Judgments §§ 34, 62 cmt. a (1982)); *Speetjens v. Larson*, 401 F.Supp.2d 600, 611 (S.D. Miss. 2005) ("Pursuant to Rule 65 of the Federal Rules of Civil Procedure, this Court does not have the authority to enjoin one who is not a party to the action.").

Entering the movants' requested preliminary injunction would put the defendants at risk of contempt for the action or inaction of persons well-beyond their control, and not before the Court.  Compared to the lack of any alleged irreparable harm the movants face due to the defendants conduct, the potential harm to defendants due to the movants' sought after injunction cuts against awarding a preliminary injunction.

### C.      Movants' requested preliminary injunction would disserve the public interest.

As to the final factor, it is true that, assuming the movants are somehow likely to succeed on the merits here, "[g]enerally, the public interest is served by enjoining the enforcement of a law that likely violates the Constitution."  *Colorado Christian Univ. v. Sebelius*, 51 F.Supp.3d 1052, 1064 (D. Colo. 2014), *appeal docketed*, No. 14-1329 (10th Cir. Aug. 19, 2014) (citing *Chamber of Commerce of U.S. v. Edmondson*, 594 F.3d 742, 771 (10th Cir. 2010)).  Nevertheless, federal courts still

"should pay particular regard for the public consequences" when "employing the extraordinary remedy of injunction." ***Winter***, 555 U.S. at 24. Given the circumstances here, the Court should cautiously consider the potential harm to the public interest on account of the movants' ambiguous and overbroad requested relief. Enjoining "all relevant government officials from enforcing" Section 93-17-3(5), apparently including non-parties and/or unidentified officials over whom the defendants lack any authority, may create unnecessary confusion and friction between the Court, the parties, and third-parties that would undoubtedly disserve the public interest.

## CONCLUSION

For the reasons set forth above, and presented in their previously filed motion to dismiss, the defendants respectfully request that the Court enter an order denying the movants' requested preliminary injunction.

THIS the 11th day of September, 2015.

> Respectfully submitted,
>
> JIM HOOD, in his official capacity
> as Mississippi Attorney General
>
> By:   S/Justin L. Matheny
> Justin L. Matheny (Bar No. 100754)
> Office of the Attorney General
> P.O. Box 220
> Jackson, MS 39205
> Telephone: (601) 359-3680
> Facsimile: (601) 359-2003
> *jmath@ago.state.ms.us*
>
> *Counsel for Attorney General Jim Hood*
>
> AND
>
> MISSISSIPPI DEPARTMENT OF HUMAN

SERVICES, RICHARD BERRY, in his official
capacity as Executive Director of the
Mississippi Department of Human Services,
and PHIL BRYANT, in his official capacity as
Governor of the State of Mississippi

By:    <u>S/Tommy Goodwin</u>
Tommy Goodwin (Bar No. 100791)
Office of the Attorney General
P.O. Box 220
Jackson, MS 39205
Telephone: (601) 359-3680
Facsimile: (601) 359-2003
*tgood@ago.state.ms.us*

*Counsel for MDHS, Executive Director*
*Richard Berry, and Governor Phil Bryant*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document has been filed with the Clerk of
Court using the Court's ECF system and thereby served on all counsel of record who
have entered their appearance in this action to date.

THIS the 11th day of September, 2015.

<u>S/Justin L. Matheny</u>
Justin L. Matheny