**CAMPAIGN FOR SOUTHERN EQUALITY, ET AL.**　　　　**PLAINTIFFS**

**VS.**　　　　　　　　　　**CIVIL ACTION NO. 3:15cv578-DPJ-FKB**

**The MISSISSIPPI DEPARTMENT OF HUMAN**
**SERVICES, ET AL.**　　　　　　　　**DEFENDANTS**

---

**MEMORANDUM OF AUTHORITIES SUPPORTING THE**
**EXECUTIVE BRANCH DEFENDANTS' MOTION TO**
**DISMISS THE PLAINTIFFS' FIRST AMENDED COMPLAINT**
**FOR LACK OF SUBJECT MATTER JURISDICTION**

---

Some lawsuits, even when presenting federal constitutional issues, cannot be adjudicated in any federal district court on account of the Constitution's jurisdictional limitations, or at least should not be when well-established federal judicial policy merits abstention. This is one of them.

Three jurisdictional defects, which plaintiffs' recent addition of claims against several state court judges do not cure, preclude the plaintiffs from attacking Mississippi Code Section 93-17-3(5) by suing executive branch defendants Governor Bryant, Attorney General Hood, the Mississippi Department of Human Services, or Executive Director Berry in this Court. First, the plaintiffs lack Article III standing to sue the executive branch defendants for prospective relief declaring Section 93-17-3(5) invalid or enjoining them from enforcing it. None of the plaintiffs has filed an adoption petition in any state court. None of them has demonstrated they will be subjected to any real and threatened future injury on account of the executive branch defendants.

Even assuming plaintiffs' claimed injury meets their Article III burden, their injury is not fairly traceable to the executive branch defendants' conduct. These

defendants do not, and cannot, grant adoption petitions.  They cannot enforce Section 93-17-3(5) in adoption proceedings.  Moreover, declaring that the executive branch defendants cannot enforce Section 93-17-3(5), or enjoining them from doing so, will not redress plaintiffs' claimed injury.  Plaintiffs lack Article III standing to sue the executive branch defendants.

Second, even if plaintiffs satisfy the Article III standing test, the executive branch defendants' Eleventh Amendment immunity bars their claims.  The narrow Eleventh Amendment exception under *Ex Parte Young*, 209 U.S. 123 (1908) does not apply. *Ex Parte Young* requires a connection between an allegedly unconstitutional state law and a defendant's authority and willingness to enforce it.  That connection is lacking here.  The executive branch defendants cannot grant adoptions, and they cannot order state judges how to adjudicate adoption lawsuits, much less the result of any such adjudication.

Third, setting aside the Constitutional reasons this case does not belong here, the Court should at least abstain so Mississippi judges can interpret and apply the State's adoption code before dictating how they must interpret and apply it.  Mississippi's court system may, or may not, reasonably interpret Section 93-17-3(5) to allow plaintiffs to obtain the adoptions they say they really want, without invoking the Fourteenth Amendment.  Abstention is appropriate so state courts can make that decision in the first instance.

## FACTS

Mississippi adoption suits are governed by specific statutory procedures and adjudicated exclusively in Mississippi chancery courts.  [Miss. Code Ann. § 93-17-1 *et*

*seq.*].  The adoption code defines who may adopt an individual as "any person may be adopted in accordance with the provisions of this chapter in termtime or in vacation by an unmarried adult or by a married person whose spouse joins in the petition."  [Miss. Code Ann. § 93-17-3(4)].  A separate statutory provision, originally enacted by the Legislature in 2000, states "[a]doption by couples of the same gender is prohibited." [Miss. Code Ann. § 93-17-3(5)].  No reported decision from any Mississippi appellate court has examined how, or whether, the provisions apply in any adoption suit involving married persons of the same gender.

***The Plaintiffs' Lawsuit.***  On August 12, 2015, two plaintiff advocacy groups and eight individual plaintiffs filed this lawsuit against the original defendants Mississippi Department of Human Services (DHS), Richard Berry, Executive Director of DHS, Governor Phil Bryant, and Attorney General Jim Hood, in their official capacities (the "executive branch defendants"), challenging Section 93-17-3(5).  [Complaint, Docket No. 1].  On August 28, four of the individual plaintiffs moved for a preliminary injunction against the executive branch defendants to generally prohibit them from "enforcing" Section 93-17-3(5).  [Motion for Preliminary Injunction & Supporting Mem., Docket Nos. 13 & 14].

On September 2, the executive branch defendants answered the Complaint. [Attorney General Answer and Defenses, Docket No. 17; DHS, DHS Executive Director, and Governor Answer and Defenses, Docket No. 18].  The executive branch defendants also moved to dismiss the Complaint for lack of subject matter jurisdiction by demonstrating plaintiffs' lack of Article III standing to sue them, and that Eleventh Amendment immunity bars the plaintiffs' claims against them.  [Motion to Dismiss &

Supporting Mem., Docket Nos. 15 & 16; Joinder in Motion to Dismiss, Docket No. 19].

In lieu of responding to the executive branch defendants' motion, on September 11, the plaintiffs amended their Complaint to add, as named defendants, three Mississippi Chancery Court Districts and nine state court chancery judges, in their official capacities (the "judicial branch defendants"). [First Amended Complaint, Docket No. 23].[1]

Identically to their original Complaint, plaintiffs contend Section 93-17-3(5) violates the Equal Protection and Due Process Clauses of the United States Constitution and seek only equitable relief declaring Section 93-17-3(5) unconstitutional, and enjoining all the defendants from enforcing it. [*Id.*, at pp. 34-41]. The organization plaintiffs, Campaign for Southern Equality and Family Equality Council, are advocacy groups that conduct legal clinics, provide resources and support, engage in litigation, and publicly advocate LGBT/LGBTQ rights in Mississippi and elsewhere. [*Id.*, at ¶¶ 7-9]. The individual plaintiffs include married and unmarried women alleging they want to pursue an adoption action. None of the plaintiffs specifically claims to have ever filed any adoption action in any state court, much less that any such action is pending before, or has been adjudicated by, any Mississippi court or the judicial branch defendants.

