# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

| | | |
|---|---|---|
| **CAMPAIGN FOR SOUTHERN EQUALITY** *et al.*, | § § § | |
| **Plaintiffs,** | § § | **CIVIL ACTION** **NO. 3:15-cv-00578-DPJ-FKB** |
| **vs.** | § § § | |
| **MISSISSIPPI DEPARTMENT OF HUMAN SERVICES** *et al.*, | § § § | **Oral Argument Requested** |
| **Defendants.** | § § § | |

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

MCDUFF & BYRD

767 North Congress Street
Jackson, Mississippi 39202
(601) 969-0802

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

1285 Avenue of the Americas
New York, New York 10019
(212) 373-3000

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................... 1

ARGUMENT ............................................................................................................. 7

I.     The Applicable Standard ........................................................................... 7

II.    Plaintiffs Have Suffered an "Injury in Fact" ......................................... 8

          1.     The Mississippi Adoption Ban Targets Plaintiffs for Discrimination ................................................................. 8

          2.     Plaintiffs' Harms are Concrete and Personal ............................... 12

          3.     Plaintiffs Have Taken Concrete Steps to Adopt ........................... 15

          4.     The Mississippi Adoption Ban Has Caused Plaintiffs Stigmatic Injuries .......................................................... 17

III.    There Is Sufficient Causal Connection Between the Plaintiffs' Injury and Defendants' Conduct ............................................................. 18

IV.    The Plaintiffs' Claims Are Redressable by a Decision in this Case ..................... 26

V.     Defendants Do Not Have Immunity .................................................... 27

VI.    No Valid Abstention Doctrine Applies ................................................. 29

CONCLUSION......................................................................................................... 32

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Adoption of Baby Boy B,*
487 So. 2d 841 (Miss. 1986) ....................................................................30

*Allen* v. *Wright,*
468 U.S. 737 (1984) ................................................................................17

*Arrington* v. *City of Fairfield, Ala.,*
414 F.2d 687 (5th Cir. 1969) ............................................................6, 7, 9

*Baker* v. *Carr,*
369 U.S. 186 (1961) ..................................................................................7

*Barrier* v. *Vasterling,*
No. 1416-CV03892 (Mo. Cir. Ct.) ..........................................................12

*Baskin* v. *Bogan,*
766 F.3d 648 (7th Cir. 2014) .....................................................................9

*Baskin* v. *Bogan,*
No. 14-cv-03551 (S.D. Ind.) ......................................................................9

*Bauer* v. *Texas,*
341 F.3d 352 (5th Cir. 2003) ..............................................................15, 24

*Bennett* v. *Spear,*
520 U.S. 154 (1997) ............................................................................7, 22

*Bossier Parish Sch. Bd.* v. *Lemon,*
370 F.2d 847 (5th Cir. 1967) ................................................................6, 9

*Bostic* v. *Schaefer,*
760 F.3d 352 (4th Cir. 2014) ............................................................*passim*

*Bowlby* v. *City of Aberdeen, Miss.,*
681 F.3d 215 (5th Cir. 2012) ...................................................................11

*Bradacs* v. *Haley,*
58 F. Supp. 3d 499 (D.S.C. 2014) ...........................................................17

*Brassner* v. *Lade,*
No. 13-012058 (Fla. Cir. Ct.) ..................................................................12

*Campaign for S. Equal.* v. *Bryant*,
   64 F. Supp. 3d 906 (S.D. Miss. 2014) ...............................................*passim*

*City of Los Angeles* v. *Lyons*,
   461 U.S. 95 (1983)................................................................................14

*Ciudadanos Unidos de San Juan* v. *Hidalgo Cnty. Grand Jury Comm'rs*,
   622 F.2d 807 (5th Cir. 1980) ..............................................................28

*Comer* v. *Murphy Oil USA*,
   585 F.3d 855 (5th Cir. 2009) ...............................................................18

*Contender Farms, L.L.P.* v. *U.S. Dep't of Agric.*,
   779 F.3d 258 (5th Cir. 2015) .................................................................8

*Crane* v. *Texas*,
   759 F.2d 412 (5th Cir. 1985) ...............................................................28

*Croft* v. *Governor of Texas*,
   562 F.3d 735 (5th Cir. 2009) .................................................................7

*Davis* v. *Tarrant Cnty., Texas*,
   565 F.3d 214 (5th Cir. 2009) ...............................................................28

*De Leon* v. *Perry*,
   975 F. Supp. 2d 632 (W.D. Tex. 2014) ...........................................12, 17

*DeBoer* v. *Snyder*,
   772 F.3d 388 (6th Cir. 2014) ...............................................................11

*DeBoer* v. *Snyder*,
   973 F. Supp. 2d 757 (E.D. Mich. 2014) ...............................................11

*DeBoer* v. *Snyder*,
   No. 12-cv-10285, (E.D. Mich.)........................................................9, 10

*Duarte ex rel. Duarte* v. *City of Lewisville, Tex.*,
   759 F.3d 514 (5th Cir. 2014) .......................................................12, 14, 15

*England* v. *La. State Bd. of Med. Exam'rs*,
   375 U.S. 411 (1964)..............................................................................12

*Frazier-Henson* v. *Walther*,
   15-cv-569 (Ark. Cir. Ct.) ......................................................................12

*Frey* v. *Bordis*,
   286 F. App'x 163 (5th Cir. 2008) .........................................................28

iii

*Geiger* v. *Kitzhaber*,
994 F. Supp. 2d 1128 (D. Or. 2014) ...................................................9, 18

*Gras* v. *Stevens*,
415 F. Supp. 1148 (S.D.N.Y. 1976) ........................................................24

*Hamer* v. *Campbell*,
358 F.2d 215 (5th Cir. 1966) ...................................................................6

*Haw. Hous. Auth.* v. *Midkiff*,
467 U.S. 229 (1984).........................................................................29, 31

*Heckler* v. *Mathews*,
465 U.S. 728 (1984).................................................................................17

*Holladay* v. *Roberts*,
425 F. Supp. 61 (N.D. Miss. 1977) ..........................................................6

*Ingebretsen* v. *Jackson Pub. Sch. Dist.*,
864 F. Supp. 1473 (S.D. Miss. 1994) ................................................6, 16

*Jackson Women's Health Org.* v. *Currier*,
760 F.3d 448 (5th Cir. 2014) ...................................................................5

*Jagnandan* v. *Giles*,
379 F. Supp. 1178 (N.D. Miss. 1974).......................................................6

*Jernigan* v. *Crane*,
64 F. Supp. 3d 1260 (E.D. Ark. 2014).....................................................30

*Justice* v. *Hosemann*,
771 F.3d 285 (5th Cir. 2014) ...................................................................5

*K.P.* v. *LeBlanc*,
627 F.3d 115 (5th Cir. 2010) ..........................................................*passim*

*Kitchen* v. *Herbert*,
755 F.3d 1193 (10th Cir. 2014) ...............................................21, 22, 27

*Larson* v. *Valente*,
456 U.S. 228 (1982)................................................................................26

*Lipman* v. *Van Zant*,
329 F. Supp. 391 (N.D. Miss. 1971)..........................................................6

*Little* v. *KPMG LLP*,
575 F.3d 533 (5th Cir. 2009) ...................................................................7

*Little* v. *Norman*,
119 So. 3d 382 (Miss. Ct. App. 2013) .........................................................23

*Lofton* v. *Sec'y of Dep't of Children & Family Servs.*,
358 F.3d 804 (11th Cir. 2004) ...................................................................11

*Lofton* v. *Sec'y of Dep't of Children & Family Servs.*,
93 F. Supp. 2d 1343 (S.D. Fl. 2000) ........................................................11

*Love* v. *Pence*,
47 F. Supp. 3d 805 (S.D. Ind. 2014) .........................................................21

*Lujan* v. *Defenders of Wildlife*,
504 U.S. 555 (1992) .......................................................................*passim*

*Marbury* v. *Madison*,
5 U.S. 137 (1803) ............................................................................5

*Marie* v. *Moser*,
65 F. Supp. 3d 1175 (D. Kan. 2014) .........................................................30

*McBurney* v. *Cuccinelli*,
616 F.3d 393 (4th Cir. 2010) ...................................................................22

*McLaughlin* v. *City of Canton, Miss.*,
947 F. Supp. 954 (S.D. Miss. 1995) ..........................................................6

*Mendez* v. *Heller*,
530 F.2d 457 (2d Cir. 1976) ....................................................................24

*Metro. Wash. Airports Auth.* v. *Citizens for Abatement of Aircraft Noise, Inc.*,
501 U.S. 252 (1991) ................................................................................7

*Miller* v. *Davis*,
No. 15-cv-44 (E.D. Ky.) ..........................................................................25

*Mims* v. *Arrow Fin. Servs. LLC*,
132 S. Ct. 740 (2012) .............................................................................12

*Miss. Univ. for Women* v. *Hogan*,
458 U.S. 718 (1982) ...............................................................................17

*Nationwide Mut. Ins. Co.* v. *Unauthorized Practice of Law Comm.*,
283 F.3d 650 (5th Cir. 2002) ....................................................................5

*Ne. Fla. Chapter of Associated Gen. Contractors of Am.* v. *City of Jacksonville,*
   508 U.S. 656 (1993) ....................................................................8, 9

*Nissan Motor Corp. in U.S.A.* v. *Harding,*
   739 F.2d 1005 (5th Cir. 1984) ....................................5, 29, 30

*Obergefell* v. *Hodges,*
   135 S. Ct. 2584 (2015)..........................................................*passim*

*Okpalobi* v. *Foster,*
   244 F.3d 405 (5th Cir. 2001) ....................................19, 22, 23

