IN THE UNITED STATES DISRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | | |
|---|---|---|
| CAMPAIGN FOR SOUTHERN EQUALITY, ET AL. | | PLAINTIFFS |
| V. | CIVIL ACTION NO. 3:15-CV-00578-DPJ-FKB | |
| MISSISSIPPI DEPARTMENT OF HUMAN SERVICES, ET AL. | | DEFENDANTS |

**JUDICIAL BRANCH DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

The judicial branch defendants' opening brief demonstrated why plaintiffs' Amended Complaint should be dismissed for lack of Article III and prudential standing, on grounds of Eleventh Amendment immunity and for failure to state a claim under 42 U.S.C. § 1983.  In response, plaintiffs largely try to marginalize the constitutional principles of standing and propose the judicial branch defendants should remain as "nominal defendants" in the case for the sake of efficiency.  This reply brief addresses why the constitutional principles of Article III cannot yield for the sake of convenience and why plaintiffs' remaining arguments are erroneous.

<u>**REPLY ARGUMENT**</u>

*No Article III Standing.*  Much of plaintiffs' opposition brief addressing standing is predicated on minimizing the fundamental nature of Article III standing by asserting that naming the judicial branch defendants "is prudent and efficient." Pls.' Opp. Mem. at 4.  Plaintiffs' contend that "[n]aming the Chancellors as nominal

defendants will also serve to assist in enforcement of an order in plaintiffs' favor should that become necessary." *Id.* at 25.[1] And finally, plaintiffs argue the judicial branch defendants' assertion that plaintiffs' lack of standing does not amount to even a "pothole" or "flat tire" let alone a "street closure" preventing their requested relief. *Id.* at 2.

The Supreme Court does not share plaintiffs' minimalist approach to standing analysis. Rejecting the notion that Article III standing can be jettisoned in favor of expedience, the Supreme Court in *Raines v. Byrd,* 521 U.S. 811, 820 (1997) held that Article III standing analysis cannot be abandoned "for the sake of convenience and efficiency." *Id.* Standing "is not merely a troublesome hurdle to be overcome so as to reach the merits of a lawsuit." *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 476 (1982).[2]

Plaintiffs' opposition brief also chastises the judicial branch defendants for, in their words, "construct[ing] a series of purported technical procedural roadblocks." Pls.' Opp. Mem. at 2. While plaintiffs may view standing as a technical roadblock, the Supreme Court has said "[n]o principle is more fundamental to the judiciary's

---

[1] It is axiomatic that the Court must have first have subject matter jurisdiction and thus, plaintiffs' argument that naming the judicial branch defendants would assist in subsequent enforcement clearly puts the "cart before the horse."

[2] This standing analysis involves not only constitutional limitations, but also prudential limitations on its exercise. *See Warth v. Sedlin*, 422 U.S. 490, 498 (1975) (citing *Barrows v. Jackson*, 346 U.S. 249, 255-256 (1953)). "In both dimensions it is founded in concern about the proper – and properly limited – role of the courts in a democratic society." *Id.* (citing *Schlesinger v. Reservists to Stop the War*, 418 U.S. 208, 221-227 (1974); *United States v. Richardson*, 418 U.S. 166 (1974) (Powell, J., concurring)). Plaintiffs do not address the issue of prudential standing raised by the judicial branch defendants in their opening brief. *See* Jud. Br. Defs.' Mem. Supp. Mot. Dismiss at 10-11.

2

proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies. The concept of standing is part of this limitation." *Simon v. E.Ky. Welfare Rights Org.*, 426 U.S. 26, 37 (1976) (citing *Flast v. Cohen*, 392 U.S. 83, 95, 88 S.Ct. 1942, 1950, 20 L.Ed.2d 947, 958 (1968)). Thus, plaintiffs' position that the judicial branch defendants' "presence as parties in this case will provide the requisite clarity with respect to their duties . . ., Pls.' Opp. Mem. at 25, finds no favor in Article III standing jurisprudence.[3]

***The Judicial Branch Defendants Adjudicate Adoptions.*** Plaintiffs argue the judicial branch defendants do not "act in an adjudicatory capacity when faced with adoption petitions from gay or lesbian married couples because [Miss. Code Ann. § 93-17-3(5)] divests the Chancellors of such decision-making authority." Pls.' Opp. Mem. at 23. Plaintiffs assert that when a petition is brought by a gay or lesbian couple, there is no opportunity for judges to even consider the merits of the petition; rather, under Miss. Code Ann. § 93-17-3(5) the judges must summarily deny the petition. *Id.*[4]

This argument was rejected in *Mendez v. Heller*, 530 F.2d 457, 458-59 (2nd Cir. 1976), where plaintiff brought a federal challenge to New York's durational residency requirement for obtaining a divorce. *Id.* The court said plaintiff could not

---

[3] Plaintiffs argue "dozens of cases have been successfully filed against Mississippi state officials" in federal court. Pls.' Opp. Mem. at 5, n.3. Plaintiffs' citation to those cases is in no way dispositive of the particular issues before this Court. Second and notably absent from plaintiffs' string citation is a single case involving members of the State judiciary.

