IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**CAMPAIGN FOR SOUTHERN EQUALITY, ET AL.**            **PLAINTIFFS**

**VS.**            **CIVIL ACTION NO. 3:15cv578-DPJ-FKB**

**The MISSISSIPPI DEPARTMENT OF HUMAN
SERVICES, ET AL.**            **DEFENDANTS**

_____

**EXECUTIVE BRANCH DEFENDANTS' REPLY SUPPORTING
MOTION TO DISMISS THE PLAINTIFFS' FIRST AMENDED
COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION**

_____

The executive branch defendants' constitutional rights are not merely "technical procedural roadblocks" amounting to less than "potholes" or "flat tires" impeding plaintiffs' effort to implement changes in social policy through federal court litigation. Rather, Article III and Eleventh Amendment preclude plaintiffs from utilizing this Court as their crusade's roadway. If plaintiffs truly intend to pursue Mississippi adoption lawsuits, they can and should do so in state court, but without this Court prejudging the issues to be decided there by state court judges.

## REPLY ARGUMENT

*No Article III causation*. Even wrongfully assuming plaintiffs have proven a credible threat of future injury, Article III standing "requires 'a causal connection between the [plaintiff's] *injury and* the [defendant's] *conduct* complained of . . ..'" ***Okpalobi v. Foster***, 244 F.3d 405, 426 (5th Cir. 2001) (quoting ***Lujan v. Defenders of Wildlife***, 504 U.S. 555, 560-61 (1992)). Plaintiffs' claims lack that requisite causal connection. Just like the ***Okpalobi*** plaintiff abortion providers, plaintiffs here confuse Section 93-17-3(5)'s alleged effect on them (that, if ever actually filed, their future state

court adoption lawsuits will be unsuccessful) with any such alleged effect caused by the executive branch defendants.

Plaintiffs' Response uses a two-pronged approach to cover up their fatal causation problems. First, pages 18-19 create an illusion that a diminished causation standard applies here by telling less than half the story about two cases inapposite to this one. The Fifth Circuit's panel opinion in ***Comer v. Murphy Oil USA***, 585 F.3d 855 (5th Cir. 2009) does not lower the causation standard applicable to plaintiffs' claims. ***Comer*** was a tort lawsuit dismissed by Chief Judge Guirola for lack of Article III causation, and other reasons, involving speculative accusations against various industrial defendants that allegedly caused pollution, which caused global warming, which, in turn, allegedly caused Hurricane Katrina. The 2009 panel explicitly relied on a pollution-specific causation analysis to reverse the district court's dismissal.[1] "Pollution tracing" causation analyses are irrelevant to this case.[2]

The ***K.P. v. LeBlanc*** litigation next cited by plaintiffs did actually involve a constitutional challenge to state statutes. But it is not any more relevant here than ***Comer***. The Fifth Circuit's first panel opinion in ***K.P. v. LeBlanc***, 627 F.3d 115 (5th Cir. 2010), in examining standing although not raised by the parties, concluded that

---

[1] *See*, *e.g.*, ***Comer***, 585 F.3d at 866 ("[T]his Circuit has articulated the fairly traceable test not as an inquiry into whether a defendant's pollutants are the sole cause of an injury but rather whether the pollutant causes or *contributes to* the kinds of injuries alleged by the plaintiffs.") (emphasis in original) (citations and internal quotations omitted).

[2] Furthermore, the 2009 ***Comer*** panel's opinion itself is no longer good law. The panel's opinion was not simply "appeal dismissed" as plaintiffs' Response indicates. The opinion was *vacated* by the *en banc* Fifth Circuit and Chief Judge Guirola's original dismissal was reinstated. *See* ***Comer v. Murphy Oil USA***, 607 F.3d 1049, 1053 (5th Cir. 2010); *see also* ***Comer v. Murphy Oil USA, Inc.***, 839 F.Supp.2d 849 (S.D. Miss. 2012), *aff'd*, 718 F.3d 460 (5th Cir. 2013).