Individual plaintiffs Phillips and Smith allege they are married, and Phillips is the biological mother of an eight year old daughter. [*Id.*, at ¶¶ 10, 13]. They want Smith to adopt Phillips' eight year old daughter, and the daughter wants to be adopted by Smith.

---

[1] With one minor exception mentioned below, the First Amended Complaint merely adds the judicial branch defendants by name, and fails include any new factual allegations against any defendants. The executive branch defendants' arguments for dismissing the original Complaint and those regarding dismissal of the First Amended Complaint overlap, therefore, the executive branch defendants incorporate herein their initial motion and supporting memorandum [Docket Nos. 15 & 16] by reference.

[*Id.*, at ¶ 17].  Phillips and Smith do not contend they have filed an adoption petition in any court.  Rather, they complain to have been unable to secure a home study to facilitate the adoption.  [*Id.*, at ¶ 18].

Similarly, plaintiffs Garner and Hrostowski assert they are married, and Garner is the biological mother of a fifteen year old son.  [*Id.*, at ¶ 19].  They want Hrostowski to adopt Garner's fifteen year old son, and the son wants to be adopted by Hrostowski. [*Id.*, at ¶ 25].  They further claim that they consulted an attorney about an adoption approximately fifteen years ago and were told their contemplated adoption suit was not possible under Mississippi law.  [*Id.*, at ¶ 22].  Their pleading is silent as to any actual steps ever taken to pursue an adoption.

Plaintiffs Harbuck and Rowell assert they are not married, but are engaged to be married and plan to wed in January 2016.  [*Id.*, at ¶ 26].  Once married, they hope to jointly adopt children through Mississippi's foster care system.  [*Id.*, at ¶ 27].  The complaint does not allege whether Harbuck or Rowell have taken any affirmative steps to become a foster care resource parent or initiated any adoption proceedings, or specify any particular time in the future they might attempt to do so.

Plaintiffs Sweeten-Lunsford and Lunsford allege they are married, and want to adopt children through foster care.  [*Id.*, at ¶ 31].  They do not claim to have ever submitted an application to participate in the foster care program.  However, they allege both attended a past DHS training session for potential foster care resource parents, spoke with an unidentified social worker, and were told they could not participate in the foster program or adopt foster children. [*Id.*, at ¶ 32].  Their allegations do not identify when any such conversation or training session took place.  Additionally, the First

Amended Complaint's only new factual allegations assert that "on or about July 1, 2015" Sweeten-Lunsford called an unidentified DHS employee on the telephone. [*Id.*, at ¶ 34]. According to the amended pleading, the unnamed employee allegedly spoke with Executive Director Berry, and advised Sweeten-Lunsford that Section 93-17-3(5) precluded Sweeten-Lunsford and Lunsford from participating in the foster program or adopting through the program. [*Id.*].

***The Executive Branch Defendants.*** Defendant DHS is a state executive agency established by the Mississippi Legislature and authorized by statute to provide programs and services in various areas related to public welfare, including aging and adult services, community services, early childhood care and development, family and children's services, family foundation and support, field operations and youth services. [*See* Miss. Code Ann. § 43-1-1 *et seq.*; Declaration of Mark Smith at ¶ 3, Ex. "1" to Motion].[2] Richard Berry is DHS's Executive Director and sued solely in his official capacity. [Amended Complaint at ¶ 36, Docket No. 23]. Executive Director Berry is the chief executive of the agency, which includes various departments and divisions, including DHS's Division of Family and Children's Services (DFCS). DFCS is the organizational unit which provides programs and services relating to adoption and foster care, principally through its Adoption Unit. [*See* Miss. Code Ann. § 43-1-2; Declaration of Mark Smith at ¶ 4, Ex. "1" to Motion]. DFCS is authorized to establish DHS policies relating to adoption and foster care programs. Its current polices are

---

[2] The executive branch defendants also previously filed Mark Smith's August 31, 2015 Declaration as Exhibit "A" to their motion to dismiss plaintiffs' original Complaint. [*See* Docket No. 16-1].

published in DFCS's Policy Manual and a matter of public record.[3]

DHS (as well as the other executive branch defendants) cannot grant or deny adoption petitions filed in Mississippi courts. The agency's involvement, if any, in an adoption proceeding depends upon the status of the individual to be adopted.

In non-foster care adoption actions, DHS might be involved in the proceeding if ordered by the court to perform an adoption home study. A completed home study – an investigation and report utilized by the court in determining whether a proposed adoption is in the best interests of the individual to be adopted – may be required before any Mississippi court awards an adoption. [*See* Miss. Code Ann. § 93-17-3(6)]. An adopting party or parties may obtain a home study from a licensed social worker approved by the court in which an adoption petition is filed, or a court-ordered home study from a DHS social worker after filing the adoption petition. [*Id.*; *see also* Miss. Code Ann. § 93-17-11 (DHS may be ordered by the court to provide a home study *after* the petition is filed); Declaration of Mark Smith at ¶ 7, Ex. "1" to Motion]. In adoption suits where the petitioner or petitioners are relatives or a stepparent of the prospective adoptee, the chancery court may waive the home study requirement. [*See* Miss. Code Ann. § 93-17-11 (the chancery court "shall require in adoptions, *other than those in which the petitioner or petitioners are a relative or stepparent of the child*, that a home study be performed of the petitioner or petitioners . . ..")].

None of the plaintiffs allege they have ever filed any non-foster care adoption

---

[3] DFCS's Policy Manual is available on-line at: <http://www.mdhs.state.ms.us/family-childrens-services/dfcs-policy> (last accessed October 2, 2015). The particular Sections of DFCS's Policy Manual referenced in this brief are affixed to the executive branch defendants' motion as Exhibits "3," "4," and "5".

action, or that DHS has ever been ordered by any Mississippi state court to provide a home study, or failed to provide a home study, in any adoption action. If a state court orders DHS to provide a home study in an action involving the plaintiffs, or any other prospective adopting parties of the same gender, DHS would not disregard the court's order or refuse to conduct and provide the home study, or any other investigation and report. [Declaration of Mark Smith at ¶ 8, Ex. "1" to Motion].