*Pace* v. *Hunt,*
   847 F. Supp. 507 (S.D. Miss. 1994) ......................................12

*Patsy* v. *Bd. of Regents of State of Fla.,*
   457 U.S. 496 (1982).....................................................................11

*Peters* v. *Kiff,*
   407 U.S. 493 (1972)........................................................................6

*In re Justices of the Supreme Court of P.R.,*
   69 F.2d 17 (1st Cir. 1982)..........................................................24

*R.R. Comm'n of Tex.* v. *Pullman Co.,*
   312 U.S. 496 (1984)....................................................................29

*Romano* v. *Greenstein,*
   721 F.3d 373 (5th Cir. 2013) ...................................................11

*Rumsfeld* v. *Forum for Academic & Inst'l Rights, Inc.,*
   547 U.S. 47, 52 n.2 (2006)........................................................19

*Se. La. Bldg. & Constr. Trades Council* v. *Louisiana,*
   No. 13-370, 2013 WL 6709750 (E.D. La. Dec. 13, 2013) ........16

*Searcy* v. *Strange,*
   No. 14-cv-208 (S.D. Ala.) .........................................................25

*Smith* v. *Ladner,*
   288 F. Supp. 66 (S.D. Miss. 1968) .............................................6

*Stacy* v. *Williams,*
   306 F. Supp. 963 (N.D. Miss. 1969)...........................................6

*Stewart* v. *Waller,*
   404 F. Supp. 206 (N.D. Miss. 1975)...........................................6

*Strawser* v. *Strange,*
No. 14-cv-424 (S.D. Ala.) .........................................24, 25, 28, 29

*Summers* v. *Earth Island Inst.,*
555 U.S. 488 (2009).....................................................................10, 12

*Tex. Democratic Party* v. *Benkiser,*
459 F.3d 582 (5th Cir. 2006) ...................................................................7

*Time Warner Cable, Inc.* v. *Hudson,*
667 F.3d 630 (5th Cir. 2012) ...............................................................2, 9

*Venator Grp. Speciality, Inc.* v. *Matthew/Muniot Family, LLC,*
322 F.3d 835 (5th Cir. 2003) .................................................................16

*Verizon Md., Inc.* v. *Pub. Serv. Comm'n of Md.,*
535 U.S. 635 (2002)...............................................................................27

*Vill. of Arlington Heights* v. *Metro. Hous. Dev. Corp.,*
429 U.S. 252 (1977)...............................................................................19

*Walls* v. *Miss. State Dep't of Pub. Welfare,*
730 F.2d 306 (5th Cir. 1984) ...................................................................2

*Williams* v. *Berry,*
977 F. Supp. 2d 621 (S.D. Miss. 2013) ...................................................3

*Wisconsin* v. *Constantineau,*
400 U.S. 433 (1971)...............................................................................31

*Wolf* v. *Walker,*
No. 14-cv-64 (W.D. Wis.) ........................................................................9

*Word of Faith World Outreach Ctr. Church, Inc.* v. *Morales,*
986 F.2d 962 (5th Cir. 1993) .................................................................29

*Ex parte Young,*
209 U.S. 123 (1908).........................................................................22, 26

**STATUTES**

Miss. Code Ann. 93-17-1 *et seq.* ..............................................................*passim*

**OTHER AUTHORITIES**

Alan Blinder and Tamar Lewin, *Clerk in Kentucky Chooses Jail Over
Deal on Same Sex Marriage*, N.Y. Times (Sept. 4, 2015) ............................4

Jeremy Diamond, *Chief Alabama Judge Would Defy Supreme Court in Gay Marriage Ruling*, CNN (Feb. 12, 2015), http://www.cnn.com/2015/02/12/ ...............................................................................4

Miss. Const. Art. 5 § 123 ...............................................................................21

Re: Adoption, 2012 WL 1071283 (Miss. A.G.), Op. Att'y Gen. 00515 (2011)..............................................................................................................21

Re: Ins. Eligibility of Same Sex Spouse and Child of a Same Sex Marriage Under the State and School Emp. Life and Health Ins. Plan, 2013 WL 7020577 (Miss. A.G.), Op. Att'y Gen. 00504 (2013) ................................................21

## PRELIMINARY STATEMENT

Plaintiffs have taken the unremarkable step of filing a complaint in federal court in order to challenge Section 93-17-3(5) of Mississippi's Adoption Law (the "Mississippi Adoption Ban") because it categorically prevents them from adopting children and thus explicitly targets them for unequal treatment in violation of the United States Constitution. In seeking a declaration that the Mississippi Adoption Ban is unconstitutional and an order enjoining its continued enforcement, Plaintiffs, who do not seek any monetary damages for themselves, but instead only declaratory and injunctive relief, have named the relevant state officials and the state agency responsible for enforcement of the Mississippi Adoption Ban solely in their official capacities, including the Governor, the Attorney General, and the Mississippi Department of Human Services ("MDHS" and, collectively, the "Executive Branch Defendants"), as well as the Chancellors and Chancery Courts of the Tenth, Fourteenth, and Twentieth Districts in Mississippi, which are the Districts where Plaintiffs reside (the "Chancery Court Defendants").

While there is little doubt that, but for the Mississippi Adoption Ban, adoption petitions filed by any of these Plaintiff couples would be granted, that is *not* the question presented by this case. Rather, the issue presented is a pure question of constitutional law that does not require adjudication of any particularized facts concerning these couples' suitability to adopt any child. By seeking an order from this Court declaring the Mississippi Adoption Ban to be unconstitutional, Plaintiffs seek only to remove the categorical exclusion that prevents them from adopting so that they can be treated the same way as any other married couple in the State of Mississippi with respect to the adoption of children.

But rather than engage on the merits of what is in dispute—whether it is permissible under the Fourteenth Amendment to ban gay couples from adopting simply because they are gay—the Defendants strive mightily to construct a series of purported technical procedural roadblocks. Thus, according to Defendants, "[s]ome lawsuits . . . presenting federal constitutional issues . . . cannot be adjudicated in any federal district court." Exec. Defs.' Mot. to Dismiss, D.E. #56, at *1 ("Exec. Defs.' MTD"). In effect, the State of Mississippi has taken the extraordinary—and meritless—position that, even though the Plaintiffs are confronted with a realistic and imminent prospect of enforcement, there is no state official sufficiently responsible to render him or her amenable to suit in federal court. That cannot be the case, as laws do not enforce themselves. Indeed, Defendants' supposed "roadblocks" do not even amount to potholes or flat tires, much less a street closure that should somehow prevent Plaintiffs from obtaining the relief that they seek from this Court.

First, Plaintiffs clearly satisfy all of the requirements for standing in federal court. As the targets of the Mississippi Adoption Ban, they have clearly suffered an "injury-in-fact" that is more than sufficient for standing in this type of equal protection challenge and is not negated by the fact that Plaintiffs have not taken the expensive, time-consuming, and futile step of filing for adoption. *See Time Warner Cable, Inc.* v. *Hudson*, 667 F.3d 630, 636-37 (5th Cir. 2012); *Walls* v. *Miss. State Dep't of Pub. Welfare*, 730 F.2d 306, 314 n.7 (5th Cir. 1984). The fact that Plaintiffs have not filed adoption petitions does not prevent Plaintiffs from asserting standing to challenge the Mississippi Adoption Ban as unconstitutional here. In fact, state officials here have actually confirmed to Plaintiffs that the Adoption Ban remains in full force and effect as

recently as July (*after* the Supreme Court decided *Obergefell*). Am. Compl. ¶ 34. And the Defendants have taken the wholly meritless position in this lawsuit that it would be "overextending" the Supreme Court's decisions in *Windsor* and *Obergefell* for this Court to find that the equal dignity that entitles gay couples to marry also entitles them to be treated like other married couples when applying to adopt.[1]

There is also a clear causal connection between the harms suffered by the Plaintiffs and the Mississippi Adoption Ban, which is traceable to the Defendants. *See K.P.* v. *LeBlanc*, 627 F.3d 115, 123 (5th Cir. 2010). Each of the named defendants in this lawsuit, including the state court Chancellors who were recently added to this case, is a state official or agency charged in some way with enforcing the Mississippi Adoption Ban. For example, MDHS establishes policies relating to and provides programs and services for adoption and foster care. Exec. Defs.' Opp. to Mot. for Prelim. Inj., D.E. #21, at *2-3 ("Exec. Defs.' Opp. to PI"). MDHS and its director have been sued multiple times in connection with constitutional or other challenges to its policies or regulations. *See, e.g.*, *Williams* v. *Berry*, 977 F. Supp. 2d 621, 621 (S.D. Miss. 2013) (suing MDHS and its director in challenge to the constitutionality of MDHS fingerprinting program). The same is true for the Governor and Attorney General. *See, e.g.*, *Campaign for S. Equal.* v. *Bryant*, 64 F. Supp. 3d 906, 916 (S.D. Miss. 2014) (suing the Mississippi Governor and Attorney General, among others, in challenge to the constitutionality of Mississippi's ban on gay marriage), *aff'd*, 791 F.3d 625 (5th Cir. 2015).

---

[1] Plaintiffs' response to these arguments on the merits of the implications of *Obergefell* and *Windsor* are contained in Plaintiffs' Reply Memorandum in Support of a Preliminary Injunction, D.E. #59 at *4-8, also filed on October 13, 2015.