[4] Even under plaintiffs' hypothetical case, the judicial branch defendants would still be adjudicating the adoption proceeding under state law.

3

proceed in federal court on the assumption that a complaint for divorce would be rejected on jurisdictional grounds (2-year residency requirement) by the State courts. *Id.* at 458.

*Mendez* also rejected plaintiff's hypothetical assumption that had she filed for divorce, her complaint would have been rejected *pro forma* and without consideration of the constitutional issues raised in federal court. *Id.* at 459. The court ruled that it was not constitutionally able to speculate as to the state court's response. *Id.* Like *Mendez*, plaintiffs have assumed their adoption petition would be rejected, *pro forma*, without consideration of the constitutional issues they seek to raise in this Court.

Like plaintiff in *Mendez*, plaintiffs here also posit an artificially narrow conception of the judicial branch defendants' role in adoption proceedings.[5] The court in *Mendez* spoke to this artificial compartmentalization of judicial functions:

> [W]e do not believe that [the judge's] official responsibilities can be compartmentalized in the manner suggested by appellant. Clearly, if [appellant] had filed a divorce complaint which questioned the validity of [the statute], [the judge's] consideration thereof would not have been restricted to determining whether she had been a New York resident for two years. *Appellant's bifurcated conception of [the judges'] duties simply does not comport with adjudicatory reality.*

*Mendez*, 530 F.2d at 460 (emphasis supplied). Plaintiffs also cite *Little v. Norman*, 119 So. 3d 382, 386 (Miss. Ct. App. 2013) to bolster their artificially narrow concept of the judicial branch defendants' role in an adoption proceeding. Pls. Opp. Mem. at

---

[5] Plaintiffs equate the issuance of Alabama marriage licenses with the judicial branch defendants' role in adoptions. ("[O]bligation to apply Alabama law in granting marriage licenses was directly analogous to the obligation of Mississippi Chancellors to apply Mississippi adoption law in granting adoptions."). *See* Pls.' Opp. Mem. at 24-25. As shown *infra*, this argument is erroneous.

4

23. Plaintiffs argue that under the two-step process described in *Little,* a Chancellor *only* adjudicates whether "the proposed adoption promotes or enhances the child's best interest. . . ." Pls.' Opp. Mem. at 23. This analysis is fatally flawed.

While *Little* discusses a two-step process for contested adoption proceedings involving the termination of parental rights under Miss. Code Ann. § 93-17-7, plaintiffs' truncated quotation at page 23 of their opposition brief misses the mark. Based on plaintiffs' position, the judicial branch defendants only adjudicate whether the adoption is in the best interests of the child (the second step), and not whether statutory grounds for adoption exist (step one). *Id.* at 23. Taking the passage in full, plaintiffs' position crumbles:

> The determination of whether one should be allowed to adopt of a child is a two-step process. *In re M.C.*, 92 So.3d at 1287 (¶ 21). *First, a chancellor **must** "**find** that one of the grounds for adoption is present: desertion or abandonment, or moral unfitness." Id. at 1287–88 (¶ 21)* (citing *Natural Mother v. Paternal Aunt*, 583 So.2d 614, 618 (Miss.1991)). The [petitioners] bore the burden of proving the first ground by clear and convincing evidence. *Natural Mother*, 583 So.2d at 619–20. Second, the chancellor must definitively adjudicate that the proposed adoption promotes or enhances the child's best interest. *In re M.C.*, 92 So.3d at 1288 (¶ 21) (citing *Ainsworth v. Natural Father*, 414 So.2d 417, 420–21 (Miss.1982)).

*Little*, 119 So. 3d at 86 (emphasis supplied).

Both steps described in *Little* require the judicial branch defendants to adjudicate matters under Miss. Code Ann. § 93-17-7. In step one, the Chancellor ***must find*** whether grounds for the adoption exist (desertion or abandonment, or moral unfitness), while in step two the Chancellor must ***adjudicate*** that the proposed adoption promotes or enhances the child's best interest. *Id.* Plaintiffs

5

apparently suggest that by only using the term "adjudicate" in step two as opposed to "find" in step one, the Mississippi Court of Appeals meant that a Chancellor is not acting in an adjudicatory capacity when making findings that statutory grounds for the adoption exist. The paucity of support for this argument is self-evident. And as the court in *Mendez* said, the argument "does not comport with adjudicatory reality." *Mendez*, 530 F.2d at 460.