certain abortion providers had standing to challenge a Louisiana statutory scheme by suing members of the Louisiana Patient's Compensation Fund Oversight Board who could directly utilize the statutory provisions to deny the providers Fund benefits administered by the Board. *Id.*, at 122-24. However, the Fifth Circuit's second panel opinion in the ***LeBlanc*** litigation (never mentioned in plaintiffs' Response) held the plaintiffs lacked standing for their constitutional challenge to the portion of the statutory scheme which the Board had no ability to directly enforce. ***K.P. v. LeBlanc***, 729 F.3d 427, 437 (5th Cir. 2013). Unremarkably, the ***LeBlanc*** opinions demonstrate that when a state official has direct authority to administer a challenged statute there might be causation to support standing, but, like in this case, if no direct authority under the challenged statute exists, there cannot.

Second, whether plaintiffs' proposed lightweight Article III causation standard applies or not, Mississippi law and the indisputable facts before the Court prove the executive branch defendants have no causal connection whatsoever to their alleged inability to successfully pursue future adoption lawsuits. Plaintiffs' contention that DHS enforces 93-17-3(5) because it will "unilaterally deny" their adoptions through some "power to decide whether or not to perform a home study" is a non-starter.[3] A DHS home study is not the "first step" in pursuing private adoption lawsuits. DHS only performs a home study when ordered by a court *after* an adoption petition is filed, and a home study is not ever required unless ordered by the court in stepparent adoption

---

[3] The Court should reject plaintiffs' hopefully inadvertent factual misstatement in their brief that "[i]ndeed, Donna and Jan requested a voluntary home study and were unilaterally denied by MDHS." [Pl. Brief at p. 20, Docket No. 58]. Neither that allegation, nor any facts supporting it, appear in plaintiffs' Amended Complaint, plaintiff Smith's Declaration, or elsewhere in the record.

cases which four of the plaintiffs contend they will one day pursue. Miss. Code Ann. § 93-17-11. As a further matter of undisputed fact, the Director of DHS's DFCS has sworn the agency will provide plaintiffs, and anyone else, a home study if and when ordered by any court. [Mark Smith Declaration at ¶ 8, Docket No. 55-1].

Bald accusations that DHS will impede plaintiffs from adopting through foster care by cutting off their future participation in the program also fail to meet plaintiffs' causation burden. Plaintiffs have not even identified a single DHS policy, among the 900+ pages of Family and Children's Services policies the agency administers, they contend precludes them from participating in foster care. The Court can, and should, recognize that DHS will adhere to its own policies. Furthermore, the Director of DHS's DFCS has expressly invited the plaintiffs desiring to participate in foster care to apply for the program, and testified they will not be denied because they are married and of the same gender. [Mark Smith Second Declaration at ¶¶ 8-10, Docket No. 55-2]. As of this writing, DHS is still waiting on that application which has not been forthcoming.

Plaintiffs' lackluster causation argument regarding the Governor and the Attorney General necessitates litte reply. The Governor's unidentified "public pronouncements," which plaintiffs allege constitute "enforcement" of Section 93-17-3(5) by "encourag[ing] its continued existence," are not proof of any causal connection to anyone's alleged injury. With respect to the Attorney General, his duty to render advisory opinions, or the fact that, in years past, his office issued two advisory opinions mentioning that Section 93-17-3(5) exists, do not manufacture a causal connection

supporting plaintiffs' claims.[4]  The Attorney General's advisory opinions do not carry the force of law and are not binding on anyone.[5]  Additionally, plaintiffs' desperate reference to ***Kitchen v Herbert***, 755 F.3d 1193 (10th Cir. 2014) does not prove the Governor or Attorney General has any causal connection to their alleged injury.  In ***Kitchen***, the Tenth Circuit relied on the Utah Governor's and Utah Attorney General's ability to exercise direct "supervisory authority" over Utah county clerks and other Utah government officials, under Utah law, to find they had standing to appeal a judgment. ***Id.***, at 1201-04.  Plaintiffs have not, and cannot, cite any facts or Mississippi law that would ever make ***Kitchen***'s factual findings regarding Utah law, and the Utah officials' actions at issue there, relevant here.