Like non-foster care adoption actions, foster care adoption actions also require filing an adoption lawsuit. DHS has an established process by which persons apply, submit to various investigations, and train to participate in the foster care program, and then may eventually file an action to adopt a foster care child. The process follows DFCS's comprehensive policies and procedures pertaining to foster care, foster care resource parent licensing, and foster care resource parent adoptions. [*See* DFCS Policy Manual, Sections D (Foster Care), F (Licensure) & G (Adoption), Exs. "3," "4," and "5" to Motion]. Prospective resource parents must first officially apply to participate in the program. [Declaration of Mark Smith at ¶ 11, Ex. "1" to Motion; Second Declaration of Mark Smith at ¶ 8, Ex. "2" to Motion]. The applicants must meet certain criteria, including that they are 21 years old, and are legally single and not cohabitating with an unrelated person or are legally married spouses. [Declaration of Mark Smith at ¶ 11, Ex. "1" to Motion; DFCS Policy Manual, Section F (Licensure) at p. 12, and Appendix A at p. 64, Ex. "4" to Motion].[4]

_____

[4] If the initial requirements are met, several other steps must be undertaken. For instance, the applicants must submit to various background checks, participate in training, and a home study and other interviews are conducted. [Declaration of Mark Smith at ¶ 12, Ex. "1" to Motion; DFCS Policy Manual, Section F (Licensure), Appendix C-F at pp. 65-78, Appendinx H at p. 81, & Section G (Adoption), Exs. "4" and "5" to Motion]. If those steps are satisfied, visits

DHS's policies and procedures do not preclude legally married spouses, whether of the same gender or not, from applying to participate in the foster care program as resource parents, or seeking an adoptive placement from a court. [*See* DFCS's Policy Manual, Sections D (Foster Care), F (Licensure) & G (Adoption), Exs. "3," "4," and "5" to Motion]. Consistent with its policies and procedures, DHS has not refused to initiate the foster care adoption process for applicants satisfying the initial requirements to participate, such as the requirement that the prospective adopting party or parties must be legally single and not cohabitating with an unrelated person, or legally married spouses. [Mark Smith Declaration at ¶ 14, Ex. "1" to Motion].[5]

Phil Bryant is the Governor of the State of Mississippi and sued in his official capacity. [Amended Complaint at ¶ 37, Docket No. 23]. Pursuant to the Mississippi Constitution, and by statute, Governor Bryant has general authority as the state's "supreme executive officer of the state," a duty to "see that the laws are faithfully executed," and various other general duties prescribed by law. [*See* Miss. Const. art. 5, § 123; Miss. Code Ann. § 7-1-5]. Governor Bryant has specific authority to appoint DHS's

---

take place between the prospective adopting parties and the prospective foster care child to be adopted. [Declaration of Mark Smith at ¶ 12, Ex. "1" to Motion]. After visitation sessions, the prospective adopting parties may initiate court proceedings for a court-ordered placement of the foster care child in the home. [*Id.*] DHS continues to monitor the placement, ordinarily for at least six months. [*Id.*] If those steps are satisfied, the prospective adopting parties may seek a final adoption decree from the court. [*Id.*] During the process, the court in which the proceeding is filed makes the determinations regarding a foster care child's placement in the resource home, and is the sole arbiter of whether to grant or deny the proposed adoption. [*Id.*, at ¶ 13].

[5] Additionally, the interim Director of DFCS has affirmatively testified that, regardless of their alleged past discussions and phone calls with unidentified DHS employees, if plaintiffs Sweeten-Lunsford and Lunsford complete and submit the required foster care resource parent application, DHS will consider the application and they will not be denied on account of their status as married persons of the same gender. [Second Declaration of Mark Smith at ¶ 10, Ex. "2" to Motion].

Executive Director and has policy direction authority with respect to the agency. [*See* Miss. Code Ann. § 43-1-2]. However, similar to the DHS and its Executive Director, Governor Bryant lacks any specific authority to adjudicate adoption suits, or grant or deny adoptions.

Jim Hood is the Attorney General of the State of Mississippi and sued in his official capacity. [Amended Complaint at ¶ 38, Docket No. 23]. The Attorney General is the state's chief legal officer, authorized to prosecute and defend lawsuits on behalf of the state, its agencies, and officers sued in their official capacities, and is charged with the duty to intervene in lawsuits and argue the constitutionality of the state's laws. [*See* Miss. Code Ann. §§ 7-5-1, 7-5-39]. Like the other executive branch defendants, Attorney General Hood has no authority to adjudicate adoption suits, or grant or deny adoptions.

**The Newly Added Judicial Branch Defendants.** Mississippi chancery courts possess full jurisdiction in all matters and cases as provided by the state Constitution, and otherwise as provided by statute. [*See* Miss. Const., art. 6, § 159; Miss. Code Ann. § 9-5-81]. Chancery courts have specific and exclusive jurisdiction to adjudicate Mississippi adoption actions. [*See* Miss. Const., art. 6, § 159; Miss. Code Ann. § 93-17-3(4)].

The Tenth, Fourteenth and Twentieth Chancery Districts are collectively comprised of the Chancery Courts of Forrest, Lamar, Marion, Pearl River, Perry, Chickasaw, Clay, Lowndes, Noxubee, Oktibbeha, Webster, and Rankin Counties. [*See* Miss. Const., art. 6, § 152; Miss. Code Ann. §§ 9-5-3, 9-5-35, 9-5-43, 9-5-57]. Judges Dawn Beam, M. Ronald Doleac, Deborah J. Gambrell, Johnny L. Williams, Kenneth M. Burns, Dorothy W. Colom, Jim Davidson, John Grant, and John C. McLaurin, Jr. are the

current Chancery Judges for the Tenth, Fourteenth, and Twentieth Chancery Districts,

[*see* Miss. Code Ann. §§ 9-5-36, 9-5-45, 9-5-58], and sued in their official capacities

[Amended Complaint at ¶¶ 42-50, Docket No. 23]. The Amended Complaint does not

allege any of the judicial branch defendants have adjudicated any adoption suits

involving plaintiffs (or any other similarly situated persons) in the past, or that any such

adoption suits are currently pending before any of the judicial branch defendants.