As for the Chancellors, they are responsible for enforcing Mississippi law, including the Mississippi Adoption Ban, with respect to granting adoptions. The Chancery Court Defendants were added to this case only after the Executive Branch Defendants claimed that they were not proper parties since they themselves did not have the power to grant adoptions. Even if an injunction is not proper as to the Chancery Court Defendants, this Court has the power to issue a declaratory judgment that will establish the unconstitutionality of the adoption ban for future purposes in Mississippi adoption proceedings. And naming the Chancery Court Defendants as parties is prudent and efficient here given recent events in the states of Kentucky and Alabama involving an unwillingness on the part of the state court judges and officials to comply with federal court orders relating to the rights of gay couples in light of *Windsor* and *Obergefell* and the need to subsequently add those judges and officials to federal lawsuits.[2] If the Chancellors are parties to this lawsuit, then a decision by this Court to invalidate the Mississippi Adoption Ban will redress the injury suffered by Plaintiffs since the Chancellors will already be subject to a federal court order. *See Campaign for S. Equal.*, 64 F. Supp. 3d at 917 (Plaintiffs' "denial [of a marriage license] can be traced to Mississippi marriage laws, defended here by the Attorney General. Declaring those laws unconstitutional and enjoining their enforcement would redress their injuries.").

_____

[2]    *See, e.g.*, Alan Blinder and Tamar Lewin, *Clerk in Kentucky Chooses Jail Over Deal on Same Sex Marriage*, N.Y. Times (Sept. 4, 2015), http://www.nytimes.com/2015/ 09/04/us/kim-davis-same-sex-marriage.html ("Ms. Davis's decision on Tuesday to refuse licenses to same-sex couples led to the contempt hearing, and she testified that she had not hesitated to maintain her opposition to licensing same-sex couples."); Jeremy Diamond, *Chief Alabama Judge Would Defy Supreme Court in Gay Marriage Ruling*, CNN (Feb. 12, 2015), http://www.cnn.com/2015/02/12/ politics/ray-moore-alabama-gay-marraige-supreme-court-slavery/ ("[*Obergefell* is] not the federal law. What you're confusing is law with the opinion of a justice. . . .  What one lone federal judge [Anthony Kennedy] says is not law.").

Finally, neither the Eleventh Amendment nor any existing federal court abstention doctrine presents an impediment here. Plaintiffs allege an ongoing violation of their constitutional rights and seek prospective relief—as such, their claims fall squarely within the exception to Eleventh Amendment immunity. Nor does the *Pullman* abstention doctrine, which "is the exception, not the rule," bar this Court from reaching the merits in this case. *Nissan Motor Corp. in U.S.A.* v. *Harding*, 739 F.2d 1005, 1008 (5th Cir. 1984) (citations omitted). While federal courts may abstain where there is "an unclear issue of state law that, if resolved, would make it unnecessary for [the court] to rule on the constitutional question," *Nationwide Mut. Ins. Co.* v. *Unauthorized Practice of Law Comm.*, 283 F.3d 650, 653 (5th Cir. 2002), the plain language of the Mississippi Adoption Ban could hardly be clearer. A ruling from a state court is not necessary to confirm that the statute means what it says—couples of the same gender are prohibited from adopting in the state of Mississippi.

What Plaintiffs have done in filing this case is what Americans do to litigate claims that their federal constitutional rights have been violated by invoking the principle of judicial review first set forth more than 200 years ago in *Marbury* v. *Madison*, 5 U.S. 137 (1803). "[I]t is a general and indisputable rule, that where there is a legal right, there is also a legal remedy by suit or action at law, whenever that right is invaded." *Id.* at 163 (internal quotation marks omitted). It would be no exaggeration to say that dozens of such cases have successfully been filed against Mississippi state officials.[3] Indeed, although many of the plaintiffs in those cases were similarly situated

---

[3]   *See, e.g., Justice* v. *Hosemann*, 771 F.3d 285, 291-92 (5th Cir. 2014) (suing the Mississippi Secretary of State and Attorney General to challenge the constitutionality of a Mississippi constitutional provision concerning disclosure requirements for ballot initiatives); *Jackson Women's Health Org.* v. *Currier*, 760 F.3d 448, 450-51 (5th Cir. 2014) (suing the State Health Officer of the Mississippi Department of Health

to the Plaintiffs here, the defendants did not even bother to raise lack of standing as a defense since it was so clearly meritless. On the rare occasions when standing objections were raised, the courts have consistently and appropriately rejected such procedural maneuvers as erroneous distractions. *See, e.g.*, *Peters* v. *Kiff*, 407 U.S. 493 (1972); *Arrington* v. *City of Fairfield, Ala.*, 414 F.2d 687 (5th Cir. 1969); *Hamer* v. *Campbell*, 358 F.2d 215 (5th Cir. 1966). Thus, while Defendants here, like the defendants in a school segregation case decided by Judge Wisdom, "have managed to dredge up" several reasons "to rationalize their denial of the constitutional rights" of the gay citizens of Mississippi, not one of them should prevent this court from adjudicating the merits here. *Bossier Parish Sch. Bd.* v. *Lemon*, 370 F.2d 847, 849 (5th Cir. 1967) (Wisdom, J.).

---

and the District Attorney for Hinds County to challenge the constitutionality of a Mississippi abortion related statute); *Campaign for S. Equal.*, 64 F. Supp. 3d at 916 (suing the Mississippi Governor, Attorney General, and the Hinds County Clerk to challenge the constitutionality of Mississippi's ban on gay marriage); *McLaughlin* v. *City of Canton, Miss.*, 947 F. Supp. 954, 962-64 (S.D. Miss. 1995) (suing the City of Canton, Mississippi, the Governor, Attorney General, Secretary of State, and the Mississippi Election Commission of the City of Canton to challenge the constitutionality of the "disenfranchisement provision" of the Mississippi Constitution); *Ingebretsen* v. *Jackson Pub. Sch. Dist.*, 864 F. Supp. 1473, 1492 (S.D. Miss. 1994) (suing the Mississippi Attorney General, the Jackson Public School District, and the Board of Trustees of the Jackson Public School District to challenge the constitutionality of Mississippi's school-prayer statute), *aff'd sub nom. Ingebretsen on Behalf of Ingebretsen* v. *Jackson Pub. Sch. Dist.*, 88 F.3d 274 (5th Cir. 1996); *Holladay* v. *Roberts*, 425 F. Supp. 61, 61 (N.D. Miss. 1977) (suing the Alcoholic Beverage Control Division of the State Tax Commission of Mississippi to challenge the constitutionality of Mississippi statutes providing for the seizure and forfeiture of automobiles used in connection with violations of state liquor laws); *Stewart* v. *Waller*, 404 F. Supp. 206, 209 (N.D. Miss. 1975) (suing the Mississippi Governor, Secretary of State, and Attorney General as well as the mayors, aldermen, and municipal election commissioners of the Cities of Macon, Moss Point, Starkville, and West Point to challenge the constitutionality of a discriminatory Mississippi voter rights statute); *Jagnandan* v. *Giles*, 379 F. Supp. 1178 (N.D. Miss. 1974) (suing the governing authority of Mississippi's senior colleges and universities, the Board of Trustees of the State Institutions of Higher Learning, as well as the President and Vice-President of Mississippi State University to challenge the constitutionality of a Mississippi tuition rate statute), *aff'd in part*, 538 F.2d 1166 (5th Cir. 1976); *Lipman* v. *Van Zant*, 329 F. Supp. 391, 392 (N.D. Miss. 1971) (suing the Secretary and members of the Mississippi Board of Bar Admissions to challenge the constitutionality of a Mississippi bar application statute); *Stacy* v. *Williams*, 306 F. Supp. 963, 967-68 (N.D. Miss. 1969) (suing the Board of Trustees of the State Institutions of Higher Learning to challenge the constitutionality of regulations for off-campus speakers); *Smith* v. *Ladner*, 288 F. Supp. 66, 67-68 (S.D. Miss. 1968) (suing the Mississippi Governor, Attorney General, Secretary of State to challenge a Mississippi statute regulating and prescribing procedure for issuance of charters to nonprofit corporations).

**ARGUMENT**

## I.     The Applicable Standard

"In order to have standing to assert that a state has denied plaintiff his constitutional rights, a plaintiff is required to show 'a personal stake in the outcome of the controversy.'" *Arrington*, 414 F.2d at 691 (quoting *Baker* v. *Carr*, 369 U.S. 186, 204 (1961)). "Constitutional standing has three elements: (1) an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) the likelihood that a favorable decision will redress the injury." *Croft* v. *Governor of Texas*, 562 F.3d 735, 745 (5th Cir. 2009) (citing *Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)); *see also Little* v. *KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009).

When considering standing at the pleading stage, general factual allegations suffice because courts "presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Bennett* v. *Spear*, 520 U.S. 154, 168 (1997). In other words, "[f]or purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint." *Metro. Wash. Airports Auth.* v. *Citizens for Abatement of Aircraft Noise, Inc.*, 501 U.S. 252, 264-65 (1991) (internal quotation marks and citations omitted).[4]

---

[4]     The organizations that have filed suit here—the Campaign for Southern Equality and the Family Equality Council—have associational standing since "(1) the association's members would independently meet the Article III standing requirements; (2) the interests the association seeks to protect are germane to the purpose of the organization; and (3) neither the claim asserted nor the relief requested requires participation of individual members." *Tex. Democratic Party* v. *Benkiser*, 459 F.3d 582, 587 (5th Cir. 2006). In the analogous circumstances concerning litigation for marriage equality, this Court had held that the Campaign for Southern Equality possessed associational standing, and the Family Equality Council is similarly situated. *Campaign for S. Equal.*, 64 F. Supp. 3d at 918 ("The allegations in the complaint support that CSE's members would independently have standing to seek the relief described in this suit alongside the individual plaintiffs, and would be satisfied by a judgment against these defendants. It also is evident that CSE's mission is aligned with its goals in this suit.").