***Alabama and Kentucky decisions do not apply.*** Plaintiffs cite cases from Alabama and Kentucky which involved the issuance of marriage licenses to same-sex couples. Pls.' Opp. Mem. at 24-25. The theory advanced is that the judicial branch defendants' role in adjudicating adoptions is the same as the issuance of marriage licenses under Alabama and Kentucky state law. *Id.* Relying on S*trawser v. Strange*, plaintiffs argue an Alabama probate judges' obligation to issue marriage licenses under Alabama law is "directly analogous" to the judicial branch defendants' obligation in granting adoptions under Mississippi law. *Id.* at 24-25.

Plaintiffs go on to argue that because the judges were properly named as defendants in *Strawser*, it is likewise appropriate to add the judicial branch defendants in this case. *Id.* at 25. This ignores the underlying rationale which made it permissible for Alabama probate judges to be defendants by conflating what the Alabama Supreme Court identified as a ministerial function (issuance of marriage licenses by probate judges) with the judicial branch defendants' constitutional and statutory role to adjudicate adoptions under Mississippi law.[6]

---

[6] A Chancellor's jurisdiction under the Mississippi Constitution of 1890, § 159, extends to "minor's business." MISS. CONST, Art. III, § 159(d).

Thus, unlike *Strawser* where Alabama's highest court held the issuance of marriage licenses was ministerial, there is no Mississippi appellate court decision holding that adoption proceedings are ministerial acts performed by the judicial branch defendants. Plaintiffs' erroneous comparison is illustrated by *Strawser*:

> Section 1983 "contains a significant caveat – the 'acts or omissions' at issue must be ones taken in the 'officer's judicial capacity.'" *Marie v. Moser*, 65 F.Supp.3d 1175, 1192 (D. Kan. 2014) (citing *Lundahl v. Zimmer*, 296 F.3d 936, 939 (10th Cir. 2002); *Mireles v. Waco*, 502 U.S. 9, 11, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991); and 42 U.S.C. § 1983). Where the acts in question were ministerial, rather than judicial, there is no judicial immunity. *See Id. The issuance of marriage licenses is a purely ministerial act. See Ex parte State ex rel. Alabama Policy Institute*, – So.3d –, –, –, 2015 WL 892752, *4, 8 (Ala. March 3, 2015) (discussing and referring to the probate judges' "ministerial act of licensing marriages").

*Strawser*, 2015 WL 1880605, *3 (emphasis supplied). In *Alabama Policy Institute*, 2015 WL 892752 *4 (Ala. March 3, 2015), *abrogated on other grounds by Obergerfell v. Hodges*, 576 U.S. -- (June 26, 2015), the Alabama Supreme Court held that "the ministerial duty of probate judges in Alabama is, of course, a function of Alabama laws." *Id.* at *3. There is no equivalence between an Alabama officials' ministerial duty to issue a marriage license (as determined by the Alabama Supreme Court) and the judicial branch defendants' adjudicatory function in Mississippi adoption proceedings.[7]

***No Adversity and no case or controversy.*** Plaintiffs attempt to distinguish the judicial branch defendants' reliance on *Bauer* based on the particular language of the statute in *Bauer*. Pls.' Opp. Mem. at 24. According to

---

[7] *Miller v. Davis* has less application to this case than S*trawser* which involved a clerk of court, not a constitutional state judicial officer.

plaintiffs, the lack of adversity between the *Bauer* plaintiff and judge was the result of "certain 'safeguards and limitations'" in the statute which required the judge to make certain findings. *Id.* Thus, plaintiffs say, because the judge was required to make findings within the meaning of the statute, there was no adversity for purposes of a case or controversy. This is simply another way of saying that the judge in *Bauer* was acting in an adjudicatory capacity and does not alter the fundamental reality that when presented with an adoption petition, the judicial branch defendants adjudicate the petition under the applicable statute.

Plaintiffs also endeavor to distinguish *Puerto Rico*, *Mendez* and *Gras v. Stevens*, 515 F. Supp. 1148 (S.D.N.Y 1976) on the grounds that "each of these cases took place in an adversarial setting . . . where the judges at issue needed to weigh the competing interest of the parties. . . ." Pls.' Opp. Mem. at 24 n.7. This distinction, however, does not change the analysis. For instance, in *Mendez*, plaintiff bypassed the state court all together, "[p]roceeding on the assumption that a complaint for divorce would be rejected on jurisdictional grounds by the State courts. . . ." *Mendez*, 530 F.2d. at 458.

In fact, the *Mendez* plaintiff intervened in a section 1983 action pending in New York district court. *Id.* There was no adversarial state court proceeding, just a federal suit challenging the constitutionality of state law – as is the case here. Moreover, other than the offered distinctions of cases cited by the judicial branch defendants, plaintiffs cite no authority supporting standing against the judiciary in similar contexts.