*No Article III redressability*.  Plaintiffs contend Article III redressability is satisfied because a "victory" handed them by the Court will "prevent DHS from denying gays the opportunity to proceed with a home study or become foster parents," "prevent the Governor from 'enforcing and supporting'" Section 93-17-3(5), and "prevent the Attorney General from advising state officials and the judiciary that gay couples are

---

[4] The advisory opinions cited by plaintiffs on page 22 of their Response do not prove any causal connection between the Attorney General and their alleged injury, that he has any enforcement authority under Section 93-17-3(5), or that he has "contributed" to any enforcement of the statute under plaintiffs' proffered causation theory.  In the first opinion, the Attorney General opined, on an issue not before this Court, that Section 93-17-3, and specifically Section 93-17-3(4), "prohibits a child from being adopted by two *unmarried* individuals."  Burns, 2012 WL 1071283 (MS AG Feb. 3, 2012).  In the second, the Attorney General opined that adopted children of married same gendered persons could qualify for the State insurance plan depending on the facts and circumstances involved.  Upchurch, 2013 WL 7020577 (MS AG Dec. 20, 2013).

[5] "[A]n opinion from the Mississippi Attorney General is 'merely persuasive authority' and is not binding upon this Court or any other court."  ***Brentwood Health Mgmt. of Miss. v. Mississippi State Dept. of Health***, 29 So. 3d 775, 784 (¶ 28) (Miss. Ct. App. 2009), *cert. denied*, 29 So. 3d 774 (Miss. 2010).

barred from adopting." [Pl. Brief at p. 26, Docket No. 58]. Will ordering DHS to do what a chancery court tells it to do, to follow its own policies, or to do what it has sworn to the Court it will do, make it any more "likely, as opposed to speculative" that plaintiffs will win their future adoption lawsuits, if ever filed? No. Will binding and gagging the Governor and the Attorney General make it any more "likely, as opposed to speculative" that plaintiffs will win their future adoption lawsuits, if ever filed? Of course not. For those simple reasons, plaintiffs' claims against the executive branch defendants lack redressability. And, if for no other reasons, that is why their claims against the executive branch defendants should be dismissed.

***Ex Parte Young* does not apply.** Plaintiffs' Response ignores their obligation to prove, independently from Article III standing's requirements, that each of the executive branch defendants has "'the particular duty to enforce the statute in question and a demonstrated willingness to enforce that duty.'" ***Morris v. Livingston***, 739 F.3d 740, 746 (5th Cir. 2014) (quoting ***Okpalobi***, 244 F.3d at 416). By failing to muster any authority demonstrating Mississippi law requires any of the executive branch defendants to impose Section 93-17-3(5) on them in their putative future adoption lawsuits, or, furthermore, any facts demonstrating the executive branch defendants' willingness to do so, plaintiffs have entirely failed to establish ***Ex Parte Young*** has any application to their claims.

## CONCLUSION

For the reasons set forth above, and those established in the executive branch defendants' opening brief, plaintiffs' claims against them should be dismissed.

THIS the 19th day of October, 2015.

Respectfully submitted,

JIM HOOD, in his official capacity
as Mississippi Attorney General

By: S/Justin L. Matheny
Justin L. Matheny (Bar No. 100754)
Office of the Attorney General
P.O. Box 220
Jackson, MS 39205
Telephone: (601) 359-3680
Facsimile: (601) 359-2003
*jmath@ago.state.ms.us*

*Counsel for Attorney General Jim Hood*

AND

MISSISSIPPI DEPARTMENT OF HUMAN
SERVICES, RICHARD BERRY, in his official
capacity as Executive Director of the
Mississippi Department of Human Services,
and PHIL BRYANT, in his official capacity as
Governor of the State of Mississippi

By: S/Tommy D. Goodwin
Tommy D. Goodwin (Bar No. 100791)
Office of the Attorney General
P.O. Box 220
Jackson, MS 39205
Telephone: (601) 359-3680
Facsimile: (601) 359-2003
*tgood@ago.state.ms.us*

*Counsel for MDHS, Executive Director*
*Richard Berry, and Governor Phil Bryant*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document has been filed with the Clerk of Court using the Court's ECF system and thereby served on all counsel of record who have entered their appearance in this action to date.

THIS the 19th day of October, 2015.

S/Justin L. Matheny
Justin L. Matheny