## ARGUMENT

I. **No Article III case or controversy exists with respect to plaintiffs' claims against the executive branch defendants.**

To make out a required Article III case or controversy, all federal plaintiffs' claims

must meet each of three separate elements for standing:

> (1) the plaintiff[s] must have suffered an "injury in fact"-an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical;

> (2) there is a causal connection between the injury and the conduct complained of-the injury has to be fairly traceable to the challenged action of the defendant[s], and not the result of the independent action of some third party not before the court; and

> (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1991) (internal citations and

quotations omitted).[6] The plaintiffs, as the parties seeking to invoke the Court's

---

[6] These three required elements for Article III standing apply to individual and organizational plaintiffs alike. *See **N.A.A.C.P. v. City of Kyle, Tex.***, 626 F.3d 233, 237 (5th Cir. 2010) ("To have standing, an association or organization must satisfy the well-known requirements of ***Lujan***[.]"); ***Association of Community Organizations for Reform v. Fowler***, 178 F.3d 350, 356 (5th Cir. 1999) ("An organization has standing to sue on its own behalf if it meets the same standing test that applies to individuals.") (citing ***Havens Realty Corp. v. Coleman***, 455 U.S. 363, 378-79 (1982)).

jurisdiction, have the burden of proof. ***Id.***, at 561. "The court must evaluate each plaintiff's Article III standing for each claim; 'standing is not dispensed in gross.'" ***Fontenot v. McCraw***, 777 F.3d 741, 746 (5th Cir. 2015) (quoting ***Lewis v. Casey***, 518 U.S. 343, 358 n. 6 (1996)). A failure to establish every standing element deprives the Court of jurisdiction over the claim at issue. *See* ***Rivera v. Wyeth-Ayerst Labs.***, 283 F.3d 315, 319 (5th Cir. 2002).

### A. Plaintiffs lack a real and threatened injury-in-fact.

The plaintiffs must delineate, and ultimately establish, an injury-in-fact that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." ***Lujan***, 504 U.S. at 560. They cannot simply rely on allegations that some injury might occur at some indefinite point in time. Instead, and particularly given that plaintiffs seek injunctive and prospective declaratory relief here, they must prove not only an injury, but also "a real and immediate threat of future injury in order to satisfy the 'injury in fact' requirement." ***City of Los Angeles v. Lyons***, 461 U.S. 95, 102-05 (1983).[7]

Based upon their own (now twice pled) allegations, the plaintiffs have not sufficiently demonstrated a real and immediate threat of future injury-in-fact to sustain their standing. None of the plaintiffs alleges they have actually filed an adoption

---

[7] The issue of standing "bears close affinity to questions of ripeness—whether the harm asserted has matured sufficiently to warrant judicial intervention." ***Warth v. Sedlin***, 422 U.S. 490, 499 n. 10 (1975). "Ripeness often overlaps with standing, 'most notably in the shared requirement that the injury be imminent rather than conjectural or hypothetical.'" ***Mississippi State Democratic Party v. Barbour***, 529 F.3d 538, 545 (5th Cir. 2008) (quoting ***Brooklyn Legal Servs. Corp. v. Legal Servs. Corp.***, 462 F.3d 219, 225 (2nd Cir. 2006)). Since plaintiffs lack a real and immediate threat of injury caused by the executive branch defendants here, in turn, a lack of ripeness is another reason their claims do not present an Article III case or controversy.

proceeding in any Mississippi court at any time. Each of the plaintiffs' allegations merely describes their alleged injury as a generalized intent to some day seek an adoption decree and a belief their effort will be unsuccessful. That does not constitute a threat of future injury-in-fact supporting standing. *See **Lofton v. Butterworth***, 93 F.Supp.2d 1343, 1347 (S.D. Fla. 2000) (holding plaintiffs who had not initiated adoption proceedings lacked standing to challenge Florida's adoption prohibition). Given their lack of a real and immediate threat of injury at the hands of the executive branch defendants, plaintiffs' claims against them should be dismissed.

**B.   No causal connection between plaintiffs' claimed injury and the executive branch defendants' conduct exists.**

Even assuming that plaintiffs have sufficiently demonstrated an injury-in-fact, they still lack any demonstrated "causal connection" between any injury and any of the executive branch defendants' conduct. Plaintiffs' asserted injury, *i.e.*, that Section 93-71-3(5) will prohibit them from obtaining an adoption decree from a Mississippi court, is not "fairly traceable" to any alleged acts of the executive branch defendants. *Lujan*, 504 U.S. at 560.

The plaintiffs' causation problems begin with the "long-standing rule that a plaintiff may not sue a state official who is without any power to enforce the complained-of statute." ***Okpalobi v. Foster***, 244 F.3d 405, 426 (5th Cir. 2001). Their generalized claim that "each of the Defendants is charged with enforcing the laws of the State of Mississippi related to adoptions," [Amended Complaint at ¶ 51, Docket No. 23], is simply inaccurate, as a matter of law.

The Attorney General cannot grant or deny a petition for any Mississippi

adoption. The Attorney General is the "chief legal officer and advisor for the state, both civil and criminal, and is charged with managing all litigation on behalf of the state, except as otherwise provided by law." Miss. Code Ann. § 7-5-1. He is authorized to bring or defend lawsuits on behalf of the state and its agencies, and has a duty to "intervene and argue the constitutionality of any statute when notified of a challenge thereto, pursuant to the Mississippi Rules of Civil Procedure." *Id.* The Attorney General also defends lawsuits filed against the state or state officers in their official capacities. Miss. Code Ann. § 7-5-39.

The Attorney General's general duties and authority to bring or defend lawsuits by or against the state, its agencies, and officers, and argue the constitutionality of any laws, in no sense include "enforcing" or "insuring compliance" with Section 93-17-3(5), which is, and can only be, interpreted and applied by a judge who adjudicates an adoption proceeding. He does not and cannot dictate what a chancellor, or any other member of the Mississippi judiciary, can and cannot do in any case, much less an adoption lawsuit. Moreover, even if the Attorney General had any authority to dictate how any chancellor adjudicates any given adoption case, he has not threatened to use any such alleged authority against plaintiffs or anyone else. There is simply no "causal connection" between the Attorney General's conduct, or even threatened future conduct, and any injury-in-fact claimed by plaintiffs here. ***Okpalobi***, 244 F.3d at 426.