7

**II.      Plaintiffs Have Suffered an "Injury in Fact"**

Defendants' central argument is their repeated contention that Plaintiffs have not alleged injury-in-fact because they have not taken the unnecessary step of filing adoption proceedings that would certainly be denied.  *See* Exec. Defs.' MTD, at *12-13; Jud. Defs.' Mot. to Dismiss, D.E. #53, at *8-11 ("Jud. Defs.' MTD").  Both as a matter of law and common sense, however, this argument lacks any merit.  The allegations in the Complaint clearly establish that Plaintiffs have been injured—concretely, particularly, and personally—by the Mississippi Adoption Ban.

1.      *The Mississippi Adoption Ban Targets Plaintiffs for Discrimination*

Contrary to Defendants' arguments, the law of standing does not require Plaintiffs to prove that they would be granted an adoption under Mississippi law but for the Mississippi Adoption Ban, although undoubtedly they would.  It is black letter law that when, "a plaintiff is an object of a regulation there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it."  *Contender Farms, L.L.P.* v. *U.S. Dep't of Agric.*, 779 F.3d 258, 264 (5th Cir. 2015) (internal quotation marks omitted).  Thus, "in equal protection cases—such as this case—'[w]hen the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, . . . [t]he 'injury in fact' . . . is the denial of equal treatment resulting from the imposition of the barrier[.]'"  *Bostic* v. *Schaefer*, 760 F.3d 352, 372 (4th Cir. 2014) (alteration in original) (quoting *Ne. Fla. Chapter of Associated Gen. Contractors of Am.* v. *City of Jacksonville*, 508 U.S. 656, 666 (1993)).  In other words, "the 'injury in fact' in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit."  *Ne. Fla.*

*Chapter of Associated Gen. Contractors*, 508 U.S. at 666. This rule is grounded in the fact that a plaintiff's "stake in the outcome" of such a case "is immediate and personal . . . namely, the right not to be subjected to . . . discrimination by state action." *Arrington*, 414 F.2d at 691.

Here, Plaintiffs, as married lesbian couples, are clearly the "objects" of the Mississippi Adoption Ban since the statute creates a "barrier" preventing them from adopting. Because the Mississippi Adoption Ban "targets" Plaintiffs "for exclusion from [a] benefit provided to similarly situated [parents]," they have "shown constitutional injury sufficient to establish standing." *Time Warner*, 637 F.3d at 637. In other words, to paraphrase Judge Wisdom, "once the plaintiffs have established their right . . . , their standing to assert their constitutional right to equal protection follows automatically. The key point is that here individuals are suing to enforce a national constitutional right." *Bossier Parish Sch. Bd.*, 370 F.2d at 851.

It is significant that none of the cases that were part of the recent tidal wave of marriage equality litigation post *Windsor* were dismissed for lack of standing, even though plaintiffs in several of those cases had not formally applied to marry. *See Baskin* v. *Bogan*, 766 F.3d 648 (7th Cir. 2014); *Geiger* v. *Kitzhaber*, 994 F. Supp. 2d 1128, 1132 (D. Or. 2014) ("[M]arriage licenses have been *or would be* denied because each couple is of the same gender." (emphasis added)); *Wolf* v. *Walker*, No. 14-cv-64, (W.D. Wis.), ECF Nos. 1 & 118; *Baskin* v. *Bogan*, No. 14-cv-03551, (S.D. Ind.), ECF No. 1 & 65. While the bulk of the defendants in those cases did not even bother to argue lack of standing for failure to apply for marriage licenses, when that argument was raised, it was rejected by the courts as meritless. *See Bostic*, 760 F.3d at 372; *DeBoer* v. *Snyder*,

No. 12-cv-10285, (E.D. Mich), ECF Nos. 45 & 52. In *Bostic*, for example, the Fourth Circuit found that plaintiffs who had not sought recognition of their marriage in Virginia by the Virginia authorities nevertheless had standing because the Virginia gay marriage ban erected a constitutionally impermissible "barrier, which prevents same-sex couples from obtaining the emotional, social, and financial benefits that opposite-sex couples realize upon marriage." 760 F.3d at 372. If anything, the reasoning in *Bostic* applies with even greater force here, since rather than simply fill out a marriage license application, these Plaintiffs would be required to hire attorneys and go through a costly and time consuming adoption petition, which includes a home study at their own expense, as well as court fees. *See* Miss. Code Ann. §§ 93-17-3(6); 93-17-11.

One defendant in *DeBoer* v. *Snyder*, which began as a challenge to the Michigan adoption statute that excluded gay couples from adopting because it permitted only married couples to adopt, and then was amended to become a direct challenge to the Michigan marriage ban, made strikingly similar arguments to those presented here. *DeBoer*, No. 12-cv-10285, (E.D. Mich.), ECF No. 45. The defendant argued that the plaintiffs lacked standing because they "do not assert that they have actually applied for a marriage license in Michigan or in any other state . . . [n]or have they indicated any immediate plan to do so." *Id.* at 10. The defendant also argued that plaintiffs lacked standing because they "have not filed an application for joint adoption, stating that any attempt would be futile." *Id.* at 5. That motion to dismiss was subsequently withdrawn and was thus never decided by the district court. *DeBoer*, No. 12-cv-10285, (E.D. Mich.), ECF No. 52. Yet, despite the well-established "independent obligation [of federal courts] to assure that standing exists, regardless of whether it is challenged by any

of the parties," *Summers* v. *Earth Island Inst.*, 555 U.S. 488, 499 (2009), neither the district court, 973 F. Supp. 2d 757, 760 (E.D. Mich. 2014), the Sixth Circuit, 772 F.3d 388 (6th Cir. 2014), nor even the Supreme Court, *cert. granted sub nom. Obergefell* v. *Hodges*, 135 S. Ct. 1039 (2015) and *rev'd sub nom. Obergefell v. Hodges*, 135 S. Ct. 2584 (2015), saw fit to even address the issue.

Nor are Plaintiffs required to "avail[] themselves of the State's adoption proceedings," as Defendants assert they must. Jud. Defs.' MTD, at *15; Exec. Defs.' MTD, at *4. As the Supreme Court and the Fifth Circuit have consistently recognized, "there is no general requirement that a plaintiff exhaust state administrative or judicial remedies before [they] can pursue a claim under § 1983." *Romano* v. *Greenstein*, 721 F.3d 373, 376 (5th Cir. 2013); *see also Patsy* v. *Bd. of Regents of State of Fla.*, 457 U.S. 496, 516 (1982) (reversing the Fifth Circuit and finding "that exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983"); *Bowlby* v. *City of Aberdeen, Miss.*, 681 F.3d 215, 222 (5th Cir. 2012) ("[E]xhaustion of state remedies is not required before a plaintiff can bring suit under § 1983 for denial of due process"). Indeed, in *Lofton* v. *Secretary of Department of Children and Family Services*, although the district court initially dismissed certain plaintiffs who had taken no steps towards adoption, 93 F. Supp. 2d 1343 (S.D. Fl. 2000), the Eleventh Circuit subsequently recognized that one of the plaintiffs (Houghtan), who, like the Plaintiffs in this case, had not filed an adoption petition but had taken other concrete steps towards adoption, nevertheless had standing to sue. 358 F.3d 804, 808 (11th Cir. 2004).

Similarly, where, as here, there is jurisdiction in both state and federal courts, Plaintiffs obviously have their choice of forum and it is not for the Defendants to dictate that plaintiffs must present their claims in state, as opposed to in federal court. *See, e.g.*, *Mims* v. *Arrow Fin. Servs. LLC*, 132 S. Ct. 740, 753 (2012) (holding that when federal and state courts exercise concurrent jurisdiction, district court erred by dismissing suit brought by plaintiff in federal court); *England* v. *La. State Bd. of Med. Exam'rs*, 375 U.S. 411, 414 (1964) ("When a [f]ederal court is properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such jurisdiction. . . . The right of a party plaintiff to choose a [f]ederal court where there is a choice cannot be properly denied.") (citation omitted).[5] Indeed, given this principle, even though there have been several state courts that struck down their own state marriage bans as unconstitutional, *see, e.g.*, *Frazier-Henson* v. *Walther*, 15-cv-569 (Ark. Cir. Ct. Jun. 9, 2015); *Brassner* v. *Lade*, No. 13-012058 (Fla. Cir. Ct. Dec. 8, 2014); *Barrier* v. *Vasterling*, No. 1416-CV03892 (Mo. Cir. Ct. Oct. 3, 2014), that did not stop a single federal court from doing the same. *See, e.g.*, *De Leon* v. *Perry*, 975 F. Supp. 2d 632, 644-45 (W.D. Tex. 2014), *aff'd sub nom. De Leon* v. *Abbott*, 791 F.3d 619 (5th Cir. 2015).

2.     *Plaintiffs' Harms are Concrete and Personal*

Although the facial exclusion in the Mississippi Adoption Ban would be sufficient to confer standing, the Amended Complaint includes many examples of the kinds of "concrete and personal injuries" sufficient to confer standing that are caused by

---

[5]     There can be no doubt that federal courts have jurisdiction over the § 1983 claims presented here. *See, e.g.*, *Pace* v. *Hunt*, 847 F. Supp. 507, 508 (S.D. Miss. 1994) ("[J]urisdiction in 42 U.S.C. § 1983 cases is proper in either state or federal courts. Plaintiff correctly notes that state and federal courts have concurrent jurisdiction over matters arising under the United States Constitution and the Civil Rights Act.").

the Mississippi Adoption Ban here.  *Duarte ex rel. Duarte* v. *City of Lewisville, Tex.*, 759 F.3d 514, 518-19 (5th Cir. 2014); *Summers*, 555 U.S. at 497; *Lujan*, 504 U.S. at 581.