8

***Judicial Branch Defendants cannot be "nominal parties."*** Plaintiffs' contend that *In re Justices of the Supreme Court of Puerto Rico*, 69 F.2d 17 (1st Cir. 1982), supports the argument that the judicial branch defendants should remain as "nominal defendants." This argument fails to address the types of claims plaintiffs urged against the Justices where plaintiffs asserted two distinct classes of claims. The first category involved a constitutional challenge to membership and bar dues over which the Justices had no enforcement authority. *Id*. at 21. Instead, the court found that "the role of the judiciary with respect to these statutes is adjudicative." *Id*.

The second class of claims fell under forensic and notarial stamp clams. *Id*. at 25. The court stated that "plaintiffs have a plausible argument that they are suing the Justices in their 'administrative' rather than their 'adjudicative' capacity." *Id*. Moreover, the Justices did not raise Article III jurisdictional arguments with respect to the second class of claims. *Id*. Thus, it is nature of the claims that was dispositive of whether the Justices remained in the litigation.

This lawsuit is aimed directly at the constitutionality of a state statute over which the judicial branch defendants have adjudicatory authority under Mississippi law. This is supported by plaintiffs' own allegations that "[t]he fact that [Miss. Code Ann. § 93-17-3(5)] directs Chancellors to deny adoptions based on the applicants' sexual orientation clearly 'places the Defendants among those who would contribute to the Plaintiffs' harm." Pls.' Opp. Mem. at 23. Plaintiffs cannot have it both ways

9

and thus the argument that the judicial branch defendants should remain as "nominal defendants" is without merit.

***Ex Parte Young does not apply.*** To fall within *Ex Part Young's* narrow exception, plaintiffs must show a credible threat the judicial branch defendants "enforce" the challenged law. *Okpalobi v. Foster*, 244 F.3d 405, 417 (5th Cir. 2001). Plaintiffs have not done so. As in *Bauer*, where the Fifth Circuit held that judges do not initiate temporary guardianship proceedings, the judicial branch defendants do not initiate proceedings under Mississippi's adoption statutes. *Bauer*, 341 F.2d at 361.

Further, the judicial branch defendants are "adjudicators" and not "enforcers" of the law – a distinction drawn by the court in *Puerto Rico*. *Puerto Rico*, 695 F.2d at 24. Plaintiffs have failed to establish the application of *Ex Parte Young* to overcome the judicial branch defendants' Eleventh Amendment immunity.

***Plaintiffs do not separately address the 12(b)(6) grounds for dismissal.*** Plaintiffs failed to address the judicial branch defendants' alternative grounds for dismissal under Rule 12(b)(6) for failure to state a claim under 42 U.S.C. § 1983. *See* Jud. Br. Defs.' Mem. Supp. Mot. Dismiss at 22-23.

## CONCLUSION

For the reasons set forth above, and for the reasons previously set forth in the judicial branch defendants' memorandum in support of the motion to dismiss, plaintiffs' claims against them should be dismissed with prejudice.

THIS the 19th day of October, 2015.

Respectfully submitted,

TENTH DISTRICT CHANCERY COURT OF MISSISSIPPI; FOURTEENTH CHANCERY COURT DISTRICT OF MISSISSIPPI; TWENTIETH DISTRICT CHANCERY COURT OF MISSISSIPPI; DAWN BEAM, in her official capacity, M. RONALD DOLEAC, in his official capacity, DEBORAH J. GAMBRELL, in her official capacity, JOHNNY L. WILLIAMS, in his official capacity, KENNETH M. BURNS, in his official capacity, DOROTHY W. COLOM, in her official capacity, JIM DAVIDSON, in his official capacity, JOHN GRANT, in his official capacity, JOHN C. McLAURIN, in his official capacity

By: JIM HOOD, ATTORNY GENERAL, STATE OF MISSISSIPPI

By: */s/ Douglas T. Miracle*
DOUGLAS T. MIRACLE, MSB # 9648
SPECIAL ASSISTANT ATTORNEY GENERAL

OFFICE OF THE ATTORNEY GENERAL
CIVIL LITIGATION DIVISION
Post Office Box 220
Jackson, Mississippi 39205-0220
Telephone: (601) 359-5654
Facsimile: (601) 359-2003
dmira@ago.state.ms.us

### CERTIFICATE OF SERVICE

I, Douglas T. Miracle, Special Assistant Attorney General for the State of Mississippi, do hereby certify that on this date I electronically filed the foregoing document with the Clerk of this Court using the ECF system and sent a true and correct copy to counsel record.

THIS the 19th day of October, 2015.

/s/ Douglas T. Miracle