Similar to the Attorney General, the Governor cannot adjudicate a petition for a Mississippi adoption. The Governor has general authority as the state's "supreme executive officer of the state" and a duty to "see that the laws are faithfully executed." Miss. Code Ann. § 7-1-5(a), (c); *see also* Miss. Const. art. 5, § 123. He supervises "the

official conduct of all executive and ministerial officers" and "may bring any proper suit affecting the general public interests, in his own name for the State of Mississippi, if after first requesting the proper officer so to do, the officer refuses or neglects to do the same." Miss. Code Ann. § 7-1-5(d), (n). But those general duties and authority do not include dictating how a chancellor decides an adoption lawsuit, or interprets and applies any law. Like the Attorney General, the Governor lacks the power to mandate that any Mississippi judicial officer decide any case in any particular manner. Furthermore, even if he did have the authority to mandate what a state court judge does, the Governor has not attempted to assert any such supposed authority against the plaintiffs or anyone else. There is no "causal connection" between the Governor's conduct and any claimed injury-in-fact at issue here. *Okpalobi*, 244 F.3d at 426.

DHS and Executive Director Berry also lack the authority to adjudicate any petition for adoption or dictate what any state court judge may or may not do. DHS has the ability and authority to conduct home studies. A home study performed by a social worker can be a requisite for an adoption, Miss. Code Ann. § 93-17-3(6), and a court may order DHS to provide a home study in an adoption proceeding, Miss. Code Ann. § 93-17-11. But no court has ever ordered DHS to provide a home study to any of the plaintiffs. No court has ever ordered DHS to provide a home study to any prospective adopting parties of the same gender in any adoption proceeding. [Mark Smith Declaration at ¶ 8, Ex. "1" to Motion]. If a court ordered DHS to do so in any such proceeding, it would not refuse to comply with the court's order. [*Id.*].[8]

---

[8] In many adoption lawsuits, potentially including the future adoption cases Smith, Phillips, Garner, and Hrostowski claim they intend to someday file, no home study (and no DHS

DHS also administers the state's foster care program and provides adoption-related services in connection with its program.  DHS screens applicants seeking to participate in the program as resource parents, and facilitates the process by which prospective resource parents obtain foster care placements, and if desired, eventually may initiate adoption proceedings involving foster care children.  [Mark Smith Declaration at ¶¶ 11-12, Ex. "1" to Motion].  DHS policy requires that applicants be either legally single and not cohabiting with an unrelated adult, or legally married, to qualify as a resource parent.  [*Id.*, at ¶ 11].  After the law changed in late June/early July 2015 as a consequence of ***Obergefell v. Hodges***, 576 U.S. --- (June 26, 2015), and required all states, including Mississippi, to license and recognize marriages between persons of the same gender, DHS policy obviously no longer precludes married persons of the same gender from becoming foster care resource parents, and DHS does not apply its policies to preclude married persons, of any gender, from seeking to become foster care resource parents.  [*Id.*, at ¶¶ 16-17].

Awarding an adoption is entirely up to the court in which the adoption petition is filed.  DHS does not have the authority to grant or deny an adoption.  Even though a court may order DHS to conduct home studies, and DHS has established policies regarding qualifications for foster care resource parents, DHS has not exercised those adoption-related duties in a manner inhibiting legally married spouses from seeking an

---

social worker involvement) is ever required since chancery courts can waive the home study requirement altogether if the adoption petitioner or petitioners are relatives or a stepparent of the child.  *See* Miss. Code Ann. § 93-17-11.

adoption from a Mississippi court, and has no intention to do so.[9]  There is no

connection, much less any "causal connection," between DHS or Executive Director

Berry and the plaintiffs' claimed injury.  *Okpalobi*, 244 F.3d at 426.

None of the executive branch defendants can dictate whether or how Section 93-

17-3(5) is interpreted or applied, or not, in any adoption proceeding.  None of the

defendants has the authority to apply Section 93-17-3(5) to preclude any adoption.

None of the defendants has threatened to apply it to the plaintiffs, or anyone else.  No

"causal connection" between plaintiffs' alleged injury-in-fact and any of the executive

branch defendants' alleged conduct exists to support Article III standing.

### C.     Plaintiffs' claims also fail the redressability element required to prove standing.

As for the third standing element, even if the first two requisites are somehow

met here, a declaration or injunction entered against the executive branch defendants

would not redress their claimed threatened future injuries.  Article III standing –

including its required "causal connection" and redressability elements – "must exist

with respect to each claim the plaintiff 'seeks to press and for each form of relief that is

sought.'" *K.P. v. LeBlanc*, 729 F.3d 427, 436 (5th Cir. 2013) (quoting *Davis v. FEC*,

554 U.S. 724, 734 (2008) (internal quotation marks omitted)); *see also Buchholz v.*

*Rural Community Ins. Co.*, 2005 WL 1711153, at *1 (W.D. Wis. July 20, 2005)

---

[9]  Notwithstanding plaintiffs' newly minted allegations regarding a purported telephone call between Sweeten-Lunsford and an unidentified DHS employee "on or about July 1, 2015," [Amended Complaint at ¶ 34, Docket No. 23], DHS has no record that Lunsford and/or Sweeten-Lunsford have ever officially applied to participate in the state's foster care program [Second Mark Smith Declaration at ¶¶ 5-8, Ex. "2" to Motion].  More importantly, the Director of DHS's DFCS has testified that if Lunsford and Sweeten-Lunsford do ever actually submit the required application, it will be considered and not denied on account of their status as married persons of the same gender.  [*Id.*, at ¶ 10].

("*Lujan* requires a plaintiff to establish standing as to *each defendant* sued.")
(emphasis in original).