For example, each year when Donna and Jan register their daughter H.M.S.P. for school, they must generate a raft of extra paperwork and Donna must "rent" their home from Jan to prove that H.M.S.P. lives in their local public school district. Smith Decl. ¶ 19; Mot. for Prelim. Inj. at *3-4.  And when Donna was unemployed for a period and lost her health insurance, Jan was unable to provide health insurance coverage to their daughter through her job because Jan is not her legal parent as a result of the Mississippi Adoption Ban.  Smith Decl. ¶ 18.  As a consequence, they had to buy expensive, separate insurance for H.M.S.P. at a time when their family could least afford it.  *Id.*

Similarly, Susan has been unable to get medical treatment for her son if she is unable to reach Kathy by telephone to give the doctors consent, which has been particularly problematic since H.M.G. is his high school's starting quarterback and often requires medical attention for sports-related injuries.  Hrostowski Decl. ¶ 15.  And, most dramatically, because the Mississippi Adoption Ban has prevented Jan from adopting the daughter she and Donna have raised since birth, they have to worry that Jan's custody of their daughter might be challenged if something were to happen to Donna.  Am. Compl. ¶¶ 16, 25; Hrostowski Decl. ¶ 16.

That these Plaintiffs have standing to challenge the Mississippi Adoption Ban is demonstrated by contrasting their situation to the facts in cases in which courts have denied standing.  In the seminal standing case of *Lujan* v. *Defenders of Wildlife*, 504 U.S. 555 (1992), for example, the plaintiffs were "wildlife enthusiasts" who had

expressed a generalized desire to travel to Sri Lanka at some point in the future to observe endangered animals (though certainly not in the next year since "[t]here [wa]s a civil war going on"), and a fear that defendants' actions might ultimately reduce the likelihood that they would be able to see the particular endangered species they one day hoped to observe. *Id.* at 562–67; *Duarte*, 759 F.3d at 517. As the Supreme Court explained, however, the "factual showing of perceptible harm" could not be satisfied in *Lujan* by a claim that "anyone who observes or works with an endangered species, anywhere in the world, is appreciably harmed by a single project affecting some portion of that species with which he has no more specific connection." *Lujan*, 504 U.S. at 566.

In contrast to the *Lujan* plaintiffs, the Plaintiffs here—mothers who are barred from applying to become the legal parents of the son and daughter they have raised since birth—are the *objects* of the state statute at issue. The connection between Plaintiffs and their injuries is neither theoretical nor hypothetical, but instead goes directly to the heart of their daily lives and the integrity of their families. Indeed, in *Lujan*, the Court conceded that a "person who observes or works with a particular animal threatened by a federal decision" would have standing "since the very subject of his interest will no longer exist." *Id*. at 566. If that was true in *Lujan*, then Plaintiffs certainly have standing here.

The case of *City of Los Angeles* v. *Lyons*, 461 U.S. 95 (1983), cited by the Executive Branch Defendants, Exec. Defs.' MTD, at *12, is also inapposite. In *City of Los Angeles*, the plaintiff, who claimed that he had been assaulted by police officers on one occasion, sought prospective injunctive relief, but he could not establish that he was more likely than any other resident of Los Angeles to be assaulted again. 461 U.S. at

105. Here, in sharp contrast, the Plaintiffs and couples like them not only are specifically targeted for discrimination by the Mississippi Adoption Ban, but also are disallowed from adopting today and will be equally barred from adopting years from now if they do not prevail in this case or the Mississippi Adoption Ban is not otherwise repealed.

The same is true with respect to *Bauer* v. *Texas*, 341 F.3d 352 (5th Cir. 2003), cited by the Chancery Court Defendants. Jud. Defs' MTD, at *10-11. In *Bauer*, the plaintiff, who had previously been subject to court-imposed temporary guardianships, sued the courts seeking to hold unconstitutional the statute permitting such temporary guardianships although the plaintiff did not allege any facts to suggest that she would again be incapacitated. The Fifth Circuit, noting that "plaintiffs lack standing to seek prospective relief against judges where the likelihood of future encounters is speculative," held that "[b]ecause there is no ongoing injury to [plaintiff] and any threat of future injury is neither imminent nor likely, there is" nothing for the court to resolve. *Id.* at 358. But again, the Mississippi Adoption Ban imposes ongoing injury on Plaintiffs that is "real and immediate" and the harms suffered by Plaintiffs on a daily basis are far from "speculative." *Id.*

3. *Plaintiffs Have Taken Concrete Steps to Adopt*

Under governing Supreme Court and Fifth Circuit precedent, a plaintiff has standing when she has "concrete plans" to do something that the challenged law would bar her from doing. *See, e.g.*, *Lujan*, 504 U.S. at 564; *Duarte*, 759 F.3d at 518. Here, Donna and Jan tried to begin the adoption process multiple times, but were told by several social work agencies and two private social workers licensed by MDHS that the Mississippi Adoption Ban barred all DHS-licensed agencies from even conducting the home study required as a first step for Jan to apply to adopt H.M.S.P. Smith Decl. ¶ 13.

Likewise, the lawyer that Kathy and Susan consulted to begin the adoption process informed them that as a legal matter, the Mississippi Adoption Ban barred Kathy from adopting H.M.G.  Hrostowski Decl. ¶ 12.  Similarly, Tina and Kari took concrete steps to adopt in Mississippi, including speaking with social workers and attending training sessions for foster parents run by MDHS, where they were told that they were ineligible to become foster parents or adopt because of the Mississippi Adoption Ban.  Am. Compl. ¶¶ 32, 33.  And, in the days following the *Obergefell* decision, Tina and Kari again contacted an official at MDHS and asked whether, in light of *Obergefell*, they could now qualify as foster or adoptive parents—and they were again rebuffed.  *Id.* at ¶ 34.

      While Defendants seek to minimize these arguments on the ground that Kathy and Susan's consultation with their attorney occurred fifteen years ago when their son was born,  Jud. Defs.' MTD at *4, the Fifth Circuit and Supreme Court "have generally permitted future events which are sufficiently likely to occur to serve as a basis for standing when the plaintiffs, as here, are seeking injunctive relief."  *K.P.*, 627 F.3d at 122; *see also Venator Grp. Speciality, Inc.* v. *Matthew/Muniot Family, LLC*, 322 F.3d 835, 840 (5th Cir. 2003); *Se. La. Bldg. & Constr. Trades Council* v. *Louisiana*, No. 13-370, 2013 WL 6709750, at *7 (E.D. La. Dec. 13, 2013); *Ingebretsen* v. *Jackson Pub. Sch. Dist.*, 864 F. Supp. 1473, 1482 (S.D. Miss. 1994), *aff'd sub nom. Ingebretsen ex rel. Ingebretsen* v. *Jackson Pub. Sch. Dist.*, 88 F.3d 274 (5th Cir. 1996).  Moreover, Defendants fail to explain how or why anything that has happened since that time would have caused them to have received a different response.  The Mississippi Adoption Ban has remained on the books unchanged and, although there has been a sea change in nationwide recognition of marriage equality in recent years, it is the position of the

Defendants in this litigation that such change does not impact the force and effect of the Mississippi Adoption Ban here. Exec. Defs.' Opp. to PI, at *15-16.

4.   *The Mississippi Adoption Ban Has Caused Plaintiffs Stigmatic Injuries*

As the Supreme Court has "repeatedly emphasized, discrimination itself, by perpetuating 'archaic and stereotypic notions' or by stigmatizing members of the disfavored group as 'innately inferior' and therefore as less worthy participants in the political community, can cause serious noneconomic injuries to those persons" who are "denied equal treatment solely because of their membership in a disfavored group." *Heckler* v. *Mathews*, 465 U.S. 728, 739-40 (1984) (internal citation omitted) (quoting *Miss. Univ. for Women* v. *Hogan*, 458 U.S. 718, 725 (1982)). "Stigmatic injury stemming from discriminatory treatment is sufficient to satisfy standing's injury requirement if the plaintiff identifies 'some concrete interest with respect to which [he or she] [is] personally subject to discriminatory treatment' and '[t]hat interest independently satisf[ies] the causation requirement of standing doctrine.'" *Bostic*, 760 F.3d at 372 (alteration in original) (citing *Allen* v. *Wright*, 468 U.S. 737, 757 n. 22 (1984)).

Thus, even if Plaintiffs were not the targets of the Mississippi Adoption Ban, even if they had suffered no injury, and even if they had taken no concrete steps to adopt, the stigmatic injury suffered by Plaintiffs here constitutes yet another independent basis for standing. *See, e.g.*, *Bostic*, 760 F.3d at 372; *De Leon*, 975 F. Supp. 2d at 646 ("Stigmatic injury is a form of injury that supports standing in this case. In this case, it is clear that Plaintiffs suffer humiliation and discriminatory treatment under the law on the basis of their sexual orientation, and this stigmatic harm flows directly from Texas' ban

on same-sex marriage." (citation omitted)); *Bradacs* v. *Haley*, 58 F. Supp. 3d 499, 508

(D.S.C. 2014) (stigmatic injury supports standing in same-sex marriage litigation).