None of the executive branch defendants has the authority to order what cases the Mississippi judiciary may hear or not hear. None of the executive branch defendants can grant or deny a Mississippi adoption petition. An order from this Court against the executive branch defendants, declaring that "Miss. Code Ann. § 93-17-3(5), as applied to Plaintiffs and on its face, violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution" and "[p]reliminarily and permanently enjoining the enforcement and application of Miss. Code Ann. § 93-17-3(5)," [Amended Complaint at p. 41, Docket No. 23], would not redress the plaintiffs' claimed threatened future injuries. "For all practical purposes," ordering any relief against the executive branch defendants would be "utterly meaningless." *Okpalobi*, 244 F.3d at 426.[10]

Plaintiffs have not satisfied, and cannot satisfy, the elements for Article III standing necessary to attack Section 93-17-3(5) by suing the executive branch defendants. Their claims against them accordingly should be dismissed.

## II. Eleventh Amendment immunity alternatively bars this lawsuit.

### A. The Eleventh Amendment applies to plaintiffs' claims.

Even if the Court finds the plaintiffs have the requisite standing to sue the executive branch defendants for the relief they seek, their claims are still otherwise due

---

[10] Indeed, "[a]n injunction enjoins a defendant, not a statute," *Okpalobi*, 244 F.3d at 426 n. 34, and federal courts cannot, consistent with the Eleventh Amendment, enter a judgment against a state officer which purports to bind a State as an entity, *Sherman v. Community Consolidated Sch. Dist. 21*, 980 F.2d 437, 441 (7th Cir. 1992).

for dismissal pursuant to the Eleventh Amendment. Immunity from suit in federal court under the Eleventh Amendment applies to claims against the State, agencies considered an "arm of the state," and state officials sued in their official capacities. ***Pennhurst State Sch. & Hosp. v. Halderman***, 465 U.S. 89, 121 (1984).

The named defendant "Mississippi Department of Human Services" is an "arm of the state" and entitled to Eleventh Amendment immunity against the plaintiffs' claims. *See* ***Blount v. Mississippi Dept. of Human Services***, 2015 WL 59091, at *1 (S.D. Miss. Jan. 5, 2015) (collecting authorities and holding "MDHS is an arm of the State of Mississippi" entitled to Eleventh Amendment immunity). DHS is entitled to dismissal under the Eleventh Amendment no matter what theory of liability plaintiffs assert against it, and no matter what relief plaintiffs seek. ***Pennhurst***, 465 U.S. at 100.[11]

The other named executive branch defendants – the Governor, Attorney General, and DHS Executive Director – are each state officials, sued in their official capacities, and entitled to Eleventh Amendment immunity. They possess immunity because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." ***Will***, 491 U.S. at 71 (internal citation omitted). Their immunity accordingly bars plaintiffs' claims. ***Pennhurst***, 465 U.S. at 100.

---

[11] Additionally, even if the Eleventh Amendment did not bar plaintiffs' Section 1983 claims against it, DHS would still be entitled to dismissal. DHS is not a "person" for purposes of Section 1983 and cannot be sued under that statute. *See* ***Will v. Michigan Dept. of State Police***, 491 U.S. 58, 71 (1989); ***Williams v. Berry***, 977 F.Supp.2d 621, 628 (S.D. Miss. 2013).

**B.    The *Ex Parte Young* doctrine does not exempt plaintiffs' claims against the executive branch defendants from the Eleventh Amendment.**

To avoid the Eleventh Amendment's bar, plaintiffs may contend their claims fit within the narrow exception to the executive branch defendants' immunity established in ***Ex Parte Young***, 209 U.S. 123 (1908).  The ***Ex Parte Young*** doctrine applies only when plaintiffs sue the appropriate state officials, in their official capacities, for allegedly committing an ongoing violation of federal law, and plaintiffs seek prospective equitable relief against them.  ***Aguilar v. Texas Dept. of Criminal Justice***, 160 F.3d 1052, 1054 (5th Cir. 1998); ***Sims v. Barbour***, 2010 WL 5184845, at *2 (S.D. Miss. Dec. 15, 2010).

**1.    No connection with enforcement of Section 93-17-3(5).**

Importantly, the ***Ex Parte Young*** doctrine only applies in a suit challenging a legislative enactment if the state officers sued "have 'some connection' with the enforcement of the act' in question or [are] 'specifically charged with the duty to enforce the statute' and [are] threatening to exercise that duty."  ***Morris v. Livingston***, 739 F.3d 740, 746 (5th Cir. 2014) (quoting ***Okpalobi***, 244 F.3d at 414-15) (alterations in original).  "The required 'connection' is not 'merely the general duty to see that the laws of the state are implemented,' but 'the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty.'" ***Id.*** (quoting ***Okpalobi***, 244 F.3d at 416).

Plaintiffs cannot satisfy the "connection" prong of the ***Okpalobi*** test.  Neither the Attorney General nor the Governor has any authority under Mississippi Code Section 93-17-3(5).  They cannot dictate whether or how any judicial officers apply it, or

not, in any given adoption proceeding.  Their Eleventh Amendment immunity against plaintiffs' claims is not subject to the narrow ***Ex Parte Young*** exception.

Plaintiffs have not identified, and they cannot identify, any specific authority the Attorney General possesses to enforce Section 93-17-3(5) against anyone.  His general duty, as plaintiffs allege, in "enforcing" or "insuring compliance with state law," [Amended Complaint at ¶¶ 38, 51, Docket No. 23], does not supply the required connection.  ***Okpalobi***, 244 F.3d at 416.  Without any more specific charge to enforce Section 93-17-3(5) under Mississippi law, ***Ex Parte Young*** does not operate against the Attorney General's immunity in this case.  ***Children's Healthcare is a Legal Duty, Inc. v. Deters***, 92 F.3d 1412, 1416-17 (6th Cir. 1996) (***Ex Parte Young*** inapplicable to claim where state attorney general was not charged with enforcing challenged state laws).