Like the laws preventing gay and lesbian couples from marriage, the

Mississippi Adoption Ban "weigh[s] on the plaintiffs in ways less tangible, yet no less

painful. The laws leave the plaintiffs and their families feeling degraded, humiliated, and

stigmatized. Plaintiffs consider the time, energy, and sacrifice they devote to building a

meaningful life with their loved ones, but find their efforts less worthy in the eyes of the

law. They face a tiered system of recognition that grants greater legal status to married

felons, deadbeat parents, and mail-order brides." *Geiger*, 994 F. Supp. 2d at 1136. As

this district recently held in *Campaign for Southern Equality* v. *Bryant*, "[t]here is little

question that gay and lesbian citizens have been stigmatized by reason of their sexual

orientation," and that "the most significant stigmatic injury suffered by the plaintiffs

arises from the fact that one plaintiff in each couple lacks parental rights over the children

she loves and is raising." 64 F. Supp. 3d at 917 & 937.

## III. There Is Sufficient Causal Connection Between the Plaintiffs' Injury and Defendants' Conduct

While Defendants also argue that none of the Defendants are proper

parties, under clear Fifth Circuit precedent, a plaintiff need only show that there is an

"indirect causal relationship" between his injury and the defendants' conduct. *Comer* v.

*Murphy Oil USA*, 585 F.3d 855, 864 (5th Cir. 2009), *reh'g granted* 598 F.3d 208 (5th

Cir. 2010), *appeal dismissed* 607 F.3d 1049 (5th Cir. 2010); *see also K.P.*, 627 F.3d at

123 (holding that standing is established if defendant "significantly contribute[s] to

plaintiff's injury). Thus, an injury is sufficient if it is "fairly traceable to actions that

*contribute* to, rather than solely or materially cause" the defendant's actions. *K.P.*, 627 F.3d at 866 (emphasis in original).

While Defendants rely heavily on the case of *Okpalobi* v. *Foster*, 244 F.3d 405 (5th Cir. 2001), cited by Defendants at Exec. Defs.' MTD, at *13-15; Jud. Defs.' MTD, at *19, it is not to the contrary. That case involved a constitutional challenge to a Louisiana statute that held abortion providers personally liable to patients for injuries caused during an abortion. In *Okpalobi*, at least two contingencies had to occur before the statute came into play—first, a woman had to be injured during an abortion and second, she had to decide to sue her doctor personally under the statute. *Okpalobi*, 244 F.3d at 409. Under those circumstances, the Fifth Circuit concluded that "[t]he governor and attorney general have no power to redress the asserted injuries. In fact, under Act 825, no state official has any duty or ability to do *anything*. The defendants have no authority to prevent a private plaintiff from invoking the statute in a civil suit." *Id.* at 427 (emphasis in original). Here, however, there is not even one contingency, much less two. Plaintiffs are couples who have taken concrete steps to adopt and are barred on the face of the statute from doing so by the defendant state officials.

As discussed below, the alleged injury can be traced, for purposes of Article III, to the contributing conduct of each of the party defendants.[6]

---

[6]    It is also clear that the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement. Thus, the Plaintiffs' claims can "survive [any] standing challenge as long as one couple satisfies the standing requirements with respect to each defendant." *Bostic*, 760 F.3d at 370–71 (citing *Rumsfeld* v. *Forum for Academic & Inst'l Rights, Inc.*, 547 U.S. 47, 52 n. 2 (2006); *Dep't of Commerce* v. *U.S. House of Representatives*, 525 U.S. 316, 330 (1999) (holding that a case is justiciable if some, but not necessarily all, of the plaintiffs have standing as to a particular defendant); *Vill. of Arlington Heights* v. *Metro. Hous. Dev. Corp.*, 429 U.S. 252, 263–64 (1977) (same)).

<u>MDHS</u>

As Defendants admit, MDHS "is authorized to establish [] policies relating to adoption and foster care programs." Exec. Defs.' Opp. to PI, at *3. It also "provides programs and services relating to adoption and foster care." *Id.* Under Mississippi law, a home study is required before a child can be adopted by someone other than a relative or stepparent of the child, and the home study must be performed by MDHS or an adoption agency licensed by MDHS. Miss. Code Ann. §§ 93-17-11 & 93-17-203(f). Although MDHS itself cannot grant or deny an adoption, it has the power to decide whether or not to perform a home study, which is the necessary first step in the adoption process. Miss. Code. Ann. § 93-17-3(6). *See also* Exec. Defs.' Opp. to PI, at *3.

Upon information and belief, because of the Mississippi Adoption Ban, MDHS and a number of licensed adoption agencies are refusing to conduct home studies for married gay and lesbian couples who wish to adopt a child. Indeed, Donna and Jan were specifically told by private social workers that they could not even consider performing a home study because they feared MDHS would revoke their licenses. Smith Decl. ¶ 13. Indeed, Donna and Jan requested a voluntary home study and were unilaterally denied by MDHS, and as recently as the beginning of July 2015, MDHS confirmed to Plaintiffs Tina and Kari that the Mississippi Adoption Ban remains in full force and that, as a result, they could not adopt. Am. Compl. ¶ 34.

Because MDHS serves as an "initial arbiter" and can "unilaterally preclude" the Plaintiffs from receiving a voluntary home study, the Plaintiffs' injuries are traceable to MDHS, regardless of the fact that a court could theoretically order a home study (which is unlikely given the existence of the Mississippi Adoption Ban). *K.P.*, 627

F.3d at 123. The Fifth Circuit has held that even where a defendant's "decision could be overridden by a court, that does not block the tracing of the injury to" them, because "[t]racing an injury is not the same as seeking its proximate cause." *Id.*

### Governor Phil Bryant

The Governor of Mississippi is charged with the duty to "see that the laws are faithfully executed," Miss. Const. Art. 5 § 123, including the Mississippi Adoption Ban. He also "has specific authority to appoint [M]DHS's Executive Director and has policy direction authority with respect to the agency." Exec. Defs.' Opp. to PI, at *4. Governor Bryant has specifically supported the Mississippi Adoption Ban, has encouraged its continued existence, and has taken action to enforce the law through public pronouncements, all of which establishes his connection to the Plaintiffs' injury. In similar circumstances, a federal district court found subject matter jurisdiction over the Governor of Indiana after he issued two memoranda on the issue of same-sex marriages. *See Love* v. *Pence*, 47 F. Supp. 3d 805 (S.D. Ind. 2014); *see also Kitchen* v. *Herbert*, 755 F.3d 1193, 1204 (10th Cir. 2014) ("[T]he Governor's and the Attorney General's actual exercise of supervisory power and their authority to compel compliance from county clerks and other officials provide the requisite nexus").

### Attorney General Jim Hood

The Attorney General of Mississippi is the chief law enforcement officer of the State of Mississippi and is responsible for enforcing and insuring compliance with state law. Am. Compl. ¶ 38. In furtherance of those duties, the Attorney General has actually issued two separate Advisory Opinions on the subject of the Mississippi Adoption Ban, in one instance at the explicit request of a Chancellor. *See* Re: Ins. Eligibility of Same Sex Spouse and Child of a Same Sex Marriage Under the State and

School Emp. Life and Health Ins. Plan, 2013 WL 7020577 (Miss. A.G.), Op. Att'y Gen. 00504 (2013); Re: Adoption, 2012 WL 1071283 (Miss. A.G.), Op. Att'y Gen. 00515 (2011). Through these official opinions, the Attorney General "contributes" to the enforcement and implementation of the Mississippi Adoption Ban and thus satisfies the requirement of "traceability." *Compare Kitchen*, 755 F.3d at 1204 ("[T]he Governor's and the Attorney General's actual exercise of supervisory power and their authority to compel compliance from county clerks and other officials provide the requisite nexus") *with McBurney* v. *Cuccinelli*, 616 F.3d 393, 401 (4th Cir. 2010) (finding Eleventh Amendment immunity where the Attorney General "has not issued any advisory opinions"); *see also Bennett,* 520 U.S. at 168–69 ("The Government] wrongly equates injury 'fairly traceable' to the defendant with injury as to which defendant's actions are the very last step in the chain of causation.").

This alone distinguishes this case from *Oklapobi*, in which the Attorney General was not "clothed with some duty in regard to the enforcement of the laws of the state." *Okpalobi*, 244 F.3d at 414, 423 (quoting *Ex parte Young*, 209 U.S. 123, 156 (1908)).

<u>The Chancery Court Defendants</u>

Defendants initially argued that MDHS, the Governor, and the Attorney General were inappropriate parties because they "cannot grant or deny adoption petitions filed in Mississippi courts," thereby suggesting that it is state court judges who would be the proper party defendants here. Defs.' First Mot. to Dismiss, D.E. # 16, at *6. While the Chancellor and Court Defendants now argue that it is inappropriate to sue them in their official capacities because the "plaintiffs lack the requisite adversity to demonstrate the existence of a case or controversy," Jud. Defs.' MTD, at *12, the other Defendants

have stated that the Chancellors and the Courts are the parties responsible for enforcing the Mississippi Adoption Ban. *See* Defs. First Mot. to Dismiss, D.E. #16, at *12; Exec. Defs.' MTD, at *14. The fact that the Mississippi Adoption Ban directs Chancellors to deny adoptions based on the applicants' sexual orientation clearly "places the Defendants among those who would contribute to Plaintiffs' harm. . . . Because the Defendants significantly contributed to the Plaintiffs' alleged injuries, Plaintiffs have satisfied the requirement of traceability." *K.P.*, 627 F.3d at 123.