It is not enough to overcome the Eleventh Amendment that the Attorney General is generally charged with issuing opinions to state officers and arguing the constitutionality of the state's laws when attacked.  ***McBurney v. Cuccinelli***, 616 F.3d 393, 400-02 (4th Cir. 2010) (state attorney general's duty to render advisory opinions did not create requisite enforcement connection to challenged state law for ***Ex Parte Young*** exception); ***Mendez v. Heller***, 530 F.2d 457, 460 (2nd Cir. 1976) (state attorney general's duty to support the constitutionality of challenged state statutes, and his duty to defend actions in which the state is interested, insufficient to invoke ***Ex Parte Young*** in challenge to a state domestic relations law).  There is no connection between the Attorney General and Section 93-17-3(5) which strips him of Eleventh Amendment immunity from plaintiffs' claims.  He cannot order or otherwise force a

state court judge to apply, disregard, or overrule the statute. ***Smith v. Beebe***, 123 Fed. Appx. 261, 261-62 (8th Cir. 2005) (***Ex Parte Young*** failed to authorize claim against state attorney general challenging constitutionality of statute applied by state court judge in separate action).

Plaintiffs' reliance on the Governor's general authority to manufacture a connection between him and the challenged state law, [Amended Complaint at ¶¶ 37, 51, Docket No. 23], like their argument as to the Attorney General, lacks merit. Neither Section 93-17-3(5), nor any other specific provisions of the Code, specifically authorize the Governor to enforce the statute. ***Morris***, 739 F.3d at 746 (***Ex Parte Young*** inapplicable to claim against governor where challenged law did not specifically task governor "with its enforcement, or suggest he will play any role at all in its enforcement."). The Governor's general duties as the head of the Executive Branch do not divest him of Eleventh Amendment immunity against a constitutional challenge to a state statute. ***Okpalobi***, 244 F.3d at 416, 423-24; *see also **1st Westco Corp. v. School Dist. off Philadelphia***, 6 F.3d 108, 113 (3rd Cir. 1993) ("General authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law."); ***Shell Oil Co. v. Noel***, 608 F.2d 208, 211 (1st Cir. 1979) ("The mere fact that a governor is under a general duty to enforce state laws does not make him a proper defendant in every action attacking the constitutionality of a state statute."); ***American Tradition Institute v. Colorado***, 876 F.Supp.2d 1222, 1239 (D. Colo. 2012) (allegations that governor "publicly supported" a challenged state law failed to justify applying ***Ex Parte Young*** against him). There is no connection between the Governor's executive enforcement authority and Section 93-17-3(5).

Accordingly, ***Ex Parte Young*** does not authorize plaintiffs' claims against him.

Executive Director Berry, like the other defendants, cannot dictate whether a Mississippi judge awards an adoption or not. He cannot enforce Section 93-17-3(5) and does not enforce Section 93-17-3(5). Plaintiffs cannot point to anything in the statute, any other provision of the Code, or any DHS policy authorizing the Executive Director to grant or deny adoptions. Therefore, it would be entirely inappropriate to rely on ***Ex Parte Young*** to avoid Executive Director Berry's Eleventh Amendment immunity. *See* ***Okpalobi***, 244 F.3d at 414-17.

### 2. No threatened enforcement of Section 93-17-3(5), even imagining the executive branch defendants have the authority to do so.

Finally, to defeat the Eleventh Amendment with ***Ex Parte Young***, it is not enough to simply show a defendant has some authority to enforce a challenged law. There also must be some credible threat the defendant will attempt to enforce the statute at issue for a plaintiff to take advantage of ***Ex Parte Young***. *See* ***Okpalobi***, 244 F.3d at 417 (***Ex Parte Young*** requires an ability to enforce a statute and demonstrated willingness to enforce it); ***Long v. Van de Kamp***, 961 F.2d 151, 152 (9th Cir. 1992) (Eleventh Amendment barred suit, and not case or controversy existed where there was no threat that Attorney General would pursue or encourage other officials to purse violations of California vehicle code challenged by plaintiff); ***Kelley v. Metropolitan County Bd. of Education***, 836 F.2d 986, 990-91 (6th Cir. 1987) (***Ex Parte Young*** inapplicable to defendants not threatening to enforce challenged law), *cert. denied*, 487 U.S. 1206 (1988).

Plaintiffs have not legitimately identified and cannot point to any action or

inaction of the Attorney General, Governor, or Executive Director Berry demonstrating they have attempted to enforce, or will attempt to enforce, Section 93-17-3(5) against any of them. There is nothing the executive branch defendants have done, or threatened to do, which precludes plaintiffs from filing an adoption petition and obtaining an adoption decree in a Mississippi state court.

At a very minimum, assuming plaintiffs somehow have standing, and could ever prove any of the executive branch defendants have the authority to apply Section 93-17-3(5) or reject any petition for adoption, the fact that none of the executive branch defendants have ever threatened to prevent plaintiffs from seeking an adoption decree precludes their reliance on ***Ex Parte Young***.[12] The Eleventh Amendment bars plaintiffs claims against the executive branch defendants and no exception applies.

### III. If the Court does not dismiss plaintiffs' claims against the executive branch defendants, it should at least abstain from exercising subject matter jurisdiction.

Federal courts should abstain from deciding federal constitutional claims when a state court's potential ruling on an unsettled state law question may eliminate, or materially affect, the alleged federal claims. That well-established policy avoids unnecessary adjudication of federal questions, and is solidly grounded in the principle that "[f]ew public interests have a higher claim upon the discretion of a federal chancellor than the avoidance of needless friction with state policies . . .." ***Railroad***

---

[12] In addition to the connection requirement for applying ***Ex Parte Young***, the doctrine may only be invoked if the defendants are committing an ongoing violation of federal law. *See* ***Green v. Mansour***, 474 U.S. 64, 68 (1985); ***Pennhurst***, 465 U.S. at 106, 121. Although plaintiffs claim that Section 93-17-3(5) is the source of their claimed injuries, they fail to identify any ongoing violation of federal law committed by any of the executive branch defendants. For that additional reason, it would be inappropriate to adjudicate plaintiffs' claims against the defendants here under ***Ex Parte Young***.

***Commission v. Pullman Co.***, 312 U.S. 496, 500 (1941).  Even if Article III and/or the Eleventh Amendment do not preclude adjudicating plaintiffs' claims against the executive branch defendants, at the very least, the Court should abstain under the ***Pullman*** doctrine.