Since obviously laws do not enforce themselves, Plaintiffs therefore bring suit against the Chancellors and Chancery Courts "to prevent them, under the sanction of an unconstitutional statute, from *committing by some positive act* a wrong or trespass." *Okpalobi*, 244 F.3d at 413 (internal citations omitted; emphasis in original). The Chancellors do not, as the Defendants suggest, Jud. Defs.' MTD, at *17, act in an adjudicatory capacity when faced with adoption petitions from gay or lesbian married couples because the Mississippi Adoption Ban divests the Chancellors of such decision-making authority. In other words, when a petition is brought by a gay or lesbian couple, there is no opportunity for judges to even *consider* the merits of the petition; rather, under the Mississippi Adoption Ban, they must summarily deny it. Indeed, the state courts in Mississippi have interpreted the Mississippi adoption laws, *see* Miss. Code Ann. 93-17-1 *et seq*., as constituting a "two-step process," in which the chancellor only "adjudicates" whether "the proposed adoption promotes or enhances the child's best interest" as the *second* step after first determining whether the proposed adoptive parents meet the threshold requirements of the Mississippi adoption law. *See Little* v. *Norman*, 119 So. 3d 382, 386 (Miss. Ct. App. 2013). The Mississippi Adoption Ban thus prevents the

Plaintiffs from even reaching the *second* step of the Mississippi adoption process where the Chancery Court Defendants would then be acting in an adjudicatory capacity.

In *Bauer* v. *Texas*, 341 F.3d 352 (5th Cir. 2003), cited by Defendants, Jud. Defs.' MTD, at *10-14,[7] the plaintiff challenged the constitutionality of a Texas statute relating to the appointment of temporary guardians for incapacitated persons, and sued the judge who presided over her guardianship proceedings. *Id.* at 354-56. In determining that the plaintiff lacked standing, in part, due to a lack of adversity between herself and the judge, the Fifth Circuit looked to the text of the challenged statute, and noted that it imposed certain "safeguards and limitations," such as the requirements that a court be "'presented with substantial evidence' establishing probable cause that a temporary guardian is necessary before appointing one," "appoint an attorney for the proposed ward if he has not already retained independent counsel," and afford the ward notice and a hearing. *Id.* at 360-61. The statute in *Bauer* thus stands in stark contrast to the Mississippi Adoption Ban, which, rather than establishing a process with "safeguards and limitations," mandates a particular result, i.e., no adoption by gay couples.

In the challenge to Alabama's ban on same-sex marriage, the district court certified a defendant class of Alabama probate judges whose statutory obligation to apply Alabama law in granting marriage licenses was directly analogous to the obligation of

---

[7]    The Chancery Court Defendants also cite three non-controlling cases from outside the Fifth Circuit to support their argument that it is improper to sue state court judges. Jud. Defs.' MTD, at *12-17, 20-21 (citing *In re Justices of the Supreme Court of P.R.*, 69 F.2d 17 (1st Cir. 1982), *Mendez* v. *Heller*, 530 F.2d 457 (2d Cir. 1976), and *Gras* v. *Stevens*, 415 F. Supp. 1148 (S.D.N.Y. 1976)). Each of the three cases cited by the Defendants took place in an adversarial setting—two of them concerned divorce proceedings—where the judges at issue needed to carefully weigh the competing interests of the parties, as opposed to an adoption proceeding in Mississippi where the judge is enforcing the Mississippi Adoption Ban against Plaintiffs or others similarly situated. Additionally, the court in *Puerto Rico* noted that the presence of judges as nominal parties to a lawsuit was generally proper (even if not in that particular instance), 695 F.2d at 20-21, and specifically noted that the challenge to the constitutionality of the statute at issue could continue even without the judges as defendants.

Mississippi Chancellors to apply Mississippi adoption law in granting adoptions. *See* Order Granting Pls.' Mot. for Class Cert., *Strawser* v. *Strange*, No. 14-cv-424 at *8, (S.D. Ala. May 21, 2015), ECF No. 122. Just as it was appropriate to add those judges as defendants in order to enforce the federal constitutional right of same-sex couples to marry, it is appropriate to add the state court judges as defendants here to enforce the right of same-sex couples to adopt.

Naming the Chancellors as nominal defendants will also serve to assist in enforcement of an order in Plaintiffs' favor should that become necessary. Given that the Chancellors will ultimately have to execute the Plaintiffs' adoption petitions once the Mississippi Adoption Ban is declared to be unconstitutional, their presence as parties in this case will provide the requisite clarity with respect to their duty to comply with federal court orders interpreting the U.S. Constitution. Unfortunately, as this Court is no doubt aware, it has recently become necessary for courts in neighboring states to add certain state officials as defendants post judgment in order to ensure full compliance in the context of vindicating the constitutional rights of gay and lesbian Americans. S*ee, e.g.*, Order Granting Pls. Mot. for Class Cert., *Strawser* v. *Strange*, No. 14-cv-424 at *8 (S.D. Ala. May 21, 2015), ECF. No. 122 (certifying defendant class of Alabama county probate judges since they "have refused, or may in the future refuse, to issue marriage licenses to same-sex couples based on Alabama's laws."). *See also* Hr'g on Pls.' Mot. to Hold Def. Kim Davis in Contempt of Court, *Miller* v. *Davis*, No. 15-cv-44 (E.D. Ky. Sept. 3, 2015), ECF No. 75 (adding county clerks as third party defendants to ensure marriage licenses were being issued); Order Denying Pl.'s Mot. for Contempt and Immediate Relief, *Searcy* v. *Strange*, No. 14-cv-208 (S.D. Ala. Feb. 9. 2015), ECF No.

72 (denying plaintiff's motion to compel Alabama judge to issue marriage license because the judge was not a party). Since no one wants that to happen in Mississippi, naming the Chancellors as parties to this case at the outset reduces the risk that there will be any such problems in the future here.

## IV.    The Plaintiffs' Claims Are Redressable by a Decision in this Case

"[A] plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself." *Larson* v. *Valente*, 456 U.S. 228, 243 n.15 (1982). While the Executive Branch Defendants assert that Plaintiffs do not meet the redressability requirement because "[n]one of the executive branch defendants can grant or deny a Mississippi adoption petition." Exec. Defs' MTD, at *18, as discussed above, that is not the relief that these Plaintiffs are seeking. "The fact that the state officer, by virtue of his office, has some connection with the enforcement of the act, is the important and material fact, and whether it arises out of the general law, or is specially created by the act itself, is not material so long as it exists." *Ex parte Young*, 209 U.S. at 157.

Because the Mississippi Adoption Ban prohibits Plaintiffs from applying to adopt their children solely based on their sexual orientation, a victory in this case would lead to a declaratory judgment against all Defendants and an injunction against at least some of them that would:  prevent *MDHS* from denying gay and lesbian couples the opportunity to proceed with a home study or become foster parents; prevent the *Governor* from enforcing and supporting this unconstitutional law; prevent the *Attorney General* from advising state officials and the judiciary that gay couples are barred from adopting; and establish the unconstitutionality of the adoption ban in a way that will prevent the *Chancellors* from denying adoptions based solely on the sexual orientation of the

26

applicants.  Thus, just as in the recent marriage equality case in this District, Plaintiffs'
inability to adopt "can be traced to [the Mississippi Adoption Ban] defended here by the
Attorney General.  Declaring [that law] unconstitutional and enjoining their enforcement
would redress [its] injuries." *Campaign for S. Equal.*, 64 F.Supp. 3d at 917.

## V.      Defendants Do Not Have Immunity

Although Defendants contend that the Eleventh Amendment immunizes
their enforcement of the Mississippi Adoption Ban from review by this Court, Exec.
Defs.' MTD, at *18-24; Jud. Defs.' MTD, at *17-22, the Eleventh Amendment clearly
does not bar a plaintiff's right to seek prospective injunctive and declaratory relief, which
is all that Plaintiffs are seeking.

As the Supreme Court has explained, "[i]n determining whether the
doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only
conduct a 'straightforward inquiry' into whether [the] complaint *alleges* an ongoing
violation of federal law and seeks relief properly characterized as prospective. . . .  [T]he
inquiry into whether suit lies under *Ex parte Young* does not include an analysis of the
merits of the claim."  *Verizon Md., Inc.* v. *Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645-
46 (2002) (internal citation omitted) (emphasis added).  Here, Plaintiffs allege an ongoing
violation of their rights under the Fourteenth Amendment to the U.S. Constitution and
seek a declaration that the Mississippi Adoption Ban is unconstitutional and an order
enjoining Defendants from enforcing it.  This suit thus lies squarely within the *Ex parte
Young* exception to sovereign immunity.

For this reason, courts have routinely rejected similar immunity defenses
raised by Governors, Attorneys General, or similar officials in the parallel context of gay
marriage litigation.  *Kitchen*, 755 F.3d at 1201-04 (rejecting Eleventh Amendment

immunity defense for Utah Governor and Attorney-General), *cert. denied*, 135 S.Ct. 265 (2014); *Bostic*, 760 F.3d at 371 n.3 (rejecting Eleventh Amendment immunity defense for Clerk of Norfolk Circuit Court), *cert. denied sub nom. Rainey* v. *Bostic*, 135 S.Ct. 286 (2014), *cert. denied*, 135 S.Ct. 308 (2014), and *cert. denied sub nom. McQuigg* v. *Bostic*, 135 S.Ct. 314 (2014); Order Granting Pls. Mot. for Prelim. Inj., *Strawser* v. *Strange*, No. 14-cv-424 at *7 (S.D. Ala. May 21, 2015), ECF No. 123 ("Although [Alabama Probate Judge Dan] Davis contends that he is entitled to qualified immunity and Eleventh Amendment Immunity, such immunities do not shield Davis from official capacity suits seeking declaratory and injunctive relief.").[8]  The Fifth Circuit has repeatedly held that state court judges are not entitled to Eleventh Amendment immunity where, as here, they are sued not for monetary damages, but for prospective equitable or declaratory relief only.  *See Crane* v. *Texas*, 759 F.2d 412, 421 n.11 (5th Cir. 1985) ("[O]ur own cases establish that state court judges are not immune from federal suits seeking equitable or declaratory relief."), *amended on other grounds by* 766 F.2d 193 (5th Cir. 1985); *Ciudadanos Unidos de San Juan* v. *Hidalgo Cnty. Grand Jury Comm'rs*, 622 F.2d 807, 813 n.16 (5th Cir. 1980), *cert. denied*, 450 U.S. 964 (1981).