"***Pullman*** abstention is appropriate in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law." ***Ibarra v. Bexar County Hosp. Dist.***, 624 F.2d 44, 46 (5th Cir. 1980) (collecting authorities); *see also* ***Personhood Mississippi v. Hood***, 2010 WL 538302, at *3 (S.D. Miss. Feb. 9, 2010) ("'Federal court abstention is required when state law is uncertain and a state court's clarification of state law might make a federal court's constitutional ruling unnecessary.'") (quoting ***Gomez v. Dretke***, 422 F.3d 264, 268 (5th Cir. 2005)).  Federal cases warrant abstention when presenting "(1) a federal constitutional challenge to state action and (2) an unclear issue of state law that, if resolved, would make it unnecessary for us to rule on the federal constitutional question." ***Nationwide Mut. Ins. Co. v. Unauthorized Practice of Law Comm.***, 283 F.3d 650, 653 (5th Cir. 2002).  If the elements are satisfied, the Court should "'retain jurisdiction . . . but stay the federal suit pending determination of the state-law questions in state court.'" ***Id.***, at 655  (quoting ***Harris County Comm'rs Court v. Moore***, 420 U.S. 77, 88 n.14 (1975)).

This lawsuit meets both ***Pullman*** requirements.  The first element is obviously present here.  The plaintiffs assert federal constitutional challenges to a state statute. [*See* Amended Complaint at pp. 34-41, Docket No. 23].

The second element is likewise satisfied.  As the Fifth Circuit has recognized, the

second element is met when "'there is an issue of uncertain state law that is fairly subject to an interpretation [by a state court] which will render unnecessary or substantially modify the federal constitutional question.'" ***Moore v. Hosemann***, 591 F.3d 741, 745 (5th Cir. 2009) (quoting ***Baran v. Port of Beaumont Nav. Dist.***, 57 F.3d 436, 442 (5th Cir. 1995)) (alteration in original); *see also* ***United Home Rentals, Inc. v. Texas Real Estate Comm'n***, 716 F.2d 324, 331-32 (5th Cir. 1983) ("'One type of case almost universally recognized as appropriate for abstention is that of a state statute, not yet construed by the state courts, which is susceptible of one construction that would render it free from federal constitutional objection and another that would not.'") (quoting Friendly, Federal Jurisdiction: A General View, 93 (1973)).  Code Section 93-17-3 has not been interpreted or applied by Mississippi appellate courts in any reported opinion involving the plaintiffs, or any married persons of the same gender remotely or similarly situated to them.  However, Mississippi state courts could interpret and apply Section 93-17-3 to allow married persons of the same gender to pursue an adoption lawsuit, thereby eliminating, or at least modifying, plaintiffs' federal constitutional claims.

Mississippi Code Section 93-17-3 defines who may adopt an individual and specifies procedures for filing an adoption petition.  Subsection (4) establishes that "[a]ny person may be adopted in accordance with the provisions of this chapter in termtime or in vacation by an unmarried adult or by a married person whose spouse joins in the petition."  Miss. Code Ann. § 93-17-3(4).  The next subsection provides that "[a]doption by couples of the same gender is prohibited."  Miss. Code Ann. § 93-17-3(5).

Mississippi courts could possibly conclude that, as plaintiffs contend for purposes of setting up the statutory scheme for their federal constitutional attack, Section 93-17-

3(5) prohibits married same gender spouses from seeking an adoption. A state court could reason that when married same gender spouses submit file an adoption suit, it is submitted as a "couple" since the petition must be joined by both spouses pursuant to Section 93-17-3(4). A state court might accordingly conclude the adoption case implicates an "adoption by [a] couple[] of the same gender" prohibited by Section 93-17-3(5).

State courts could also interpret the statutory scheme differently. A court could read the statutes as inapplicable to an adoption lawsuit filed by married same gender spouses. For example, if and when married persons, such as plaintiffs Phillips and Smith, or Garner and Hrostowski, file an adoption lawsuit involving the spouse's biological child, a judge could conclude the suit does not involve an adoption by a "couple." In reality, the biological parent would not be seeking to adopt her own child. No adoption is necessary to establish a biological parent's parentage. Code Section 93-17-3(5) would have no application whatsoever to the proceeding. No potential federal Equal Protection or Due Process issues would ever need be reached.

An uncertain issue of state law exists that would resolve or modify the plaintiffs' constitutional claims and thereby justifies ***Pullman*** abstention. If the Court does not dismiss the plaintiffs' claims against the executive branch defendants outright on account of Article III, or the Eleventh Amendment, it should at least stay this case.

## CONCLUSION

For the reasons set forth above, the executive branch defendants respectfully request that the Court enter an order dismissing all of the plaintiffs' claims against them, or alternatively, staying plaintiffs' lawsuit consistent with the ***Pullman***

abstention doctrine.

THIS the 2nd day of October, 2015.

Respectfully submitted,

JIM HOOD, in his official capacity
as Mississippi Attorney General

By:  S/Justin L. Matheny
     Justin L. Matheny (Bar No. 100754)
     Office of the Attorney General
     P.O. Box 220
     Jackson, MS 39205
     Telephone: (601) 359-3680
     Facsimile: (601) 359-2003
     *jmath@ago.state.ms.us*

     *Counsel for Attorney General Jim Hood*

     AND

     MISSISSIPPI DEPARTMENT OF HUMAN
     SERVICES, RICHARD BERRY, in his official
     capacity as Executive Director of the
     Mississippi Department of Human Services,
     and PHIL BRYANT, in his official capacity as
     Governor of the State of Mississippi

By:  S/Tommy Goodwin
     Tommy Goodwin (Bar No. 100791)
     Office of the Attorney General
     P.O. Box 220
     Jackson, MS 39205
     Telephone: (601) 359-3680
     Facsimile: (601) 359-2003
     *tgood@ago.state.ms.us*

     *Counsel for MDHS, Executive Director*
     *Richard Berry, and Governor Phil Bryant*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document has been filed with the Clerk of Court using the Court's ECF system and thereby served on all counsel of record who have entered their appearance in this action to date.

THIS the 2nd day of October, 2015.

<u>S/Justin L. Matheny</u>
Justin L. Matheny