        The cases relied upon by the Defendants are not to the contrary.  In *Frey* v. *Bordis*, 286 F. App'x 163, 165 n.2 (5th Cir. 2008), for example, the plaintiffs, unlike the married lesbian couple here, sought damages against state court judges, which is clearly not permissible under *Ex parte Young*.  And although the Chancery Court

---

[8]     To the extent the Federal Courts Improvement Act of 1996 ("FCIA") precludes injunctive relief in this case against the Chancery Court Defendants, Plaintiffs nevertheless seek declaratory relief against the named judges, a type of relief they concede is available.  Jud. Defs.' Opp. to PI, at *8.  In the event the Court determines that declaratory relief is unavailable, or in the event any future declaratory relief is violated, Plaintiffs reserve the right to seek all appropriate injunctive relief consistent with the FCIA and other applicable law.

Defendants cite *Davis* v. *Tarrant County, Texas*, 565 F.3d 214, 228 (5th Cir. 2009), *see* Jud. Defs.' MTD, at *18, the court there explicitly held that "the Eleventh Amendment does not bar claims for prospective relief against state officials acting in their official capacity." *Id.* Indeed, as noted above, in the challenge to Alabama's ban on same-sex marriage, the district court certified a defendant class of Alabama probate judges whose statutory obligation to apply Alabama law in granting marriage licenses was directly analogous to the obligation of Mississippi Chancellors to apply Mississippi adoption law in granting adoptions. *See* Order Granting Pls. Mot. for Class Cert., *Strawser* v. *Strange*, No. 14-cv-424 at *10-11 (S.D. Ala. May 21, 2015), ECF. No. 122. And the district court granted the plaintiffs declaratory and injunctive relief, rejecting the argument that the defendant judges were entitled to qualified immunity and Eleventh Amendment immunity. *See, e.g.*, Order Granting Pls. Mot. for Prelim. Inj., *Strawser* v. *Strange*, 14-cv-424 at *8 (S.D. Ala. May 21, 2015), ECF No. 123.

## VI.     No Valid Abstention Doctrine Applies

Finally, although Defendants ask the Court to abstain under the case of *Railroad Commission of Texas* v. *Pullman Company*, 312 U.S. 496 (1984), Exec. Defs.' MTD, at *24-27, the Supreme Court has explained that a federal court should abstain only "when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided." *Haw. Hous. Auth.* v. *Midkiff*, 467 U.S. 229, 236 (1984). Moreover, the Fifth Circuit has repeatedly emphasized that "abstention is the exception, not the rule." *Nissan Motor*, 739 F.2d at 1008.

Under *Pullman*, a federal court should abstain from exercising its jurisdiction *only* when "the state law in question is fairly susceptible of an interpretation that might avoid or substantially modify the federal constitutional question." *Word of*

*Faith World Outreach Ctr. Church, Inc.* v. *Morales*, 986 F.2d 962, 967 (5th Cir. 1993).

The fact that the state courts have not interpreted the statute is irrelevant. *See Nissan Motor*, 739 F.2d at 1008 ("That the state courts have not interpreted the subject statute is not determinative: federal courts should exercise their jurisdiction if the state law in question is clear."). In analogous cases involving similarly clear statutory language—cases challenging state laws prohibiting same-sex couples from obtaining marriage licenses—federal courts (again) consistently and routinely rejected defendants' pleas for *Pullman* abstention. *See Marie* v. *Moser*, 65 F. Supp. 3d 1175, 1195-96 (D. Kan. 2014) (declining to abstain under *Pullman* because the challenged laws were "unequivocal[]" and defendants failed to point "to any ambiguity or uncertainty in the" laws); *Jernigan* v. *Crane*, 64 F. Supp. 3d 1260, 1270 (E.D. Ark. 2014) ("The challenged laws are not subject to an interpretation that might avoid or modify the federal constitutional questions raised by plaintiffs.").

Here, the *Pullman* abstention doctrine clearly does not apply because the plain language of the Mississippi Adoption Ban is clear and unambiguous. Section 93-17-3(4) of the Mississippi Code states that "[a]ny person may be adopted . . . by an unmarried adult or by a married person whose spouse joins in the petition," and § 93-17-3(5) states that "[a]doption by couples of the same gender is prohibited." Moreover, section 93-17-3(4) permits a married person to adopt a child in Mississippi *only* when his or her spouse joins in the petition. *See In re Adoption of Baby Boy B*, 487 So.2d 841, 842 (Miss. 1986) ("[O]nce John, Hope's husband, withdrew his name from the petition to adopt Baby Boy B, . . . Hope, as sole petitioner and being legally married, was without standing under § 93-17-3 to continue in her efforts to adopt without her spouse joining in

the petition.").  A married person seeking to adopt the biological child of his or her spouse must be joined in the petition by the spouse, thereby implicating § 93-17-3(5)'s prohibition on adoption by couples of the same gender.

The Executive Defendants' suggest that it is possible that "[a] court could read the statutes as inapplicable to an adoption lawsuit filed by married same gender spouses" because "the biological parent would not be seeking to adopt her own child." Exec. Defs.' MTD, at *27.  That would be a slim reed upon which to force two of the Plaintiff couples to pursue relief in state court despite the existence of the Mississippi Adoption Ban—a journey that could be protracted if appeals are required in the Mississippi appellate courts.[9]  More importantly, it would apply only to a limited set of facts since it would still preclude adoptions by same-sex couples when neither member of the couple is already a parent to the child, as is true in most adoptions by couples, whether gay or straight.  That interpretation, even if eventually adopted by a Mississippi court, would not govern the claims of the two Plaintiff couples who have no children, and thus would not avoid the question of whether the Mississippi Adoption Ban violates the federal Constitution.  Given that the constitutional question still would require resolution, this is not one of the exceptional cases in which abstention is appropriate.  Thus, the "[C]ourt should not abstain but should proceed to decide the federal constitutional claim."  *Wisconsin* v. *Constantineau*, 400 U.S. 433, 439 (1971).

---

[9] Even if a Chancellor were to invalidate the Mississippi Adoption Ban on constitutional grounds and grant an adoption to a couple of the same gender, that ruling would likely have little impact on the Mississippi Adoption Ban's wider applicability because, pursuant to Miss. Code. Ann. § 93-17-63, all records regarding adoption are strictly confidential.  Thus, while abstention would do nothing to resolve a "difficult and unsettled questions of state law [that] must be resolved before a substantial federal constitutional question can be decided," *Haw. Hous. Auth*, 467 U.S. at 236, it would, at most, relegate gay parents to the Sisyphean task of re-litigating the same federal constitutional issue over and over in confidential state court proceedings.

# CONCLUSION

For the forgoing reasons, Defendants' Motions to Dismiss should be

DENIED.

Respectfully submitted,

Dated:  October 13, 2015

**PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP**
By: /s/ Roberta A. Kaplan
    Roberta A. Kaplan*
      *Lead Counsel*
    Andrew J. Ehrlich*
    Joshua D. Kaye*
    Jacob H. Hupart*
    Alexia D. Koritz*
1285 Avenue of the Americas
New York, NY 10019-6064
Tel:(212) 373-3000
Fax:(212) 757-3990
rkaplan@paulweiss.com
aehrlich@paulweiss.com
jkaye@paulweiss.com
jhupart@paulweiss.com
akoritz@paulweiss.com

**MCDUFF & BYRD**

By: /s/ Robert B. McDuff
    Robert B. McDuff
      Bar No. 2532
    Sibyl C. Byrd
      Bar No. 100601
    Jacob W. Howard
      Bar No. 103256
767 North Congress Street
Jackson, Mississippi 39202
Tel:(601) 969-0802
Fax: (601) 969-0804
rbm@mcdufflaw.com
scb@mcdufflaw.com
jake@mcdufflaw.com

**BRAZIL & BURKE, P.A.**
    Meghann K. Burke*
77 Central Avenue, Suite E
Asheville, NC 28801
Tel: (828) 255-5400
Fax: (828) 258-8972
meghann@brazilburkelaw.com

**ELLIS LAW FIRM, PLLC.**
    Dianne Herman Ellis
      Bar No. 102893
1145 Robinson Avenue,
Ocean Springs, MS 39564
Tel: (228) 215-0037
Fax: (228) 284-1889
diannernjd@aol.com

* Admitted *pro hac vice*

*Attorneys for Plaintiffs Campaign for
Southern Equality, Family Equality
Council, Donna Phillips, Janet Smith,
Kathryn Garner, Susan Hrostowski,
Jessica Harbuck, Brittany Rowell, Tinora
Sweeten-Lunsford, and Kari Lunsford.*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document has been filed with the Clerk of Court using the Court's ECF system and thereby served on all counsel of record who have entered their appearance in this action to date.

THIS the 13th day of October, 2015.

By: /s/ Roberta A. Kaplan
Roberta A. Kaplan
        Admitted *pro hac vice*
        N.Y. Bar No. 2507093
Paul, Weiss, Rifkind,
   Wharton & Garrison LLP
New York, NY 10019
Tel: (212) 373-3000
rkaplan@paulweiss.com